David S. Blau (Bar No. 166825)
David M. Morrow (Bar No. 175776)
Law Offices of David S. Blau, P.C.
6080 Center Drive, Suite 210
Los Angeles, California 90045
(310) 410-1900 phone
(310) 410-1901 fax
david@blaulaw.net

Attorneys for Defendant
American Safety Indemnity Company

**ORIGINAL FILED**
LOS ANGELES

MAR 06 2008

SUPERIOR COURT
By: ____VICTOR E. SINO-CRUZ____
DEPUTY

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| ACCEPTANCE INSURANCE COMPANY,) | LASC Case No.: BC 352725 |
| Plaintiff, ) | **NOTICE TO STATE COURT AND ADVERSE PARTY OF REMOVAL TO FEDERAL COURT** |
| vs. ) | |
| AMERICAN SAFETY RISK RETENTION) GROUP, INC., and AMERICAN SAFETY) INDEMNITY COMPANY, ) | |
| Defendants ) | |

TO THE SUPERIOR COURT OF THE COUNTY OF LOS ANGELES, and TO PLAINTIFF ACCEPTANCE INSURANCE COMPANY AND ITS ATTORNEY OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT a Notice of Removal of this action was filed in the United States District Court for the Central District of California on March 6, 2008, under Federal Case Number CV08-01577 GPS (AGRx) A copy of the Notice of Removal, and the exhibit thereto, is attached to this Notice as Exhibit "1," and is served and filed herewith.

Respectfully submitted,

DATED: March 6, 2008

Law Offices of David S. Blau

By: _____
David S. Blau
David M. Morrow
Attorney for Defendant
American Safety Indemnity Company

1

**Exhibit 1**



1  David S. Blau (Bar No. 166825)
   David M. Morrow (Bar No. 175776)
2  Law Offices of David S. Blau, P.C.
   6080 Center Drive, Suite 210
3  Los Angeles, California 90045
   (310) 410-1900 phone
4  (310) 410-1901 fax
   david@blaulaw.net
5
   Attorneys for Defendant
6  American Safety Indemnity Company

7

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11

12  ACCEPTANCE  INSURANCE        Case No.
    COMPANY,                     **CV08-01577 GPS(AGRx)**
13
                                 **NOTICE OF REMOVAL OF CIVIL**
                Plaintiff,       **ACTION FROM STATE COURT**
14                               **(28 U.S.C. § 1441(b))**

15      vs.

16  AMERICAN SAFETY RISK
    RETENTION GROUP, INC., and
17  AMERICAN SAFETY INDEMNITY
    COMPANY,

18              Defendants.

19

20  TO THE CLERK OF THE ABOVE-ENTITLED COURT:

21      PLEASE TAKE NOTICE THAT Defendant AMERICAN SAFETY

22  INDEMNITY COMPANY ("Defendant") hereby removes the above-entitled

23  action from the Superior Court of the State of California for the County of Los

24  Angeles to the United States District Court for the Central District of California

25  pursuant to 28 U.S.C. §§ 1441 and 1446. This Notice is based upon the original

26  jurisdiction of the United States District Court over the parties under 28 U.S.C.

27  §1332 based upon the existence of diversity.

28      In support of its Notice of Removal, Defendant states to the Court as

                            1

                   NOTICE OF REMOVAL

follows:

1.    The action pending in the Superior Court of the State of California for the County of Los Angeles, entitled ACCEPTANCE INSURANCE COMPANY v. AMERICAN SAFETY RISK RETENTION GROUP, INC., et al., Case No. BC352725, was commenced on May 22, 2006.  On or about February 7, 2008, Plaintiff ACCEPTANCE INSURANCE COMPANY ("Plaintiff") filed a First Amended Complaint naming this removing Defendant. A true and correct copy of the file stamped Summons and First Amended Complaint, and the exhibits thereto, on file in the State Court, are attached hereto as Exhibit "1."

2.    The action pending in the state court is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332(a) because it is a civil action between citizens of different states, and the amount in controversy exceeds $75,000.

3.    Plaintiff ACCEPTANCE INSURANCE COMPANY is a citizen of the State of Nebraska, its state of incorporation (see First Amended Complaint, Paragraph 1), and of Iowa, its principal place of business.  Defendant AMERICAN SAFETY INDEMNITY COMPANY is a citizen of the State of Georgia, which is both its state of incorporation (see First Amended Complaint, Paragraph 3) and its principal place of business.

4.    The amount in controversy in the action exceeds $75,000 exclusive of interest and costs, in that Plaintiff claims that Defendant must indemnify Plaintiff for, or contribute to, the defense and indemnity of Plaintiff's and Defendant's mutual insured, Bay Area Construction Framers, Inc. ("Bay Area"), in connection with an underlying construction defect action entitled Portola Meadows Townhomes Assoc. v. Davidon Homes, et al., Superior Court of the State of California for the County of Alameda, Case No. V-020385-4 (the "Portola action").  Plaintiff contends that Defendant is obligated to reimburse

2

Plaintiff for (1) an equitable portion of the defense fees and costs incurred by Plaintiff defending Bay Area in connection with the <u>Portola</u> action, and (2) an equitable portion of the $510,000.00 incurred by Plaintiff in settlement of the <u>Portola</u> action on behalf of Bay Area Construction Framers, Inc.

5.    The First Amended Complaint in the State Court action was served on this removing Defendant, via its agent for service, on February 26, 2008.

6.    As the state court action is one within the diversity jurisdiction of the federal district courts, the action is removable to this court under 28 U.S.C. § 1441(a) and (b) because no defendant is a citizen of the State of California.

7.    Venue is proper in the U.S. District Court for the Central District of California, located in the County of Los Angeles, as the First Amended Complaint was filed in state court in the County of Los Angeles.

8.    This Notice of Removal from State Court is timely filed pursuant to 28 U.S.C. § 1446(b) because it is filed within 30 days after receipt by Defendant of Plaintiff's First Amended Complaint.   Removal is also timely because this Notice of Removal is filed not more than one year after this action was commenced in state court against this removing Defendant.

9.    This Notice of Removal from State Court is proper under 28 U.S.C. § 1446(b) because all defendants have joined in this Notice of Removal.

WHEREFORE, having provided notice as required by law, the above-entitled action should be removed from the Superior Court of the State of California for the County of Los Angeles to this Court, and Defendant prays that it be so removed.

DATED: March 6, 2008          Law Offices of David S. Blau

By: _____

David S. Blau
David M. Morrow
Attorney for Defendant
American Safety Indemnity Company

3

Exhibit 1

SUMMONS ON 1st AMENDMENT COMPLAINT

**SUM-100**

Acceptance v.
American Safety *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
American Safety Risk Retention Group, Inc. and
American Safety Indemnity Company

| FOR COURT USE ONLY |
| *(SOLO PARA USO DE LA CORTE)* |

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

**FEB 20 2008**

John A. Clarke, Executive Officer/Clerk
By _____ , Deputy
Jalon Taylor

**YOU ARE BEING SUED BY PLAINTIFF:** Acceptance Insurance Company
*(LO ESTA DEMANDANDO EL DEMANDANTE):*

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is: | CASE NUMBER: |
| *(El nombre y dirección de la corte es):* | *(Número del Caso):* BC352725 |

SUPERIOR COURT OF CALIFORNIA COUNTY OF Los Angeles - Central Dist
111 N. Hill St.,
Los Angeles, CA 90012-3014

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
PERRY E. RHOADS, ESQ., SBN: 209812                   (213) 427-2350   (213) 427-2366
KOLETSKY, MANCINI, FELDMAN & MORROW
3460 Wilshire Boulevard, Eighth Floor
LOS ANGELES, CA 90010

**JALON TAYLOR**

**JOHN A. CLARKE, CLERK**

DATE: **FEB 20 2008**                    Clerk, by _____ , Deputy
*(Fecha)*                                          *(Secretario)*                        *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

| [SEAL] | 1. [ ] as an individual defendant. |
|---|---|
| | 2. [ ] as the person sued under the fictitious name of *(specify):* |
| | |
| | 3. [X] on behalf of *(specify):* American Safety Indemnity Company |
| | under: [ ] CCP 416.10 (corporation)      [ ] CCP 416.60 (minor) |
| | [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee) |
| | [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person) |
| | [X] other *(specify):* Unknown Business Entity |
| | Page 1 of 1 |
| | 4. [ ] by personal delivery on *(date):* |

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

1 | Raymond C. Dion, Esq. (State Bar No. 139206)
Perry E. Rhoads, Esq. (State Bar No. 209812)
2 | **KOLETSKY, MANCINI, FELDMAN & MORROW**
3460 Wilshire Boulevard, Eighth Floor
3 | Los Angeles, CA 90010-2228
Telephone: (213) 427-2350
4 | Facsimile: (213) 427-2366

5 | Attorneys for Plaintiff
ACCEPTANCE INSURANCE COMPANY

6

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

FEB 0 7 2008

John A. Clarke, Executive Officer/Clerk

By _____, Deputy
A.E. LaFLEUR-CLAYTON

7 |           SUPERIOR COURT OF CALIFORNIA

8 |              COUNTY OF LOS ANGELES

9

10 | ACCEPTANCE INSURANCE
COMPANY,
11
12 |              Plaintiff,
13 |       vs.
14 | AMERICAN SAFETY RISK RETENTION
GROUP, INC. and AMERICAN SAFETY
15 | INDEMNITY COMPANY,
16 |              Defendants.
17

CASE NO. BC 352725

*[Assigned to Hon. Malcolm H. Mackey, Dpt. 55]*

**ACCEPTANCE INSURANCE COMPANY'S
FIRST AMENDED COMPLAINT FOR
CONTRIBUTION AND DECLARATORY
RELIEF**

Trial Date: September 22, 2008
Complaint Filed: May 22, 2006

18
19 |       COMES NOW, Plaintiff, Acceptance Insurance Company (hereinafter referred to as
20 | "Acceptance") and hereby alleges causes of action against Defendants American Safety Risk Retention
21 | Group, Inc. (referred to herein as "American Safety Risk") and American Safety Indemnity Company
22 | (referred to herein as "American Safety Indemnity") (hereinafter American Safety Risk and American
23 | Safety Indemnity will be referred to collectively as "American Safety"), with knowledge as to itself and
24 | otherwise on information and belief, claims and alleges as follows:

**Common Allegations to All Causes of Action**

25
26 |       1.       At all times mentioned herein, Acceptance is and was an Nebraska corporation, engaged
27 | in the business of insurance and is authorized to and is doing business in the State of California.
28 |       2.       On information and belief, Defendant American Safety Risk is a Georgia corporation,

1

**ACCEPTANCE INSURANCE COMPANY'S FIRST AMENDED COMPLAINT FOR CONTRIBUTION AND
DECLARATORY RELIEF**

*(left margin, vertical text)* KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

1   and is a nonadmitted surplus lines insurance company authorized to transact business in the State of

2   California.

3          3.      On information and belief, Defendant American Safety Indemnity is a Georgia

4   corporation, and is a licensed insurance company authorized to transact business in the State of

5   California.

6          4.      Plaintiff Acceptance is informed and believes and thereon alleges that at all times

7   relevant herein, each of the named Defendants, were the agents, servants, or employees of one or more

8   of the other named Defendants herein, and acted within the scope of such agency.

9          5.      At all times relevant herein, American Safety Risk and Bay Area Construction Framers,

10  Inc (hereinafter "Bay Area") were parties to a written insurance contract, Commercial General Liability

11  Policy No. XGI-00-1826-001 (hereinafter referred to as the "American Safety Policy No. 1"), which

12  named Bay Area as the "insured" therein.   On information and belief, the effective policy period for

13  American Safety Policy No. 1 was from August 15, 2000 to October 1, 2001.  A true and correct copy

14  of American Safety Policy No. 1 is attached hereto as **"Exhibit A"** and made reference hereto.

15         6.      At all times relevant herein, American Safety Indemnity and Bay Area were parties to a

16  written insurance contract, Commercial General Liability Policy No. XGI-01-1826-002 (hereinafter

17  referred to as the "American Safety Policy No. 2"), which named Bay Area as the "insured" therein.

18  On information and belief, the effective policy period for American Safety Policy No. 2 was from

19  October 1, 2001 to October 1, 2002.  A true and correct copy of American Safety Policy No. 2 is

20  attached hereto as **"Exhibit B"** and made reference hereto.

21         7.      Both the American Safety Policy No. 1and the American Safety Policy No. 2 read in

22  pertinent part as follows:

23         *"COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

24      *1.      Insuring Agreement*
        *a.      We will pay those sums that the insured becomes legally obligated*
25              *to pay as damages because of "bodily injury" or "property*
                *damage" to which this insurance applies.  We will have the right*
26              *and duty to defend the insured against any "suit" seeking those*
                *damages.  However, we will have no duty to defend the insured*
27              *against any "suit" seeking damages for "bodily injury" or*
                *"property damage" to which this insurance does not apply...*
28

2

b.   This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an occurrence...
(2) The "bodily injury" or "property damage" occurs during the policy period."

*See* Exhibit A, page 3, attached hereto; Exhibit B, page 3, attached hereto.

8.    At all times relevant herein, Acceptance and Bay Area were parties to written insurance contracts, Commercial General Liability Policy No.'s D96CM0487, D97CM0608, and D98CM0700, which named Bay Area as the "insured" (collectively referred to herein as the "Acceptance Policies"). The Acceptance Policies were in effect from October 24, 1996 through August 15, 2000.

9.    On or about August 27, 1996, Bay Area entered into a contract with a developer, Davidon Homes, a California limited partnership, to perform rough and finishing framing work for town-homes in Tracts 6610 and 6522 in what is commonly known as the Portola Meadow Townhomes, located in the city of Livermore, Alameda County, California (hereinafter referred to as "the Subject Property"). Subcontractors were subsequently hired to perform all work on the project. Notices of Completion on the homes were filed between 1995 and 1998.

10.    On April 10, 2001, Portola Meadows Townhomes Association filed a complaint (the "Portola Complaint") against Davidon Homes, in Alameda County Superior Court, entitled *Portola Meadows Townhomes Assoc. v. Davidon Homes, et al.*, Case No. CV-020385-4 (hereinafter "Portola Action"). The Portola Complaint alleged the existence of construction defects at the Subject Property. The Portola Complaint contained a number of alleged defects potentially implicating Bay Area.

11.    On or about June 11, 2001, Davidon Homes filed an answer to the Portola Complaint. Davidon also filed a Cross-Complaint against a number of subcontractors, including Bay Area. The Davidon Homes cross-complaint contained causes of action against Bay Area for comparative indemnity, equitable indemnity, implied contractual indemnity and express contractual indemnity.

12.    Davidon Homes' cross-complaint sought to impose liability and damages upon Bay Area arising from Bay Area's alleged failure to properly perform construction work, including rough and finishing framing work, at the Subject Property.

13.    For the purpose of establishing the underlying allegations herein, Bay Area requests judicial notice of Davidon's Cross-Complaint on file with the Courts and, by this reference,

3

Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

1  incorporates herein each and all of the allegations within said Cross-Complaint (including amendments

2  thereto) as though fully set forth herein.

3       14.    In November, 2001, Acceptance agreed to defend Bay Area in the Portola Action,

4  pursuant to one or more of the Acceptance Policies, and retained the law firm of Koletsky, Mancini,

5  Feldman & Morrow (hereinafter "KMFM"), for this purpose.

6       15.    On or about November 28, 2001, KMFM filed an answer on behalf of Bay Area to the

7  cross-complaint of Davidon Homes and proceeded to defend Bay Area in the Portola Action.

8       16.    KMFM tendered the defense and indemnity of Bay Area to American Safety at the

9  Atlanta Georgia address listed on both the American Safety Policy No. 1 and the American Safety

10  Policy No. 2, requesting that American Safety (and related subsidiaries) participate in the defense of the

11  insured Bay Area in the Portola Action.  American Safety was provide a copy of the Portola Complaint

12  and other relevant documents which established an obligation to defend and indemnify Bay Area.

13       17.    Davidon Homes also tendered the Portola Action  to American Safety Insurance

14  Company (and or one of its subsidiaries), requesting that American Safety participate in the defense and

15  indemnity of their insureds.  American Safety (and related entities) had notice of the Portola Action.

16       18.    At all times relevant herein, American Safety Insurance Services, Inc. ("ASIS") acted as

17  the program manager for both American Safety Risk and American Safety Indemnity.  ASIS was

18  retained to perform, and was  responsible to determine, coverage evaluation and investigation under

19  policies issued by American Safety (and related subsidiaries), including policies issued by American

20  Safety Risk and American Safety Indemnity.

21       19.    On information and belief, and at relevant herein, ASIS retained Breckenridge &

22  Associates to conduct the investigation into facts relating to the determination of whether or not Bay

23  Area had coverage under either American Safety policies issued to Bay Area for the Portola Action.

24       20.    On or about January 19, 2002, American Safety Risk, through its duly appointed agent

25  Breckenridge & Associates, issued a letter, declining to participate in the defense of Bay Area in the

26  Portola Action under American Safety Policy No. 1.   While addressing the initial policy, the

27  declination letter ignored and failed to consider the potential coverage afforded under the American

28  Safety Policy No. 2.  A true and correct copy of the January 19, 2002 declination letter is attached

Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

4

1  hereto as **"Exhibit C"** and made reference hereto.

2      21.    In connection with the Portola Action, Acceptance and KM FM repeatedly sought

3  reconsideration of ASIS's coverage determination. No further response was given by ASIS or

4  American Safety for the decisions previously reached by them. No response was ever provided in

5  connection with the American Safety Policy No. 2.

6      22.    Defendants American Safety Risk and American Safety Indemnity have breached their

7  respective insurance contracts with Bay Area by refusing to pay any sums for which they were

8  obligated, and wrongfully declining to participate in the defense and indemnity of Bay Area in the

9  Portola Action. American Safety insured the same risk as Acceptance and the Portola Action was a

10  covered risk.

11      23.    Acceptance is informed and believes, and on that basis alleges, that American Safety

12  Risk and American Safety Indemnity are and were responsible for the actions of their agents, including

13  the actions of ASIS and Breckenridge & Associates. Furthermore, American Safety Risk and American

14  Safety Indemnity are liable for the damages caused by the actions and/or omissions of their agents,

15  ASIS and Breckenridge & Associates. Acceptance further alleges that American Safety Risk and

16  American Safety Indemnity have breached certain terms and conditions related to their defense and

17  indemnity obligations as set fourth in American Safety Policy No. 1 and American Safety Policy No. 2.

18      24.    All obligations and conditions required to trigger the rights to defense and indemnity

19  provided for under American Safety Policy No. 1 and American Safety Policy No. 2, except as excused

20  or prevented by the conduct of American Safety, have been performed. If it is determined that there

21  was a failure to perform any such obligation, such alleged failure is excused and/or did not cause actual

22  prejudice to either American Safety Risk or American Safety Indemnity.

23      25.    Acceptance ultimately contributed to the defense and paid to settle claims regarding Bay

24  Area's alleged liability in the Portola Action. Neither American Safety Risk or American Safety

25  Indemnity contributed to the defense or indemnity (settlement), in violation of their respective policies.

26  Both American Safety Risk and American Safety Indemnity had primary liability for the loss, including

27  the defense and indemnity obligations.

28      26.    As a direct and proximate result of the breach of contractual obligations under the

KOLLERAL, MAICLAN, FELDMAN & MORGAN[?]
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

5

1  American Safety Policy No. 1 and American Safety Policy No. 2, Acceptance has sustained damages in

2  an amount to be determined (but believed to be in excess of Five Hundred Thousand Dollars).

3  Acceptance paid the entire loss, which is also the concurrent obligation of American Safety and seeks

4  recovery in the form of equitable contribution.

**I.**

## First Cause of Action

## CONTRIBUTION

**(Duty to Defend – All Defendants)**

9      27.     Acceptance re-alleges and incorporates by reference paragraphs 1 through 26 above, as

10  though fully set forth herein.

11      28.     Defendants American Safety Risk and American Safety Indemnity owe contribution to

12  Acceptance for their fair share of the defense funds incurred and paid in the Portola Action on behalf of

13  Bay Area.   This right of contribution is made in connection with American Safety's contractual defense

14  obligations owed under their respective policies with Bay Area.   American Safety should be required to

15  reimburse Acceptance for actual payments of defense monies that Acceptance made, in excess of

16  Acceptance's proportional share, pursuant to California *Civil Code* § 1432.

**II.**

## Second Cause of Action

## CONTRIBUTION

**(Duty to Indemnity - All Defendants)**

21      29.     Acceptance re-alleges and incorporates by reference paragraphs 1 through 26 above, as

22  though fully set forth herein.

23      30.     Defendants American Safety Risk and American Safety Indemnity owe contribution to

24  Acceptance for their fair share of the indemnity (settlement) funds paid in the Portola Action on behalf

25  of Bay Area.   This right of contribution is made in connection with American Safety's contractual

26  indemnity obligations owed under their respective policies with Bay Area.   American Safety should be

27  required to reimburse Acceptance for actual payments of defense monies that Acceptance made, in

28  excess of Acceptance's proportional share, pursuant to California *Civil Code* § 1432.

KOLEISAN, PIRAVLIN, FELDMAN & MORGAN
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

6

### III.

### Third Cause of Action

### DECLARATORY RELIEF

#### (Against All Defendants)

31.     Acceptance re-alleges and incorporates by reference paragraphs 1 through 30 above, as though fully set forth herein.

32.     Defendants American Safety, and each of them, have refused to, and continue to refuse to, honor their obligations to defend and/or indemnify Bay Area under their respective policies described herein with respect to the claims alleged in the Portola Action, which action seeks covered damages, including "property damage" as that term is defined in the respective policies. Acceptance has paid a disproportionate share of the attorney fees, costs and settlement monies than they would have had to pay otherwise had Defendants American Safety honored their obligations under their policies.

33.     A controversy has arisen and exists by and between Acceptance, on the one hand, and Defendants American Safety, on the other hand, insofar as Defendants American Safety contend that they had no defense or indemnity obligation with respect to the Portola Action. A controversy has arisen between Defendants American Safety and Acceptance with respect to their respective rights, duties and liabilities under their respective policies. A declaration of this Court is necessary to determine the rights and obligations of the parties to this action under the contracts of insurance.

WHEREFORE, Plaintiff Acceptance prays for judgment against Defendants American Safety, and each of them, as follows:

1.     For a judgment in a sum to be determined, plus interest thereon;

2.     For attorney's fees and costs of suit incurred herein;

3.     For such other and further relief as this Court may deem just and proper.

Dated: February 7, 2008             KOLETSKY, MANCINI, FELDMAN & MORROW

By: _____
Raymond C. Dion, Esq.
Perry E. Rhoads, Esq.
Attorneys for Plaintiff Acceptance Insurance Company

W:\acp.338\BAD FAITH FOLDERS\Pleading\FAC.wpd

7

Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

# EXHIBIT A

**AS** AMERICAN SAFETY

1845 The Exchange, Suite 200 ♦ Atlanta, GA  30339
☎ (800) 388-3647  ♦  FAX  ☎ (770) 955-8339

*RISK RETENTION GROUP, INC.*

POLICY NUMBER:   XGI 00-1826-001

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

| Broker - American E & S | Producer – Mr. Richard Schlesinger |
|---|---|

Named Insured:          Bay Area Construction Framers, Inc.
Mailing Address:        7080 Donlon Way Suite 204
                        Dublin, CA 94568

Policy Period:     From:    Aug. 15, 00    To:    Oct. 1, 01    At 12:01 A.M. Time At
Your Mailing Address Shown Above

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

## LIMITS OF INSURANCE

| | |
|---|---|
| Each Occurrence Limit | $ 1,000,000.00 |
|     Fire Damage Limit - Any one fire | $    50,00.00 |
|     Medical Expense Limit - Any one person | $     Excluded |
| Personal & Advertising Injury Limit  – Any one person or organization | $ 1,000,000.00 |
| General Aggregate Limit | $ 2,000,000.00 |
| Products/Completed Operations Aggregate Limit | $ 2,000,000.00 |

## RETROACTIVE DATE (CG 00 02 ONLY)

THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY" OR "PROPERTY DAMAGE" WHICH
OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.
RETROACTIVE DATE:     "Does Not Apply"
          (ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES)

## DESCRIPTION OF BUSINESS

FORM OF BUSINESS:                                Partnership                    Joint Venture
          Individual
          Limited Liability Company       x   Organization, Including a Corporation (but not
                                              including a Partnership, Joint Venture or Limited Liability
                                              Company)
Business Description:               Residential Framer Subcontractor

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS
POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY.
THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO
FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.

NOTICE:  THIS POLICY IS ISSUED BY YOUR RISK RETENTION GROUP.  YOUR RISK RETENTION GROUP MAY NOT BE
SUBJECT TO ALL OF THE INSURANCE LAWS AND REGULATIONS OF YOUR STATE.  STATE INSURANCE INSOLVENCY
GUARANTY FUNDS ARE NOT AVAILABLE FOR YOUR RISK RETENTION GROUP.

**AS** AMERICAN
SAFETY

1845 The Exchange, Suite 200 ♦ Atlanta, GA  30339
☎ (800) 388-3647  ♦  FAX ☎ (770) 955-8339

RISK RETENTION GROUP,
INC.

## ALL PREMISES YOU OWN, RENT OR OCCUPY

| LOCATION NUMBER | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
|---|---|
| | As on file with application dated March 28, 2000 |

## CLASSIFICATION AND PREMIUM

| LOCATION NUMBER | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE Prem/Ops | RATE Prod/Comp Ops | ADVANCE PREMIUM Prem/Ops | ADVANCE PREMIUM Prod/Comp Ops |
|---|---|---|---|---|---|---|---|
| | Contractor | 94444 | 8,000,000 | Included | $1.129 per $1000 Est. Receipts | Included | $ 108,384 |

| | | | | |
|---|---|---|---|---|
| | State Tax or Other (if applicable) | | $ | |
| | Total premium (Subject to Audit) | | $ 108,384 | |
| | | | $ 108,384 | |
| Premium shown is payable: | At Inception; | | $ | |
| | At Each Anniversary | | | |
| | (If policy period is more than one year and premium is paid in annual installments) | | | |

| Audit Period (If Applicable | X | Annually | | Semi-Annually | | Quarterly | | Monthly |
|---|---|---|---|---|---|---|---|---|

## ENDORSEMENTS

ENDORSEMENTS ATTACHED TO THIS POLICY:

| | | | |
|---|---|---|---|
| CG 00 01 07 98 | ES 98 01 08 99 | ES 98 08 08 99 | ES 98 18 09 99 |
| CG 20 10 11 85 | ES 98 02 08 99 | ES 98 10 08 99 | ES 98 24 09 99 |
| CG 24 04 11 85 | ES 98 03 08 99 | ES 98 11 08 99 | ES 98 28 10 99 |
| CG 25 03 11 85 | ES 98 04 08 99 | ES 98 12 08 99 | ES 98 29 10 99 |
| IL 00 17 11 85 | ES 98 05 08 99 | ES 98 13 08 99 | ES 98 30 10 99 |
| IL 00 21 11 94 | ES 98 06 08 99 | ES 98 14 08 99 | ES 98 39 03 00 |

THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE
FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.

| Endorsement Effective: | August 15, 2000 | Countersigned By: _Fred J. Pinckney_ |
|---|---|---|
| Named Insured: | Bay Area Construction Framers, Inc. | (Authorized Representative) |

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS
POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY.
THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO FORM A
PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.

NOTICE:  THIS POLICY IS ISSUED BY YOUR RISK RETENTION GROUP.  YOUR RISK RETENTION GROUP MAY NOT BE
SUBJECT TO ALL OF THE INSURANCE LAWS AND REGULATIONS OF YOUR STATE.  STATE INSURANCE INSOLVENCY
GUARANTY FUNDS ARE NOT AVAILABLE FOR YOUR RISK RETENTION GROUP.

COMMERCIAL GENERAL LIABILITY
CG 00 01 07 98

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

## SECTION I – COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

         (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Copyright, Insurance Services Office, Inc., 1997

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

Copyright, Insurance Services Office, Inc., 1997

(d) At or from any premises, site or location on which any insured or any contractors or sub-contractors working directly or indirectly on any insured's behalf are performing opera-tions if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, con-tractor or subcontractor. However, this sub-paragraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubri-cants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions neces-sary for the operation of "mobile equip-ment" or its parts, if such fuels, lubri-cants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the in-tentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations be-ing performed by such insured, contrac-tor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being per-formed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or sub-contractors working directly or indirectly on any insured's behalf are performing opera-tions if the operations are to test for, moni-tor, clean up, remove, contain, treat, detox-ify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a govern-mental authority for damages because of testing for, monitoring, cleaning up, remov-ing, containing, treating, detoxifying or neu-tralizing, or in any way responding to, or as-sessing the effects of, "pollutants".

However, this paragraph does not apply to li-ability for damages because of "property dam-age" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

b. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

Copyright, Insurance Services Office, Inc., 1997

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. Exclusions

   This insurance does not apply to:

   a. "Personal and advertising injury":

      (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

      (2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

      (3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

      (4) Arising out of a criminal act committed by or at the direction of any insured;

      (5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

      (6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

      (7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

      (8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

      (9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section; or

      (10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

   b. Any loss, cost or expense arising out of any:

      (1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

      (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

1. Insuring Agreement

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations;

      provided that:

      (1) The accident takes place in the "coverage territory" and during the policy period;

      (2) The expenses are incurred and reported to us within one year of the date of the accident; and

      (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   (1) First aid administered at the time of an accident;

   (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. To any insured.

   b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. To a person injured on that part of premises you own or rent that the person normally occupies.

   d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. To a person injured while taking part in athletics.

   f. Included within the "products-completed operations hazard".

   g. Excluded under Coverage A.

   h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS -- COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

     (1) Agrees in writing to:

       (a) Cooperate with us in the investigation, settlement or defense of the "suit";

       (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

       (c) Notify any other insurer whose coverage is available to the indemnitee; and

       (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

(2) Provides us with written authorization to:

   (a) Obtain records and other information related to the "suit"; and

   (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1) "Bodily injury" or "personal and advertising injury":

   (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

   (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above;

   (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

   (d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

   (a) Owned, occupied or used by,

   (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

Page 2 of 3

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01

# SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

   a. **Primary Insurance**

      This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

   b. **Excess Insurance**

      This insurance is excess over:

      (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

         (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

         (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

         (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

         (d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

      (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

Copyright, Insurance Services Office, Inc., 1997

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

CG 00 01 07 98

Copyright, Insurance Services Office, Inc., 1997

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

  (1) Power cranes, shovels, loaders, diggers or drills; or

  (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

  (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

  (2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

  (1) Equipment designed primarily for:

    (a) Snow removal;

    (b) Road maintenance, but not construction or resurfacing; or

    (c) Street cleaning;

  (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

  (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

  (1) Products that are still in your physical possession; or

  (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    (a) When all of the work called for in your contract has been completed.

    (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

  Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

CG 00 01 07 98

Copyright, Insurance Services Office, Inc., 1997

POLICY NUMBER: XGI 00-1826-001

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – (FORM B)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

## SCHEDULE

**Name of Person or Organization:**
Those persons or organizations as on file with the company requiring in a written contract with the Named Insured to be named as an additional insured and where such written contract specifies the use of the ISO CG 20 10 11 85 Endorsement Form.

**Effective Date:** The effective date of this endorsement shall be the later of the date of Issuance of this Endorsement or the start date of the project, but in no event earlier than the Policy Inception Date.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that insured by or for you.

CG 20 10 11 85

Copyright, Insurance Services Office, Inc., 1984

COMMERCIAL GENERAL LIABILITY

POLICY NUMBER: XGI 00-1826-001

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

SCHEDULE

Name of Person or Organization:

As On File With Company

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

We waive any right of recovery we may have against the person or organization shown in the Schedule because of payments we make for injury or damage arising out of "your work" done under a contract with that person or organization. The waiver applies only to the person or organization shown in the Schedule.

Copyright, Insurance Services Office, Inc., 1984

CG 24 04 11 85

Page 1 of 1

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT – AGGREGATE LIMITS OF INSURANCE (PER PROJECT)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

The General Aggregate Limit under LIMITS OF INSURANCE (SECTION III) applies separately to each of your projects away from premises owned by or rented to you.

Copyright, Insurance Services Office, Inc., 1984

Page 1 of 1

CG 25 03 11 85

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1982, 1983

Page 1 of 1

IL 00 17 11 85

IL 00 21 11 94

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

    (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

    (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

    (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

    (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

    "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

Copyright, Insurance Services Office, Inc., 1994

IL 00 21 11 94

Page 1 of 2

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1994

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASRRG - ES 98 01 08 99

SELF-INSURED RETENTION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

SCHEDULE

| Amount and Basis of Self-Insured Retention | |
|---|---|
| $ | per claim |
| $ 10,000 | per occurrence |

Application of Endorsement: (Enter below any limitations on the application of this endorsement. If no limitation is entered, the self-insured retention applies to all damages, however caused):

| NO LIMITATIONS |
|---|

1. Our obligation under the policy to pay damages or SUPPLEMENTARY PAYMENTS - COVERAGES A AND B to you or on your behalf applies only to the amount of damages or SUPPLEMENTARY PAYMENTS - COVERAGES A AND B in excess of any self-insured retention amounts stated in the Schedule above as applicable to such coverages, and the limits of insurance applicable to such coverages will not be reduced by the amount of such self-insured retention.

   As a condition precedent to our obligations to provide or continue to provide indemnity, coverage or defense hereunder, the insured, upon receipt of notice of any "suit", incident or "occurrence" that may give rise to a "suit", and at our request, shall pay over and deposit with us all or any part of the self-insured retention amount as specified in the policy, requested by us, to be applied by us as payment toward any damages or SUPPLEMENTARY PAYMENTS - COVERAGES A AND B incurred in the handling or settlement of any such incident, "occurrence" or "suit".

2. The self-insured retention amounts stated in the Schedule apply as follows:

   A. Per Claim Basis - if the self-insured retention is on a "per claim" basis, the self-insured retention amount applies separately to all damages and SUPPLEMENTARY PAYMENTS COVERAGES A AND B because of "bodily injury", "property damage" or "personal and advertising injury" sustained by any one person or organization as the result of any one "occurrence" or offense.

   B. Per Occurrence Basis - if the self-insured retention is on a "per occurrence" basis, the self-insured retention amount applies to all damages and SUPPLEMENTARY PAYMENTS - COVERAGES A AND B because of "bodily injury", "property damage" or "personal and advertising injury" as the result of any one "occurrence" regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999 American Safety Risk Retention Group, Inc.

end_01.doc

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

ASRRG - ES 98 02 08 99

ABSOLUTE ASBESTOS EXCLUSION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

A.  This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the mining, manufacture, handling, use, distribution, sale, existence, abatement, "enclosure", "encapsulation" or removal of "asbestos" in any form.

We have no duty to defend you or to investigate any "occurrence", offense or "suit" against you which arises out of "asbestos" in any form.   If you investigate or defend any such "occurrence", offense or "suit", we have no duty to pay the expenses of the investigation or defense, nor do we have any duty to reimburse you.

B.  SECTION V. - DEFINITIONS is amended to add the following additional definitions:

1.  "Asbestos" means naturally occurring hydrated fibrous mineral silicates that possess a unique crystalline structure and are incombustible in air, including chrysotile, amosite, crocidolite, tremolite, anthophyllite, actinolite, and any material which contains "asbestos".

2.  "Encapsulant" means a substance applied directly to the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance, either by creating a membrane over the surface or by penetrating the material or substance and binding its components together.

3.  "Encapsulation" means the coating of the surface of a material or substance with an "encapsulant" to prevent the discharge, dispersal, release or escape of any part of that material or substance.

4.  "Enclosure" means those procedures and operations (excluding "encapsulation") required to construct an airtight, impermeable wall, ceiling or other permanent barrier around the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999  American Safety Risk Retention Group, Inc.

Page 1 of 1

end_02.doc

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

ASRRG - ES 98 03 08 99

**AMENDED DEFINITIONS ENDORSEMENT**
**OCCURRENCE OR DUTY TO DEFEND**

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that Par. 13., "occurrence", of SECTION V - DEFINITIONS is deleted in its entirety and replaced with the following:

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions that happens during the term of this insurance. "Property damage", "bodily injury" or "personal and advertising

injury" which commenced prior to the effective date of this insurance will be deemed to have happened prior to, and not during, the term of this insurance.

There shall be no obligation of the Company to defend any "suit" against the insured or any Additional Insured if such "suit" does not allege an "occurrence" as defined in this Endorsement.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

*[handwritten annotation]: NOT IN ISO FORM DEFINITION OF "OCCURRENCE"*

Copyright© 1999  American Safety Risk Retention Group, Inc.

end_03.doc

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

ASRRG – ES 98 04 08 99

EMPLOYMENT PRACTICES EXCLUSION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

1.  Any person arising out of any:
    a.  Refusal to employ that person;
    b.  Termination of that person's employment;
    c.  Refusal or failure to promote that person;
    d.  Employment-related practices, policies, acts or omissions, including but not limited to coercion, promotion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or
    e.  Labor contract or agreement, or any employee benefit, or benefit plan or program, including, but not limited to, liability under the National Labor Relations Act, the Davis Bacon Act, the Employee Retirement Income Security Act of 1974, the Americans with Disabilities Act, or any workers' compensation or similar federal or state laws.

2.  The spouse, child, parent, brother or sister, or personal representative or administrator of that person as a consequence of the employment-related practices described in paragraphs a., b., c., d. or e. above.

This exclusion applies:

1.  Whether the insured may be liable as an employer or in any other capacity; and
2.  To any obligation of the insured to share damages with or repay someone else who must pay damages because of the injury.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999 American Safety Risk Retention Group, Inc.

end_04.doc

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASRRG - ES 98 05 08 99

MEDICAL PAYMENTS EXCLUSION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

SECTION I, COVERAGE C. – MEDICAL PAYMENTS is deleted in its entirety and any references to it in the Coverage Part do not apply.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999 American Safety Risk Retention Group, Inc.

end_05.doc

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASRRG - ES 98 06 08 99

## OTHER INSURANCE AMENDATORY ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS is amended as follows:

    Par. 4., Other Insurance is hereby amended as follows:

        4. Paragraph a., Primary Insurance; Paragraph b., Excess Insurance and Paragraph c., Method of Sharing are deleted in their entirety and the following language is inserted in lieu thereof:

        a. This insurance is primary, except when b. below applies.

        b. This insurance is excess over any other insurance that is valid and collectible insurance available to the insured or any Additional Insured whether such insurance is primary, excess, contingent or on any other basis and regardless of the nature, kind, date of issuance or limits of such other insurance available to the insured or any Additional Insured. Our obligation under this policy shall not arise until the limits of such other insurance are exhausted.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999  American Safety Risk Retention Group, Inc.

end_06.doc

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASRRG - ES 98 08 08 99

PRE-EXISTING INJURY OR DAMAGE EXCLUSION – FORM A

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

This insurance does not apply to:

1. Any "occurrence", incident or "suit" whether known or unknown to any officer of the Named Insured:
   a. which first occurred prior to the inception date of this policy or the retroactive date of this policy, if any; or
   b. which is, or is alleged to be, in the process of occurring as of the inception date of this policy or the retroactive date of this policy, if any, even if the "occurrence" continues during this policy period.

2. Any damages arising out of or relating to "bodily injury"; "property damage" or "personal and advertising injury" which are known to any officer of any insured, which are in the process of settlement, adjustment or "suit" as of the inception date of this policy, or the retroactive date of this policy, if any.

We shall have no duty to defend any insured or Additional Insured against any loss, "occurrence", incident or "suit", or other proceeding alleging damages arising out of or related to "bodily injury", "property damage" or "personal and advertising injury" to which this Endorsement applies.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999  American Safety Risk Retention Group, Inc.

end_08.doc

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASRRG - ES 98 10 08 99

## PRIMARY INSURANCE ENDORSEMENT FOR SPECIFIED PROJECT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed as follows:

Solely with respect to the specified project listed below and subject to all terms, conditions and exclusions of the policy, this insurance shall be considered primary to the Additional Insured listed below- if other valid and collectible insurance is available to the Additional Insured for a loss we cover for the Additional Insured under COVERAGE A, but only as respects the sole negligence of the Named Insured in the performance of "your work" which is performed by the Named Insured for the Additional Insured.

| Additional Insured(s) | Specified Project |
|---|---|
| Those parties requiring primary wording and Additional Insured status in a written contract with the Named Insured. | Those projects reported to, in writing, and on file with the Company. |

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999  American Safety Risk Retention Group, Inc.

end_10.doc

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASRRG - ES 98 11 08 99

DATE RECOGNITION EXCLUSION ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, or related to, whether directly or indirectly, any of the following:

1.  Any actual or alleged failure, modification to, malfunction or inadequacy of:
    a.  any of the following, whether belonging to any insured or to others or whether recommended, sold, produced, designed or developed by any insured or others:
        (1) computer hardware, including micro-processors;
        (2) computer application software;
        (3) computer operating systems and related software;
        (4) computer networks;
        (5) micro-processors, semi-conductors, or digital, analog or integrated devices not part of any computer systems; or
        (6) any other computerized or electronic equipment or components; or

    b.  any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph 1.a. of this Endorsement.

    due to the inability to correctly recognize, process, distinguish, interpret or accept any date, including, but not limited to the change to the year 2000 and beyond, or the leap year in the year 2000 or beyond.

2.  Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph 1. of this Endorsement.

    This exclusion applies regardless of any other cause, event or incident that contributes concurrently or in any sequence to the "bodily injury", "property damage" or "personal and advertising injury". This exclusion also applies regardless of any changes or modifications made at any time to any of the items listed in Paragraph 1.a. to correct or attempt to correct the inability to recognize, process, distinguish, interpret or accept any date.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999 American Safety Risk Retention Group, Inc.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASRRG - ES 98 12 08 99

## SUBSIDENCE EXCLUSION
This endorsement carries a sublimit of $100,000 per Occurrence Aggregate.

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of or related to the subsidence of the natural surface of the ground.

For the purposes of this exclusion, subsidence shall mean any earth movement including but not limited to earthquake, landslide, mudflow, earth sinking, earth rising, earth shifting or earth settling.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999  American Safety Risk Retention Group, Inc.

end_12.doc

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASRRG - ES 98 13 08 99

ENDORSEMENT -- WAIVER OF SUBROGATION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

| | |
|---|---|
| Name of Person or Organization: | Those parties requiring a waiver of subrogation in a written contract with the Named Insured. |
| Name of Project: | Those projects reported to, in writing, and on file with the Company. |
| Location of Project: | The specific location of those projects on file with the Company. |

In consideration of the payment of premiums, we waive our rights to subrogation (excluding indemnity or contribution), against the person or organization named above in connection with the sole negligence of the Named Insured in the performance of "your work" on the project described below, subject to the following conditions and exclusions.

Subrogation shall not be waived with respect to any liability arising directly or indirectly out of any of the following actions of persons or organizations named above:
1. "Professional services" on or in connection with the Project;
2. Modifying or changing the Project specifications without the express written consent of the insured; and
3. Any activities beyond the scope of monitoring the progress of the insured on the Project.

This waiver of subrogation shall apply solely to our rights of subrogation on the Project referenced and shall not, directly or indirectly apply to a waiver of any rights of indemnity or contribution.

As used in this Endorsement, the term "professional services" shall mean:
a. The preparing, approving, recommending or failing to prepare, approve or recommend maps, drawings, opinions, reports, surveys, change orders, designs, specifications, hazard assessment plans, response actions, abatement methods or products, air monitoring plans or insurance requirements;
b. Supervisory, inspection, training or engineering services; or
c. Commercial or industrial hygiene, air monitoring, "hazardous substance" testing, laboratory analysis, public health, legal, accounting, architectural, medical, nursing, data processing, consulting or investment advisory services.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999  American Safety Risk Retention Group, Inc.

end_13.doc

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASRRG - ES 98 14 08 99

CROSS CLAIMS OR SUITS EXCLUSION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

This insurance does not apply to:

Any claim or "suit" for damages by any insured against another insured.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999  American Safety Risk Retention Group, Inc.

Page 1 of 1

end_14.doc

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASRRG - ES 98 18 09 99

## PUNITIVE DAMAGES EXCLUSION ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

This insurance does not apply to any punitive, special or exemplary damages.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999  American Safety Risk Retention Group, Inc.

end_18.doc

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

ASRRG - ES 98 24 09 99

**INCIDENTAL SUDDEN & ACCIDENTAL POLLUTION LIABILITY COVERAGE ENDORSEMENT**

*THE COVERAGE AFFORDED UNDER THIS ENDORSEMENT IS WRITTEN ON A CLAIMS-MADE BASIS*

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

A.  The following shall be added to SECTION I, COVERAGE A., Par. 1. of the policy:

Notwithstanding the terms of SECTION I, COVERAGE A., Par. 2., Exclusion f.(1) of the policy, but subject to all other terms, conditions and exclusions of the policy, we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" occurring prior to the expiration or cancellation date of the policy, whichever is earlier, and subsequent to the Retroactive Date, as set forth in this Endorsement, and where such "bodily injury" or "property damage" arises out of the actual "sudden" and "accidental" discharge, dispersal, release or escape of "specified pollutants" caused by your performance of those operations designated in the Classifications Section of the Declarations performed subsequent to the Retroactive Date set forth in this Endorsement and prior to the expiration or cancellation date of the policy, whichever is earlier.

The insurance afforded under this Endorsement applies only if a "claim" for damages because of "bodily injury" or "property damage" is first made against the insured and received by us in writing, in such written form as we may require, during the policy period or Optional Extended Reporting Period, if applicable. All "claims" or "suits" arising out of or related to the same "occurrence", circumstance, person or organization; or arising out of or related to similar or related "occurrences", circumstances, persons or organizations shall be considered as a single "claim" and will be deemed to have been made only at the time when such "claim" is first made against any insured and received by us in writing, in such written form as we may require.

B.  The following exclusions are added to SECTION I, COVERAGE A., Par. 2. of the policy.

This insurance does not apply to:

1.  "Claims" or "suits" arising out of or related to the discharge, release, escape, dispersal, contamination or exposure to "specified pollutants" in whatever form, which occurs after the completion of "your work".

2.  "Claims" or "suits" arising out of or related to any "claim", "occurrence", incident or circumstance which occurred or of which the insured was aware prior to the Retroactive Date as set forth in this Endorsement.

3.  "Claims" or "suits" arising out of or related to "hazardous substance remediation activities".

C.  All coverage, including all "claim related costs", under this Endorsement shall be subject to a sublimit of $10,000 per "claim" and $10,000 total for all "claim(s)" regardless of the number of "claims", insureds, "suits", persons making "claims" or "suits" or certificates of insurance issued. The sublimit shall be included within and will reduce the overall policy General Aggregate.

D.  The following definitions are added to SECTION V of the policy:

"Accidental" means activity or circumstances that are neither expected nor intended nor foreseeable, but rather, which occur by chance, abruptly or unexpectedly.

"Approved hazardous substance remediation activities" means the following specifically described activities:

Those activities, procedures or operations required to clean up, test, sample, analyze, monitor, detoxify, dispose, transport, load, unload, treat, dilute, remove, "encapsulate" or abate "hazardous substances", including but not limited to "asbestos abatement";

Page 1 of 4

Copyright© 1999  American Safety Risk Retention Group, Inc.

end_24.doc

"bioremediation"; "building decontamination"; "duct cleaning"; "emergency response"; "groundwater remediation"; "lead abatement"; "medical waste remediation"; "microbiological decontamination"; "soil incineration"; "soil remediation"; "storage tank cleaning"; "storage tank installation"; "storage tank removal"; "vapor extraction"; "waste incineration".

"Asbestos" means naturally occurring hydrated fibrous mineral silicates that possess a unique crystalline structure and are incombustible in air, including chrysotile, amosite, crocidolite, tremolite, anthophyllite, actinolite, and any material which contains "asbestos".

"Asbestos abatement" means all procedures and operations to prevent fiber release from "asbestos" containing or "asbestos" contaminated materials, and excludes "encapsulation" and "enclosure".

"Bioremediation" means the introduction of organisms to soil that is contaminated with "hazardous substances", where such organisms promote the natural degradation of such "hazardous substances".

"Building decontamination" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate "hazardous substances" from a building or structure. "Building decontamination" does not include "duct cleaning".

"Caustics" means substances whose aqueous solutions have a pH level greater than 11 and are capable of burning, corroding, dissolving or eating away other materials by chemical reaction.

"Claim" means any written demand, notice, request for defense, request for indemnity, or other legal or equitable proceeding against the insured by a person, entity or asserted class for damages because of "bodily injury", "property damage", "personal and advertising injury".

"Claim related costs" means all costs and expenses associated with the handling, defense and settlement of any "claim" or "suit", including, but not limited to, amounts for damages, medical expenses, attorneys' fees, court costs, arbitration or mediation costs or expenses, expert witness fees, investigative fees, adjustment fees, SUPPLEMENTARY PAYMENTS and any other "claim" or "suit" related costs or expenses.

"Degreasers" means any "solvents" used for the removal of grease and/or oils from a surface.

"Duct cleaning" means those activities, procedures or operations required to remove dust, impurities or "hazardous substances" from an air duct system.

"Emergency response" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate "hazardous substances" at a specific site or location, which are performed at the request of a client or governmental entity and are in response to emergency situations caused by the "sudden" and "accidental" discharge, dispersal, release or escape of "hazardous substances".

"Encapsulant" means a substance applied directly to the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance, either by creating a membrane over the surface or by penetrating the material or substance and binding its components together.

"Encapsulation" means the coating of the surface of a material or substance with an "encapsulant" to prevent the discharge, dispersal, release or escape of any part of that material or substance.

"Enclosure" means those procedures and operations (excluding "encapsulation") required to construct an airtight, impermeable wall, ceiling or other permanent barrier around the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance.

"Fertilizer" means any natural or synthetic material used to promote plant growth.

"Formaldehyde" means a colorless, gaseous compound, used to make synthetic resins such as embalming fluid, preservatives and disinfectants.

"Groundwater remediation" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate "hazardous substances" from water that is located below the surface of the land within the saturated zone of soil or rock. "Groundwater remediation" does not include "natural attenuation".

"Hazardous substances" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to acids, alkalis, animal/bird droppings, "asbestos", chemicals, fumes, "lead", "medical waste", mold/mildew/fungus, "radon", "refractory ceramic fibers", smoke, soot, vapor, waste or other dangerous. hazardous or toxic substances as listed by any state or federal agency

Copyright© 1999  American Safety Risk Retention Group, Inc.

end_24.doc

or department. Waste includes any regulated waste, materials to be recycled, reconditioned or reclaimed.

'Heavy metals" means any of a group of metals with an atomic weight greater than sodium (22.9). "Heavy metals" do not include "lead".

"Hydrocarbons" means organic compounds that are principally obtained or derived from petroleum, tar and plant sources, consisting exclusively of the elements carbon and hydrogen.

"Lead" means the heavy, ductile, soft, solid, naturally occurring metallic element used in paints, pipes, solder, pottery, and batteries, and any substances containing "lead".

"Lead abatement" means all procedures and operations required to clean up, detoxify, dilute, remove or abate "lead" or "lead" containing materials.

"Medical waste" means any substance that could harbor or transmit pathogenic organisms, including, but not limited to body tissues, organs, body parts, body fluids, blood, excreta, secretions, bandages and hypodermic needles.

"Medical waste remediation" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate "medical waste".

"Microbiological decontamination" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate infectious microorganisms, fungi, bacteria and allergens.

"Natural attenuation" means the reduction of the toxicity, mobility, volume or concentration of "hazardous substances" in soil or groundwater through natural means that do not require human intervention.

"Pesticides" means any substance or mixture intended for preventing, destroying, repelling or mitigating any pest or vermin, or intended for use as a plant regulator, defoliant or desiccant.

"Petroleum-based materials" means "hydrocarbons" formulated as either a fuel or a lubricant for machinery or internal combustion.

"Polychlorinated biphenyls (PCBs)" means one of several aromatic compounds which are produced by attaching one or more chlorine atoms to a biphenyl molecule.

"Radon" means a colorless, odorless, tasteless gas produced from the radioactive decay of radium.

"Refractory-ceramic fibers" means continuous or non-continuous filaments made from ceramic material having those chemical and physical properties that allow them to be exposed to environments in excess of 1000°F (538°C).

"Soil incineration" means a combustion process with a heat recovery system utilized to remove or detoxify "hazardous substances" from soil.

"Soil remediation" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate "hazardous substances" from soil.

"Solvents" means any liquid used to dissolve solids or other liquids.

"Specified pollutants" means the following:

acids; alkalis; animal/bird droppings; "caustics"; "degreasers"; "fertilizer"; "formaldehyde"; "heavy metals"; "hydrocarbons"; mold/mildew/fungus; "pesticides"; "petroleum-based materials"; "polychlorinated biphenyls (PCBs)"; "refractory ceramic fibers"; "solvents".

"Storage tank cleaning" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate "hazardous substances" from any aboveground or underground storage tank and any associated piping and dispensing equipment.

"Storage tank installation" means the physical installation of any aboveground or underground storage tank and any associated piping and dispensing equipment subsequent to performance inspection and testing of the "tank system".

"Storage tank removal" means the physical removal of any aboveground or underground storage tank and any associated piping and dispensing equipment subsequent to the performance of "storage tank cleaning".

"Sudden" means circumstances which happen abruptly without previous notice which are temporal and which are neither continuous nor repeated, nor which occur over a period of time.

"Tank system" means an aboveground or underground storage tank, connected piping, ancillary equipment and containment system.

"Vapor extraction" means the reduction of concentrations of "hazardous substances" contained

Copyright© 1999 American Safety Risk Retention Group, Inc.

end_24.doc

in contaminated soil through a process of applying a vacuum through extraction wells which extract vapors from such "hazardous substances".

"Waste incineration" means a combustion process with a heat recovery system utilized to reduce the volume and weight of solid waste and to remove or detoxify "hazardous substances" from such solid waste.



RETROACTIVE DATE:    August 15, 2000

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999  American Safety Risk Retention Group, Inc.

end_24.doc

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASRRG - ES 98 28 10 99

## ASSUMPTION OF LIABILITY ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

The American Safety Risk Retention Group, Inc., with respect to the interest of all parties in the policy to which this Endorsement is attached, agrees as follows:

1. In the event that American Safety Risk Retention Group, Inc. shall, due solely to insolvency, fail to pay the amount of any loss which the interested party is entitled to recover under the limits, provisions and stipulations of the policy, American Safety Casualty Insurance Company shall be liable for such amount within ninety (90) days after receipt of written notice from such interested party setting forth the default of American Safety Risk Retention Group, Inc. The undersigned covenants that this Endorsement takes precedence over any other agreement, contract or arrangement between them to the extent that American Safety Casualty Insurance Company shall not be subject to duplicate liability because of any payment(s) made under the provisions hereof and the further covenants that this Endorsement shall not be altered or modified while the policy is in force, except as hereinafter provided; that this is a valid and binding contract which he has a right to make and that the person signing below is duly authorized for that purpose.

2. American Safety Casualty Insurance Company shall be subrogated, to the extent of any payment(s) hereunder, to all rights of recovery therefore against any person or organization.

3. Should the policy to which this Endorsement relates be canceled for any reason whatsoever, this Endorsement shall be deemed to be canceled concurrently therewith. This Endorsement may also be canceled by American Safety Risk Retention Group, Inc. or American Safety Casualty Insurance Company by mailing to the Named Insured and to any Mortgagee, Loss Payee or other interested party named in the policy at the address shown therein written notice stating when not less than thirty (30) days thereafter such cancellation shall be effective. Copy of such notice shall also be furnished to American Safety Risk Retention Group, Inc.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Agreed to by: _____

Lloyd A. Fox

President - American Safety Casualty Insurance Company

Copyright© 1999 American Safety Risk Retention Group, Inc.

end_28.doc

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASRRG - ES 98 29 10 99

CALIFORNIA DISCLOSURE NOTICE

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

1. The insurance policy that you have purchased is being issued by an insurer that is not licensed by the State of California. These companies are called "nonadmitted" "surplus lines" insurers.

2. The insurer is not subject to the financial solvency regulation and enforcement which applies to California licensed insurers.

3. The insurer does not participate in any of the Insurance Guarantee Funds created by California Law. Therefore, these funds will not pay your "claims" or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.

4. California maintains a list of eligible surplus line insurers approved by the insurance commissioner. Ask you agent or broker if the insurer is on that list.

5. For additional information about the insurer, you should ask questions of your broker or you may contact the California Department of Insurance at the following toll-free telephone number, (800) 927-4357.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

end_29.doc

Copyright© 1999  American Safety Risk Retention Group, Inc.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASRRG - ES 98 30 10 99

MINIMUM RETAINED PREMIUM

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, Par. A.5. is amended to include the following:

5.d. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro-rata. If the first Named Insured cancels, the refund may be less than pro-rata, but we will retain at least $ 27.096, if you cancel. The cancellation will be effective even if we have not made or offered a refund.

Copyright© 1999  American Safety Risk Retention Group, Inc.

end_30.doc

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ASRRG - ES 98 39 03 00

### Minimum Audit Premium

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

This endorsement modifies insurance under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART COMMON POLICY CONDITIONS

Paragraph b. of the PREMIUM AUDIT Commercial General Liability Conditions (Section IV) is replaced by the following:

Premium shown in this Coverage Part is the minimum and deposit premium for the full policy term.

At the close of each audit period, we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the audit premium is less than 90% the difference will be returned to the insured.

Copyright© 1999 American Safety Risk Retention Group, Inc.

end 39.dcc

# EXHIBIT B



**AMERICAN SAFETY**

Indemnity Company

1845 The Exchange, Suite 200 ✦ Atlanta, GA  30339
☎ (800) 388-3647  ✦  FAX  ☎  (770) 955-6163

POLICY NUMBER:  XGI 01-1826-002

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

| Broker - American E & S | Producer - Mr. Richard Schlesinger |
|---|---|
| Named Insured:<br>Mailing Address: | Bay Area Construction Framers, Inc.<br>7080 Donlon Way,  Ste 204<br>Dublin, CA  94568 |
| Policy Period: | From:   October 1, 2001      To:    October 1, 2002<br>At 12:01 A.M. Time at your Mailing Address Shown Above |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

## LIMITS OF INSURANCE

| | |
|---|---|
| Each Occurrence Limit | $  1,000,000.00 |
| Fire Damage Limit - Any one fire | $      50,000.00 |
| Medical Expense Limit -- Any one person | $     Excluded |
| Personal & Advertising Injury Limit  - Any one person or organization | $  1,000,000.00 |
| General Aggregate Limit | $  2,000,000.00 |
| Products/Completed Operations Aggregate Limit | $  1,000,000.00 |
| Subsidence sublimit per occurrence aggregate | $    100,000.00 |

## RETROACTIVE DATE (CG 00 02 ONLY)

THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY" OR "PROPERTY DAMAGE" WHICH
OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.
RETROACTIVE DATE:     "Does not apply"
(ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES)

## DESCRIPTION OF BUSINESS

FORM OF BUSINESS:
[ ] Individual
[ ] Limited Liability Company
[ ] Partnership
[x] Organization, Including a Corporation (but not including a Partnership, Joint Venture or Limited Liability Company)
[ ] Joint Venture

Business Description:   Residential Framers Subcontractor

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS
POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY.
THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO
FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.

Page 1 of 2

PREMIUM  $ 127,500 00
CA STATE TAX:  3,825 00
STAMPING FEE:  318 75

D. Levis   1/28/02



**AMERICAN SAFETY**

*Indemnity Company*

1845 The Exchange, Suite 200 ✦ Atlanta, GA  30339
☎ (800) 388-3647  ✦  FAX  ☎ (770) 955-6163

| LOCATION NUMBER | ALL PREMISES YOU OWN, RENT OR OCCUPY |
|---|---|
| | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
| | As on file with application dated:  Sept. 8, 2001 |

### CLASSIFICATION AND PREMIUM

| LOCATION NUMBER | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE Prem/Ops | RATE Prod/Comp Ops | ADVANCE PREMIUM Prem/Ops | ADVANCE PREMIUM Prod/Comp Ops |
|---|---|---|---|---|---|---|---|
| | Contractor | 94444 | $10,000,000 | Included | $ 12.75 per $1000 est. receipts | Included | $ 127,500 |

| | | |
|---|---|---|
| | State Tax or Other (if applicable) | $ 0 |
| | Total premium (Subject to Audit) | $ 127,500 |
| Premium shown is payable: | At Inception; | $ 127,500 |
| | At Each Anniversary | $ |
| | (If policy period is more than one year and premium is paid in annual installments) | |

| Audit Period (If Applicable) | X | Annually | | Semi-Annually | | Quarterly | | Monthly | |
|---|---|---|---|---|---|---|---|---|---|

### ENDORSEMENTS

ENDORSEMENTS ATTACHED TO THIS POLICY:

| | | | | |
|---|---|---|---|---|
| CG 00 01 07 98 | ES 98 03 08 99 | ES 98 10 08 99 | ES 98 17 09 99 | ES 98 95 01 01 |
| CG 25 03 11 85 | ES 98 04 08 99 | ES 98 11 08 99 | ES 98 18 09 99 | ES 98 98 01 01 |
| 00 17 11 85 | ES 98 05 08 99 | ES 98 12 08 99 | ES 98 20 09 99 | ES 98 112 05 01 |
| 00 21 11 94 | ES 98 06 08 99 | ES 98 13 08 99 | ES 98 21 09 99 | ES 98 113 05 01 |
| ES 98 01 08 99 | ES 98 07 08 99 | ES 98 14 08 99 | ES 98 30 10 99 | ES 98 115 06 01 |
| ES 98 02 08 99 | ES 98 08 08 99 | ES 98 15 08 99 | ES 98 38 02 00 | |

THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.

| | Countersigned By: |
|---|---|
| Endorsement Effective:    October 1, 2001 | |
| | (Authorized Representative) |
| Named Insured:    Bay Area Construction Framers, Inc. | |

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY.
THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.

Page 2 0f 2

COMMERCIAL GENERAL LIABILITY
CG 00 01 07 98

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

         (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Copyright, Insurance Services Office, Inc., 1997

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

(d) At or from any premises, site or location on which any insured or any contractors or sub-contractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this sub-paragraph does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or sub-contractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

    However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

Copyright, Insurance Services Office, Inc., 1997

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. Exclusions

   This insurance does not apply to:

   a. "Personal and advertising injury":

      (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

      (2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

      (3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

      (4) Arising out of a criminal act committed by or at the direction of any insured;

      (5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

      (6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

      (7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

      (8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

      (9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section; or

      (10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

   b. Any loss, cost or expense arising out of any:

      (1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

      (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

1. Insuring Agreement

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations;

      provided that:

      (1) The accident takes place in the "coverage territory" and during the policy period;

      (2) The expenses are incurred and reported to us within one year of the date of the accident; and

      (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

Copyright, Insurance Services Office, Inc., 1997

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   (1) First aid administered at the time of an accident;

   (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. Exclusions

   We will not pay expenses for "bodily injury":

   a. To any insured.

   b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. To a person injured on that part of premises you own or rent that the person normally occupies.

   d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. To a person injured while taking part in athletics.

   f. Included within the "products-completed operations hazard".

   g. Excluded under Coverage A.

   h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

(2)  Provides us with written authorization to:

    (a)  Obtain records and other information related to the "suit"; and

    (b)  Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a.  We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b.  The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1.  If you are designated in the Declarations as:

a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b.  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2.  Each of the following is also an insured:

a.  Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1)  "Bodily injury" or "personal and advertising injury":

    (a)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

    (b)  To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above;

    (c)  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

    (d)  Arising out of his or her providing or failing to provide professional health care services.

(2)  "Property damage" to property:

    (a)  Owned, occupied or used by,.

    (b)  Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b.  Any person (other than your "employee"), or any organization while acting as your real estate manager.

c.  Any person or organization having proper temporary custody of your property if you die, but only:

(1)  With respect to liability arising out of the maintenance or use of that property; and

(2)  Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. Bankruptcy

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

   a. Primary Insurance

      This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

   b. Excess Insurance

      This insurance is excess over:

      (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

         (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

         (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

         (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

         (d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

      (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

Copyright, Insurance Services Office, Inc., 1997

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

Copyright, Insurance Services Office, Inc., 1997   CG 00 01 07 98

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

   (1) The injury or damage arises out of:

      (a) Goods or products made or sold by you in the territory described in a. above; or

      (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

   (2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

Copyright, Insurance Services Office, Inc., 1997

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

     (1) Power cranes, shovels, loaders, diggers or drills; or

     (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

     (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

     (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

     However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

     (1) Equipment designed primarily for:

       (a) Snow removal;

       (b) Road maintenance, but not construction or resurfacing; or

       (c) Street cleaning;

     (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

     (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

     (1) Products that are still in your physical possession; or

     (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

       (a) When all of the work called for in your contract has been completed.

       (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

       (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

     Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

     Copyright, Insurance Services Office, Inc., 1997      CG 00 01 07 98   □

b. Does not include "bodily injury" or "property damage" arising out of:

   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

   (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; and

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   (1) You;

   (2) Others trading under your name; or

   (3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT – AGGREGATE LIMITS OF INSURANCE (PER PROJECT)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

The General Aggregate Limit under LIMITS OF INSURANCE (SECTION III) applies separately to each of your projects away from premises owned by or rented to you.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund can be amended or offered a refund. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 21 11 94

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
 TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

Copyright, Insurance Services Office, Inc., 1994

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1994

IL 00 21 11 94

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 01 08 99

SELF-INSURED RETENTION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

### SCHEDULE

| Amount and Basis of Self-Insured Retention: | |
|---|---|
| $ | per claim |
| $ 10,000 | per occurrence |

**Application of Endorsement:** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the self-insured retention applies to all damages, however caused):

> **NO LIMITATIONS**

1. Our obligation under the policy to pay damages or SUPPLEMENTARY PAYMENTS - COVERAGES A AND B to you or on your behalf applies only to the amount of damages or SUPPLEMENTARY PAYMENTS - COVERAGES A AND B in excess of any self-insured retention amounts stated in the Schedule above as applicable to such coverages, and the limits of insurance applicable to such coverages will not be reduced by the amount of such self-insured retention.

   As a condition precedent to our obligations to provide or continue to provide indemnity, coverage or defense hereunder, the insured, upon receipt of notice of any "suit", incident or "occurrence" that may give rise to a "suit", and at our request, shall

pay over and deposit with us all or any part of the self-insured retention amount as specified in the policy, requested by us, to be applied by us as payment toward any damages or SUPPLEMENTARY PAYMENTS - COVERAGES A AND B incurred in the handling or settlement of any such incident, "occurrence" or "suit".

2. The self-insured retention amounts stated in the Schedule apply as follows:

   A. Per Claim Basis - if the self-insured retention is on a "per claim" basis, the self-insured retention amount applies separately to all damages and SUPPLEMENTARY PAYMENTS - COVERAGES A AND B because of "bodily injury", "property damage" or "personal and advertising injury" sustained by any one person or organization as the result of any one "occurrence" or offense.

   B. Per Occurrence Basis - if the self-insured retention is on a "per occurrence" basis, the self-insured retention amount applies to all damages and SUPPLEMENTARY PAYMENTS - COVERAGES A AND B because of "bodily injury", "property damage" or "personal and advertising injury" as the result of any one "occurrence" regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999  American Safety Indemnity Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

ASIC - ES 98 02 08 99

## ABSOLUTE ASBESTOS EXCLUSION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

A. This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the mining, manufacture, handling, use, distribution, sale, existence, abatement, "enclosure", "encapsulation" or removal of "asbestos" in any form.

We have no duty to defend you or to investigate any "occurrence", offense or "suit" against you which arises out of "asbestos" in any form. If you investigate or defend any such "occurrence", offense or "suit", we have no duty to pay the expenses of the investigation or defense, nor do we have any duty to reimburse you.

B. SECTION V. - DEFINITIONS is amended to add the following additional definitions:

1. "Asbestos" means naturally occurring hydrated fibrous mineral silicates that possess a unique crystalline structure and are incombustible in air, including chrysotile, amosite, crocidolite, tremolite, anthophyllite, actinolite, and any material which contains "asbestos".

2. "Encapsulant" means a substance applied directly to the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance, either by creating a membrane over the surface or by penetrating the material or substance and binding its components together.

3. "Encapsulation" means the coating of the surface of a material or substance with an "encapsulant" to prevent the discharge, dispersal, release or escape of any part of that material or substance.

4. "Enclosure" means those procedures and operations (excluding "encapsulation") required to construct an airtight, impermeable wall, ceiling or other permanent barrier around the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 03 08 99

## AMENDED DEFINITIONS ENDORSEMENT
## OCCURRENCE OR DUTY TO DEFEND

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that Par. 13., "occurrence", of SECTION V - DEFINITIONS is deleted in its entirety and replaced with the following:

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions that happens during the term of this insurance. "Property damage", "bodily injury" or "personal and advertising injury" which commenced prior to the effective date of this insurance will be deemed to have happened prior to, and not during, the term of this insurance.

There shall be no obligation of the Company to defend any "suit" against the insured or any Additional Insured if such "suit" does not allege an "occurrence" as defined in this Endorsement.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999  American Safety Indemnity Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 04 08 99

## EMPLOYMENT PRACTICES EXCLUSION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

1.  Any person arising out of any:
    a.  Refusal to employ that person;
    b.  Termination of that person's employment;
    c.  Refusal or failure to promote that person;
    d.  Employment-related practices, policies, acts or omissions, including but not limited to coercion, promotion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or
    e.  Labor contract or agreement, or any employee benefit, or benefit plan or program, including, but not limited to, liability under the National Labor Relations Act, the Davis Bacon Act, the Employee Retirement Income Security Act of 1974, the Americans with Disabilities Act, or any workers' compensation or similar federal or state laws.

2.  The spouse, child, parent, brother or sister, or personal representative or administrator of that person as a consequence of the employment-related practices described in paragraphs a., b., c., d. or e. above.

This exclusion applies:

1.  Whether the insured may be liable as an employer or in any other capacity; and
2.  To any obligation of the insured to share damages with or repay someone else who must pay damages because of the injury.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999 American Safety Indemnity Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 05 08 99

## MEDICAL PAYMENTS EXCLUSION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

SECTION I, COVERAGE C. - MEDICAL PAYMENTS is deleted in its entirety and any references to it in the Coverage Part do not apply.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 06 08 99

OTHER INSURANCE AMENDATORY ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS is amended as follows:

Par. 4., Other Insurance is hereby amended as follows:

4.  Paragraph a., Primary Insurance; Paragraph b., Excess Insurance and Paragraph c., Method of Sharing are deleted in their entirety and the following language is inserted in lieu thereof:

    a.  This insurance is primary, except when b. below applies.

    b.  This insurance is excess over any other insurance that is valid and collectible insurance available to the insured or any Additional Insured whether such insurance is primary, excess, contingent or on any other basis and regardless of the nature, type, date of issuance or limits of such other insurance available to the insured or any Additional Insured. Our obligation under this policy shall not arise until the limits of such other insurance are exhausted.

    c.  As a condition precedent to our obligations to provide or continue to provide indemnity, coverage or defense hereunder, each insured, upon receipt of notice of any "suit", incident or "occurrence" that may give rise to a "suit", shall first demand indemnity, coverage and defense from each other insurer that may provide indemnity, coverage or defense to it. The insured waives any right it may have to insist that we provide indemnity, coverage or defense when any other insurer may also provide indemnity, coverage or defense to the insured. The insured waives any rights it may have to a targeted tender or any other right to select us as the insurer to provide indemnity, coverage or defense.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 07 08 99

## PROFESSIONAL LIABILITY EXCLUSION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

A.  This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any "professional services" by or for the insured.

B.  SECTION V. is amended to add the following definitions:

1.  "Professional services" means:
    a.  The preparing, approving, recommending or failing to prepare, approve or recommend maps, drawings, opinions, reports, surveys, change orders, designs, specifications, hazard assessment plans, response actions, abatement methods or products, air monitoring plans or insurance requirements;
    b.  Supervisory, inspection, training or engineering services; or
    c.  Commercial or industrial hygiene, air monitoring, testing, laboratory analysis, public health, legal, accounting, architectural, medical, nursing, data processing, consulting or investment advisory services.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999 American Safety Indemnity Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 08 08 99

PRE-EXISTING INJURY OR DAMAGE EXCLUSION -- FORM A

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

This insurance does not apply to:

1. Any "occurrence", incident or "suit" whether known or unknown to any officer of the Named Insured:
   a. which first occurred prior to the inception date of this policy or the retroactive date of this policy, if any; or
   b. which is, or is alleged to be, in the process of occurring as of the inception date of this policy or the retroactive date of this policy, if any, even if the "occurrence" continues during this policy period.

2. Any damages arising out of or relating to "bodily injury", "property damage" or "personal and advertising injury" which are known to any officer of any insured, which are in the process of settlement, adjustment or "suit" as of the inception date of this policy, or the retroactive date of this policy, if any.

We shall have no duty to defend any insured or Additional Insured against any loss, "occurrence", incident or "suit", or other proceeding alleging damages arising out of or related to "bodily injury", "property damage" or "personal and advertising injury" to which this Endorsement applies.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 10 08 99

## PRIMARY INSURANCE ENDORSEMENT FOR SPECIFIED PROJECT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed as follows:

Solely with respect to the specified project listed below and subject to all terms, conditions and exclusions of the policy, this insurance shall be considered primary to the Additional Insured listed below if other valid and collectible insurance is available to the Additional Insured for a loss we cover for the Additional Insured under COVERAGE A, but only as respects the sole negligence of the Named Insured in the performance of "your work" which is performed by the Named Insured for the Additional Insured.

| Additional Insured(s) | Specified Project |
|---|---|
| Those parties requiring primary wording and Additional Insured status in a written contract with the Named Insured. | Those projects reported to, in writing, and on file with the Company. |

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999  American Safety Indemnity Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 11 08 99

## DATE RECOGNITION EXCLUSION ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, or related to, whether directly or indirectly, any of the following:

1. Any actual or alleged failure, modification to, malfunction or inadequacy of:
   a. any of the following, whether belonging to any insured or to others or whether recommended, sold, produced, designed or developed by any insured or others:
      (1) computer hardware, including micro-processors;
      (2) computer application software;
      (3) computer operating systems and related software;
      (4) computer networks;
      (5) micro-processors, semi-conductors, or digital, analog or integrated devices not part of any computer systems; or
      (6) any other computerized or electronic equipment or components; or

   b. any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph 1.a. of this Endorsement.

   due to the inability to correctly recognize, process, distinguish, interpret or accept any date, including, but not limited to the change to the year 2000 and beyond, or the leap year in the year 2000 or beyond.

2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph 1. of this Endorsement.

This exclusion applies regardless of any other cause, event or incident that contributes concurrently or in any sequence to the "bodily injury", "property damage" or "personal and advertising injury". This exclusion also applies regardless of any changes or modifications made at any time to any of the items listed in Paragraph 1.a. to correct or attempt to correct the inability to recognize, process, distinguish, interpret or accept any date.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 12 08 99

SUBSIDENCE EXCLUSION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of or related to the subsidence of the natural surface of the ground.

For the purposes of this exclusion, subsidence shall mean any earth movement including but not limited to earthquake, landslide, mudflow, earth sinking, earth rising, earth shifting or earth settling.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 13 08 99

ENDORSEMENT -- WAIVER OF SUBROGATION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III -- LIMITS OF INSURANCE.

| | |
|---|---|
| Name of Person or Organization: | Those parties requiring a waiver of subrogation in a written contract with the Named Insured. |
| Name of Project: | Those projects reported to, in writing, and on file with the Company. |
| Location of Project: | The specific location of those projects on file with the Company. |

In consideration of the payment of premiums, we waive our rights to subrogation (excluding indemnity or contribution), against the person or organization named above in connection with the sole negligence of the Named Insured in the performance of "your work" on the project described below, subject to the following conditions and exclusions.

Subrogation shall not be waived with respect to any liability arising directly or indirectly out of any of the following actions of persons or organizations named above:

1. "Professional services" on or in connection with the Project;
2. Modifying or changing the Project specifications without the express written consent of the insured; and
3. Any activities beyond the scope of monitoring the progress of the insured on the Project.

This waiver of subrogation shall apply solely to our rights of subrogation on the Project referenced and

shall not, directly or indirectly apply to a waiver of any rights of indemnity or contribution.

As used in this Endorsement, the term "professional services" shall mean:

a. The preparing, approving, recommending or failing to prepare, approve or recommend maps, drawings, opinions, reports, surveys, change orders, designs, specifications, hazard assessment plans, response actions, abatement methods or products, air monitoring plans or insurance requirements;
b. Supervisory, inspection, training or engineering services; or
c. Commercial or industrial hygiene, air monitoring, "hazardous substance" testing, laboratory analysis, public health, legal, accounting, architectural, medical, nursing, data processing, consulting or investment advisory services.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999 American Safety Indemnity Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 14 08 99

CROSS CLAIMS OR SUITS EXCLUSION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

This insurance does not apply to:

Any claim or "suit" for damages by any insured against another insured.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999  American Safety Indemnity Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 15 08 99

## ADDITIONAL INSURED -- OWNERS, LESSEES OR CONTRACTORS
### (MODIFIED FORM B)

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

| | |
|---|---|
| Name of Person or Organization: | Those parties required to be named as an Additional Insured in a written contract with the Named Insured. |
| Name of Project: | Those projects on file with the Company. |
| Effective Date: | October 1, 2001 |

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy:

WHO IS AN INSURED (SECTION II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" which is performed at the project designated above. This Endorsement applies only to operations performed by or on behalf of the Named Insured on or after the effective date of this Endorsement.

Coverage under this Endorsement applies only as respects a legally enforceable contractual agreement with the Named Insured and only for liability arising out of or relating to the Named Insured's sole negligence and only for an "occurrence" or coverage not otherwise excluded in the policy to which this Endorsement applies.

It is further understood and agreed that irrespective of the number of entities named as insureds under this policy in no event shall the Company's limits of liability exceed the limits of liability designated in the Declarations.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999 American Safety Indemnity Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 17 09 99

ABSOLUTE LEAD EXCLUSION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

The following exclusion is added to SECTION I. COVERAGE A. and COVERAGE B., Par. 2. of the policy.

A.  This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the mining, manufacture, handling, use, distribution, sale, existence, abatement, "enclosure", "encapsulation" or removal of "lead" in any form.

We have no duty to defend you or to investigate any "occurrence", offense or "suit" against you which arises out of "lead" in any form. If you investigate or defend any such "occurrence", offense or "suit", we have no duty to pay the expenses of the investigation or defense, nor do we have any duty to reimburse you.

B.  SECTION V. - DEFINITIONS is amended to add the following additional definitions:

1.  "Encapsulant" means a substance applied directly to the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance, either by creating a membrane over the surface or by penetrating the material or substance and binding its components together.

2.  "Encapsulation" means the coating of the surface of a material or substance with an "encapsulant" to prevent the discharge, dispersal, release or escape of any part of that material or substance.

3.  "Enclosure" means those procedures and operations (excluding "encapsulation") required to construct an airtight, impermeable wall, ceiling or other permanent barrier around the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance.

4.  "Lead" means the heavy, ductile, soft, solid, naturally occurring metallic element used in paints, pipes, solder, pottery, and batteries, and any substances containing "lead".

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999  American Safety Indemnity Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 18 09 99

## PUNITIVE DAMAGES EXCLUSION ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

This insurance does not apply to any punitive, special or exemplary damages.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 20 09 99

## ENDORSEMENT -- SERVICE OF SUIT CLAUSE

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

It is agreed that the service of process in any "claim" or "suit" on the policy against American Safety Indemnity Company may be made upon the highest one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the policy is issued. The one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the policy is issued is hereby authorized and directed to accept service of process on our behalf in any such "claim" or "suit", provided such "Commissioner", "Director" or "Superintendent" has a

procedure for forwarding "claims" and "suits" to insurance companies by registered or certified mail and agrees to abide by such procedure by mailing via registered or certified mail all documents so served to American Safety Indemnity Company at 1845 The Exchange, Suite 200, Atlanta, Georgia 30339. It is further agreed that the insured shall, by registered or certified mail, send to American Safety Indemnity Company, a copy of all documents relating to the service of process in the "claim" or "suit" as the insured has delivered to the highest one in authority of the Insurance Department of the state or commonwealth wherein the policy is issued.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999 American Safety Indemnity Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 21 09 99

## INDEPENDENT CONTRACTOR WARRANTY ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

It is hereby agreed and understood that this policy is amended to include the following:

As a condition precedent to coverage for the insured under this policy for injury or damage covered by this policy arising directly or indirectly out of the actions of a subcontractor working directly or indirectly on behalf of the Named Insured and for which the Named Insured becomes legally liable, it is hereby agreed and understood that such subcontractor shall maintain occurrence form general liability coverage covering the work performed by such subcontractor with an insurance carrier rated "A'" or better by A.M. Best and with limits of insurance of as least $1,000,000 per occurrence and in the aggregate. Such insurance must be maintained in-force during the term of the work performed by such subcontractor. Such insurance must also include the Named Insured as an Additional Insured. We shall have no obligation for defense or indemnity of any insured for actions of subcontractors if, at any time, the terms and conditions of this Endorsement are not satisfied.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 30 10 99

## MINIMUM RETAINED PREMIUM

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, Par. A.5. is amended to include the following:

5.d. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro-rata. If the first Named Insured cancels, the refund may be less than pro-rata, but we will retain at least $ 31,875, if you cancel. The cancellation will be effective even if we have not made or offered a refund.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 38 02 00

AMENDMENT -- MINIMUM AND DEPOSIT PREMIUM

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

1. Paragraph b. of the PREMIUM AUDIT Commercial General Liability Conditions (SECTION IV) is replaced by the following:

   The minimum and deposit premium for the full policy term applicable to this policy is $127,500.

   At the close of each audit period, we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the audit premium is less than the minimum and deposit premium, the minimum and deposit premium will apply, with no return premium payable to you.

2. Paragraph 5. of the CANCELLATION Common Policy Condition is replaced by the following:

   If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro-rata. If the first Named Insured cancels, the refund will reflect either a 25% Minimum Earned Premium or a Short Rate charge, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 1999 American Safety Indemnity Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 95 01 01

EXTERIOR INSULATION AND FINISH SYSTEM (EIFS) EXCLUSION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy. This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of or caused by the actual or alleged:

1. Design, construction, fabrication, preparation, installation, application, maintenance, or service of an "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part    thereof.

2. Any work or operations with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system" is used on that particular part of that structure.

For the purposes of this endorsement, an "exterior insulation and finish system" means an exterior cladding or finish system used on any part of any structure, and consisting of:

a. a rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

b. the adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

c. a reinforced base coat; and

d. a finish coat providing surface texture and color.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 98 01 01

INFRINGEMENT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

The following exclusion is added to the Exclusions of SECTION I, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY and SECTION I, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY:

This policy does not apply to any claim based upon or arising out of, directly or indirectly, or in any way relating to, claims relating to any actual or alleged infringement of any copyright, patent, trademark, tradename or intellectual property right.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 112 05 01

CONTRACTOR'S POLLUTION LIABILITY COVERAGE ENDORSEMENT

*THE COVERAGE AFFORDED UNDER THIS ENDORSEMENT IS WRITTEN ON A CLAIMS-MADE AND REPORTED BASIS*

*CLAIM RELATED COSTS AND SUPPLEMENTARY PAYMENTS REDUCE THE LIMITS OF INSURANCE*

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

A. The following shall be added to SECTION I, COVERAGE A., Par. 1. of the policy:

1. Notwithstanding the terms of SECTION I, COVERAGE A., Par. 2., Exclusion f.(1) of the policy, but subject to all other terms, conditions and exclusions of the policy, we will pay those sums in excess of the self-insured retention that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" occurring prior to the expiration or cancellation date of the policy, whichever is earlier, and subsequent to the Retroactive Date, as set forth in this Endorsement, caused solely by a "pollution incident" resulting from the performance of those operations designated in the Classification Section of the Declarations performed subsequent to the Retroactive Date set forth in this Endorsement and prior to the expiration or cancellation date of the policy, whichever is earlier, in the "coverage territory". The "bodily injury" or "property damage" must first manifest itself during the policy period.

2. The insurance afforded under this Endorsement applies only if a "claim" for damages because of "bodily injury" or "property damage" is first made against and reported to us by, the insured, in writing, during the policy period or Optional Extended Reporting Period, if applicable. A "claim" by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

   (a) When notice of such "claim" is received and recorded by us; or
   (b) When we make a settlement in accordance with paragraph 1. above.

B. The following exclusions are added to SECTION I, COVERAGE A, Par. 2. of the policy.

This insurance does not apply to any "claim" or "suit":

1. "Arising from" or related to those activities, procedures or operations required to clean up detoxify, dilute, remove or abate "pollutants".
2. "Arising from" or related to the discharge, release, escape, dispersal, contamination or exposure to "pollutants" in whatever form, which occurs after the completion of "your work".
3. "Arising from" any discharge, dispersal, release, seepage, migration, inhalation or escape of "pollutants" on, at, under or emanating from any property, location, structure or site you currently or have ever owned, operated or rented.
4. "Arising from" : (1) any storage, "disposal" or landfilling of any hazardous or nonhazardous substances; or (2) any "pollution incident" on, at, under or emanating from any location to which you or others working directly or indirectly on your behalf, arrange for, send or ever have sent materials for treatment, recycling, reclamation, storage or "disposal".
5. Based upon or arising out of a "pollution incident" existing, commencing or occurring, in whole or in part, prior to the policy effective date stated in the Declarations.
6. Claimed by any of the following:
   (a) any related business enterprise which is operated, managed or owned, in whole or in part, by you, or
   (b) your parent company of the insured, or
   (c) any of your affiliated or subsidiary companies.

Copyright© 2001 American Safety Indemnity Company

7. "Arising from" any goods, products or equipment manufactured, sold, handled, distributed, installed or disposed of by you, your subsidiaries, any entity which wholly or partly owns, operates or manages you or any subsidiary of such entity, others under license by you, your vendors or subcontractors or any other person or organization working directly or indirectly on your behalf.

8. "Arising from" any insured's involvement as a partner, officer, director, stockholder, employer or employee of any business enterprise not named in the Declarations, or "arising from" any insured's involvement in operations rendered to or on behalf of, any business enterprise not named in the Declarations that wholly or partly owns the insured or which to any extent controls, operates, or manages the insured, or that is wholly or partly owned by an insured, or in which an insured is an officer, partner, director or employee, or which is to any extent controlled, operated, or managed by an insured.

9. (a) "Bodily injury" or "property damage" "arising from", relating to, or resulting from the actual or alleged existence, ingestion, inhalation, abatement, testing, monitoring, remediation, "enclosure", "microbiological decontamination", repair or removal of "mold, mildew or fungus" in any form.

(b) Any loss, cost, expense, or damages, whether actual or alleged, "arising from", relating to, or resulting from "mold, mildew or fungus" "arising from" any cause whatsoever, whether caused by an act or omission of any insured or any third party, whether caused by chronic water intrusion into the building envelope, whether caused by the presence of water on. or in any substrate, whether caused by construction defects, whether caused by action or inaction of any insured or any third party, whether caused by any act of God, or whether caused by any combination of factors.

(c) "Bodily injury", "property damage", or repair, replacement, remediation, decontamination or removal of any material or building structure or member "arising from" the existence, ingestion, inhalation, abatement, testing, monitoring, "enclosure", "microbiological decontamination", remediation, repair or removal of any contaminant that causes any alleged chemical sensitivity.

We have no duty to defend any insured, investigate any "pollution incident", offense, "claim" or "suit" against any insured, settle any "claim" on behalf of any insured, or indemnify any insured with regard to any damages, offense or "suit" "arising from" any pollution incident," resulting directly in "bodily injury", or "property damage" or caused by or "arising from" the existence of "mold, mildew or fungus" in any form whether the "mold, mildew or fungus" is the sole cause, concurrent cause, partial cause, or contributing cause of any damage or injury claimed.

If you investigate or defend any such "pollution incident", offense or "suit", we have no duty to pay the expenses of the investigation or defense, nor do we have any duty to reimburse you.

C. All coverage, including all "claim related costs", under this Endorsement shall be subject to a sublimit of $100,000 per "pollution incident" and $100,000 total for all "pollution incident(s) " regardless of the number of "pollution incidents", "claims", insureds, "suits", persons making "claims" or "suits" or certificates of insurance issued. The sublimit shall be included within and will reduce the each occurrence limit and the overall policy General Aggregate described in Section III of the policy.

D. The following definitions are added to SECTION V of the policy:

"Arising from" means arising out of, relating to or resulting from.

"Claim" means any written demand, notice, request for defense, request for indemnity, or other legal or equitable proceeding against the insured by a person, entity or asserted class for damages because of "bodily injury" or "property damage".

"Claim related costs" means all costs and expenses associated with the handling, defense and settlement of any "claim" or "suit", including, but not limited to, amounts for damages, medical expenses, attorneys' fees, court costs, arbitration or mediation costs or expenses, expert witness fees, investigative fees, adjustment fees, SUPPLEMENTARY PAYMENTS and any other "claim" or "suit" related costs or expenses.

"Clean-up costs" means expenses incurred in the removal, detoxification, dilution, neutralization, or remediation of "pollutants" in contaminated soil (including any building or structure thereupon), surface water or groundwater, arising directly out of a "pollution incident" provided such expenses:

1. Are specifically mandated by a governmental entity duly acting under the authority of environmental law(s);

"Disposal" means all activities associated with the deposit of "pollutants" or other materials at a regulated or unregulated disposal site, including but not limited to any "landfill".

"Enclosure" means those procedures and operations required to construct an airtight, impermeable wall, ceiling or other permanent barrier around surfaces contaminated by a material or substance in order to prevent the discharge, dispersal, release or escape of any part of that material or substance.

"Landfill" means a regulated or unregulated disposal site used for the "disposal" of solid or liquid wastes on or beneath the land.

"Microbiological decontamination" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate infectious microorganisms, fungi, bacteria and allergens.

"Mold, mildew or fungus" means any plant-like group that does not produce chlorophyll and derives food either by decomposing organic matter from dead plants and animals or by parasitic attachment to living organisms or any substance specifically or commonly referred to as mold, mildew, or fungus.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, toxic chemicals and waste materials.

"Pollution incident" means the actual discharge, dispersal, release or escape of "pollutants" into or upon land, the atmosphere or any watercourse or body of water, provided such conditions are not naturally present in the environment.

E.  Solely with respect to the coverage provided under this Endorsement, the definition of "bodily injury" contained in SECTION V, Par. 3. of the policy is deleted in its entirety and the following language is inserted in lieu thereof.

3.  "Bodily injury" means physical injury, sickness or disease sustained by a person, including death resulting from any of these, arising directly out of a "pollution incident". "Bodily injury" includes mental anguish or emotional distress, but only if resulting directly from physical injury, sickness or disease sustained by the same person.

F.  Solely with respect to the coverage afforded under this Endorsement, the definition of "property damage" shall be amended to include "clean-up costs".

G.  The following Conditions are added under SECTION IV:

Reports. A condition precedent to coverage under the policy shall be for the insured to notify us in writing of any "pollution incident" as soon as possible, and in any event, not later than ten (10) days after any supervisory employee becomes aware of any such event.

H.  Solely as respects the coverage provided by this Endorsement, the following EXTENDED REPORTING PERIOD OPTION is hereby added:

EXTENDED REPORTING PERIOD OPTION

1.  Automatic Extended Reporting Period
    a.  Upon termination of this policy for any reason other than non-payment of premium or non-compliance with the terms and conditions of this policy, a "claim" first made against the insured and reported to us, in writing, within 30 days of the end of the policy period will be deemed to have been made on the last day of the policy period, provided that the "claim" is for damages because of "bodily injury" or "property damage" because of a "pollution incident" resulting from the performance of those operations designated in the Declarations in the "coverage territory" provided:
        (1) The "bodily injury" or "property damage" takes place subsequent to the Retroactive Date as set forth in this Endorsement and before the end of the policy period;
        (2) The "bodily injury" or "property damage" first manifests itself subsequent to the Retroactive Date as set forth in this Endorsement and before the end of the policy period; and
        (3) The damages arise out of the performance of those operations designated in the Classification Section of the Declarations subsequent to the Retroactive Date as set forth in this Endorsement and before the end of the policy period.

    All coverage shall be subject to all of the policy terms, conditions and exclusions. The Automatic Extended Reporting Period shall only apply if no other similar insurance is in force at the time of the Automatic Extended Reporting Period. The Automatic Extended Reporting Period shall not in any way reinstate or increase the Limits of Insurance or extend the policy period.

2. <u>Optional Extended Reporting Period</u>
   This Section applies only if:
   a. We cancel or non-renew this policy for any reason except non-payment of the premium or non-compliance with the terms and conditions of this policy; or
   b. We renew or replace this policy with other contractor's pollution liability insurance that:
      (1) Provides claims-made coverage for "bodily injury" and "property damage" liability and "clean-up costs"; and
      (2) Has a Retroactive Date later than the one as set forth in this Endorsement.

3. If we provide the Extended Reporting Period Endorsement:
   a. A "claim" first made against the insured and reported to us in writing within one year after the end of the policy period will be deemed to have been made on the last day of the policy period, provided that the "claim" is for damages because of "bodily injury" or "property damage" because of a "pollution incident" caused by the performance of those operations designated in the Classification Section of the Declarations in the "coverage territory" subsequent to the Retroactive Date as set forth in this Endorsement and before the end of the policy period provided:
      (1) The "bodily injury" or "property damage" takes place subsequent to the Retroactive Date as set forth in this Endorsement and before the end of the policy period;
      (2) The "bodily injury" or "property damage" first manifests itself subsequent to the Retroactive Date as set forth in this Endorsement and before the end of the policy period; and
      (3) The damages arise out of the performance of those operations designated in the Classification Section of the Declarations subsequent to the Retroactive Date as set forth in this

Endorsement and before the end of the policy period.
      b. The Extended Reporting Period, if purchased, is available by endorsement and cannot be renewed. All coverage during the Extended Reporting Period is subject to all of the policy terms, conditions and exclusions. The Extended Reporting Period, if purchased, starts on the effective termination date of this policy.
      c. The Extended Reporting Period Endorsement will not reinstate or increase the Limits of Insurance or extend the policy period.

4. We will issue this Endorsement if the first Named Insured shown in the Declarations:
   a. Makes a written request for the Extended Reporting Period which we receive within 30 days after the end of the policy period; and
   b. Promptly pays the additional premium when due.

   The Extended Reporting Period Endorsement will not take effect unless the additional premium is paid when due.

5. We will determine the actual premium for the Extended Reporting Period Endorsement in accordance with our rules and rates. In doing so, we may take into account the following:
   a. The exposures insured;
   b. Previous types and amounts of insurance;
   c. Limits of insurance available under this policy for future damages; and
   d. Other related factors.

 October 1, 2001

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Copyright© 2001 American Safety Indemnity Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 113 05 01

WRAP-UP EXCLUSION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

This insurance does not apply to any work insured under a consolidated (Wrap Up) Insurance Program and this insurance shall have no obligation to defend or indemnify for any claim or any project where such wrap-up insurance exists or has ever existed. This exclusion applies whether or not a claim is covered under such wrap-up insurance, the limits of such wrap-up insurance are exhausted, the carrier is unable or unwilling to pay or for any other reason.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ASIC - ES 98 115 06 01

## MOLD AND MILDEW EXCLUSION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

A.  This insurance does not apply to any of the following:

1.  "Bodily injury", "property damage" or "personal and advertising injury" arising out of, relating to or resulting from the actual or alleged existence, ingestion, inhalation, abatement, testing, monitoring, remediation, "enclosure", decontamination, repair or removal of "mold, mildew or fungus" in any form.

2.  Any loss, cost, expense or damages, whether actual or alleged, arising out of, relating to, or resulting from "mold, mildew or fungus" that arises from any cause whatsoever, whether caused by any act or omission of any insured or any third party, whether caused by chronic water intrusion into the building envelope, whether caused by the presence of water on or in any substance or substrate, whether caused by construction defects, whether caused by action or inaction of any insured or any third party, whether caused by any act of God, or whether caused by any combination of factors.

3.  "Bodily injury", "property damage" or "personal and advertising injury" or repair, replacement, remediation, decontamination or removal of any material or building structure or member arising out of the existence, ingestion, inhalation, abatement, testing, monitoring, "enclosure", "microbiological decontamination", remediation, repair or removal of any contamination that causes any alleged chemical sensitivity.

We have no duty to defend any insured, investigate any "occurrence", offense or "suit" against any insured, settle any claim on behalf of any insured, or indemnity any insured with regard to any "occurrence", offense or "suit" that arises out of any contamination, "bodily injury", "property damage" or "personal and advertising injury" caused by or arising out of the existence of "mold, mildew or fungus" in any form whether the "mold, mildew or fungus" is the sole cause, concurrent cause, partial cause, or contributing cause of any damage or injury claimed.

If you investigate or defend any such "occurrence", offense or "suit", we have no duty to pay the expenses of the investigation or defense, nor do we have any duty to reimburse you.

B.  SECTION V - DEFINITIONS is amended to add the following additional definition:

1.  "Enclosure" means those procedures and operations required to construct an airtight, impermeable wall, ceiling or other permanent barrier around surfaces contaminated by a material or substance in order to prevent the discharge, dispersal, release or escape of any part of that material substance.

2.  "Microbiological decontamination" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate microorganisms, fungi, bacteria, allergens and other similar matter.

3.  "Mold, Mildew or Fungus" means any plant-like group that does not produce chlorophyll and derives food either by decomposing organic matter from dead plants and animals or by parasitic attachment to living organisms or any substance specifically or commonly referred to as mold, mildew or fungus.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

# EXHIBIT C

# BRECKENRIDGE & ASSOCIATES

### A Risk Management Company

26691 Plaza, Suite 260
Mission Viejo, California 92691
Tel. (949) 367-0373
Fax (949) 367-8597
pgatourl@pacbell.net

January 19, 2002

REGISTERED MAIL – RETURN RECEIPT REQUESTED

Bay Area Construction Framers
7080 Donlon Way
Suite 204
Dublin, California 94568

Attn:   Controller or Risk Manager

RE:   **Portola Meadows Townhomes Association v. Davidon Homes, et al.**
    Insured:      Bay Area Construction Framers, Inc.
    Policy:        XGI-00-1826-001
    Claim:        XGI.00.1826.001.04

To Whom It May Concern:

American Safety Insurance Services, Inc. (ASIS) is the Program Manager for American Safety Risk Retention Group (ASRRG). ASIS acknowledges receipt of a complaint filed by Portola Meadows Townhomes Association against Davidon Homes.

Breckenridge & Associates has been retained to conduct an investigation to determine whether Bay Area Construction Framers has coverage under the above-mentioned policy of insurance issued to Bay Area Construction Framers. We have now completed a review of all materials submitted to date, including notes, correspondence and investigative reports. We have also reviewed Policy number XGI-00-1826-001 issued to Bay Area Construction Framers, Inc. with a policy period of August 15, 2000 to October 1, 2001.

For the reasons stated herein, we do not believe there is coverage for the damages sought against Bay Area Construction Framers in this matter under the terms and conditions of the CGL policy. For the reasons stated herein we will be unable to participate in the defense of Bay Area Construction Framers, and we will be unable to indemnify any insured for any award or judgment by reason of this claim.

After a thorough review of the notes, correspondence and investigative reports in this matter, it appears that any and all damages would have commenced before the effective

date of the ASRRG CGL Policy, number XGI-00-1826-001, with an inception date of August 15, 2000.

The CGL policy provides in pertinent part under Section I Coverage A, subsection 1 of the Commercial General Liability Coverage Form as follows:

> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply...
>
>    b. This insurance applies to "bodily injury" and "property damage" only if:
>       (1) the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>       (2) The "bodily injury" or "property damage" occurs during the policy period.

> 2.            Exclusions

> This insurance does not apply to:

> a.  Expected or Intended Injury

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Additionally, endorsement ASIC ES 98 18 09 99, entitled Punitive Damages Exclusion, states:

> The following exclusion is added to SECTION I, Coverage A. and Coverage B, Par. 2 of the policy.

> This insurance does not apply to any punitive, special or exemplary damages.

Pursuant to the Amended Definition Endorsement on Occurrence or Duty to Defend (ASRRG ES 98 03 08 99), the CGL policy provides the following definition of "occurrence":

> 13. "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions that happens during the term of this insurance. "Property damage" or "bodily injury" which commenced prior to the effective date of this insurance will be deemed to have happened prior to, and not during, the term of this insurance.
>
> There shall be no obligation of the Company to defend any "suit" against the insured or any Additional Insured if such "suit" does not allege an "occurrence" as defined in this Endorsement.
>
> All other terms, conditions, and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Section V of the Commercial General Liability Coverage Form (CG 00 01 07 98) further defines "suit" as follows:

> 18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" for which this insured applies are alleged...

In addition, given there is no "occurrence" as defined in the Amended Definition Endorsement; ASRRG has no obligation to defend a claim tendered on behalf of Bay Area Construction Framers

Even if the allegations of property damage did constitute an "occurrence " as defined by the CGL Policy, there are specific exclusions within the policy, which would preclude coverage for this claim. Pursuant to the Endorsement for Pre-Existing Injury or Damage Exclusion - Form A (ASRRG ES 98 08 08 99), the CGL Policy further provides as follows:

> This insurance does not apply to:
>
> 1. Any "occurrence", incident or "suit" known or unknown to any officer of the Named Insured:
>    a. which first occurred prior to the inception date of this policy or the retroactive date of this policy, if any; or

b. which is, or is alleged to be, in the process of occurring as of the inception date of this policy or the retroactive date of this policy, if any, even if the "occurrence" continues during this policy period.

2. Any damage arising out of or relating to "bodily injury", "property damage" or "personal and advertising injury" which are known to any officer of any insured, which are in the process of settlement, adjustment or "suit" as of the inception date of this policy, or the retroactive date of this policy, if any.

We shall have no duty to defend any insured or Additional Insured against any loss, "occurrence", incident or "suit", or other proceeding alleging damages arising out of or related to "bodily injury", "property damage" or "personal and advertising injury" to which this Endorsement applies.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Given that on May 21, 1999 Portola Meadows Homeowners Association placed Davidon Homes on notice of certain defective conditions, including alleged framing defects relating to Bay Area Construction Framers work, any and all damages alleged to have occurred, if they were to constitute "property damage", occurred prior to the inception date of ASRRG CGL Policy, number XGI-00-1826-001. There would be no duty to defend or to pay damages on behalf of Bay Area Construction Framers for these preexisting matters.

We also refer you to the Subsidence Exclusion (ASRRG-ES 98 12 08 99) under the ASRRG policy, which states in part:

The following exclusion is added to SECTION I, COVERAGE A, and COVERAGE B, Part 2 of the policy. This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of or related to the subsidence of the natural surface of the ground."

"For the purposes of this exclusion, subsidence shall mean any earth movement including but not limited to earthquake, landslide, mudflow, earth sinking, earth rising, earth shifting or earth settling."

In addition to exclusions incorporated into the policy by endorsement, several of the exclusions contained in the CGL coverage form also eliminate coverage. The policy provides in Section I,

Coverage A:

2. Exclusions

This insurance does not apply to:

b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement.

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage"...

To the extent that Plaintiff's claims seek damage for Breach of Contract, Breach of Warranties, Fraud, Nuisance, Intentional and Negligent Misrepresentation of Fact, Negligence Per Se and Declaratory Relief, the ASRRG policy provides no coverage.

The policy also excludes coverage for:

j. Damage to Property

"Property damage" to:

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

k. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

l. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included

in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.  Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

n.  Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)  "Your product";
(2)  "Your work"; or
(3)  "Impaired property";

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

The policy also includes the following definitions:

8.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
b. You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or
b. Your fulfilling the terms of the contract or agreement.

20.  "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired;

      "Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality,
durability, performance or use of "your product" and

b. The providing of or failure to provide warnings or instructions.

21.    "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

      "Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

The claims set forth in the plaintiff's Complaint all arise with regard to defective work allegedly performed by Bay Area Construction Framers, or its representatives.

Finally, even if the ASRRG policy provided coverage such coverage would be excess as to any other available coverage. Section IV, Par. 4. of the Commercial General Liability Coverage Form as modified by the General Amendatory Endorsement (ASRRG-ES-98 06 08 99) provides as follows:

SECTION IV – Commercial General Liability Conditions is amended as follows:

Par. 4., Other Insurance is hereby amended as follows:

    4. Paragraph a., Primary Insurance; Paragraph b., Excess Insurance and Paragraph c., Method of Sharing are deleted in their entirety and the following language is inserted in lieu thereof:

      a. This insurance is primary, except when b. below applies.

      b. This insurance is *excess* over any other insurance that is valid and collectible insurance available to the insured or any Additional insured whether such Insurance is primary, excess, contingent or on any other basis and regardless of the nature, type, date of issuance or limits of such other insurance

- 7 -

available to the insured or any Additional Insured.
Our obligation under this policy shall not arise until the limits
of such other insurance are exhausted.

Based on all of the foregoing, the ASRRG policy does not provide coverage to Bay Area
Construction Framers for the claims arising out of the Portola Meadows project.

American Safety Risk Retention Group will not defend and/or indemnify Bay Area
Construction Framers in this "suit" as that term is defined in the American Safety policy.

By setting forth the above, American Safety Risk Retention Group does not intend to
waive any of the terms, conditions or defenses available to it under the above policy of
insurance, or pursuant to California law. You should understand that we may rely on
additional or different exclusionary terms or provisions contained in the policy referenced
above if, in the course of subsequent investigation, we discover facts, which would make
other terms of the policy applicable.

The foregoing in no way constitutes, nor should it be considered, a waiver or
relinquishment by ASRRG of any or all other defenses available to it under the terms and
provisions of the policy mentioned above and under applicable laws.

If you believe this claim has been wrongfully denied or rejected, you may have the matter
reviewed by the Consumer Communications Bureau of the California Department of
Insurance, 300 Spring Street, 11th Floor, Los Angeles, California, 90013, Telephone
number (213) 346-6523 or (800) 927-4357.

Sincerely,

Breck Miller, on behalf of
AMERICAN SAFETY INSURANCE SERVICES, Inc.
as program manager for
AMERICAN SAFETY RISK RETENTION GROUP

cc:

American Safety Insurance Service, Inc.
1845 The Exchange
Suite 200
Atlanta, Georgia 30339
Attn: Jay Bach

ABD Insurance & Financial Services
305 Walnut Street
Redwood City, California 94063
Attn: Steve Lee

American E&S Insurance Brokers
101 California Street
Suite 1125
San Francisco, California 94111
Attn: Richard Schlesinger

1  **PROOF OF SERVICE**

2  STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3      I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen

4  years and not a party to the within entitled action; my business address is 3460 Wilshire Blvd., 8th

5  Floor, Los Angeles, California 90010.

6      On February 7, 2008 I caused to be served  the foregoing document described as:

7  **ACCEPTANCE INSURANCE COMPANY'S FIRST AMENDED COMPLAINT FOR**

8  **CONTRIBUTION AND DECLARATORY RELIEF** : on the interested parties as follows:

9

10  Matthew P. Harrison, Esq.
      **LYNBERG & WATKINS**

11  888 South Figueroa Street, 16th Floor
    Los Angeles, CA 90017

12  (213) 624-8700
    (213) 892-2763 Fax

13  [X]   **(BY MAIL)** By placing [ ] **the original** [X] **a true copy** thereof enclosed in a sealed

14  envelope(s) addressed as to the above-named counsel of record or parties in propria persona.
    I deposited such envelope in the mail at Los Angeles, California, with postage thereon fully

15  prepaid.   I am readily familiar with the firm's practice of collection and processing
    correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the

16  ordinary course of business.  I am aware that on motion of party served, service is presumed
    invalid if postal cancellation date or postage meter date is more than one day after date of

17  deposit for mailing in affidavit.

18  []   **(BY FACSIMILE)** I caused said document, along with a signed copy of this Declaration, to
    be transmitted to a facsimile machine telephone number as last given by said counsel or party

19  in propria persona as noted above.

20  [X]   **(STATE)** I declare under penalty of perjury under the laws of the State of California that the
    forgoing is true and correct.

21

22  Dated: February 7, 2008

23  _____
    Maria Didia

24

25

26

27

28

*(left margin, vertical)* Lawyers
3460 Wilshire Blvd, Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

**PROOF OF SERVICE**

*Acceptance Insurance Co. v. American Safety Risk Retention Group, Inc., et al.*

United States District Court Case No.

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 6080 Center Drive, Suite 210, Los Angeles, California 90045.

On March 6, 2008, I served the foregoing documents described as **NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT (28 U.S.C. § 1441(b))** on the interested parties in this action by placing a true copy thereof enclosed in the sealed envelopes addressed as follows:

**SEE ATTACHED SERVICE LIST**

[X ]    BY MAIL: I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ]    BY PERSONAL DELIVERY: I delivered such envelope by hand to the offices of the addressee.

[ ]    VIA FACSIMILE: I caused all of the pages of the above entitled document to be sent to the recipients noted above via electronic transfer (FAX) at the respective facsimile number(s) indicated above.  This document was transmitted by facsimile and transmission reported complete without error.

[X ]    FEDERAL: I certify or declare that I am employed in the office of a member of the bar of this court at whose discretion the service was made.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postal meter date is more than 1 day after date of deposit for mailing in affidavit.

Executed on March 6, 2008, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Angel Quintero, Jr.

1

PROOF OF SERVICE

# SERVICE LIST

### _Acceptance Insurance Co. v. American Safety Risk Retention Group, Inc., et al._

United States District Court Case No.

Raymond C. Dion
Perry E. Rhoads
Koletsky, Mancini, Feldman & Morrow
3460 Wilshire Boulevard, 8th Floor
Los Angeles, CA 90010
Telephone: (213)427-2350
Facsimile: (213)427-2366

Attorneys for Plaintiff,
ACCEPTANCE INSURANCE COMPANY

Michael Larin
Dana Alden Fox
Matthew Harrison
Lynberg & Watkins
888 South Figueroa Street, 16th Floor
Los Angeles, CA 90017-2763
Telephone: (213)624-8700
Facsimile: (213)892-2763

Attorneys for Defendant,
AMERICAN SAFETY RISK RETENTION GROUP, INC.

2

| | |
|---|---|
| 1 | **PROOF OF SERVICE** |
| 2 | *Acceptance Insurance Company v. American Safety Risk Retention Group, Inc., et al.* |
| 3 | Superior Court Case Number BC352725 |
| 4 | STATE OF CALIFORNIA |
| 5 | COUNTY OF LOS ANGELES |
| 6 | I am employed in the County of Los Angeles, State of California. I am over the age of 18 |
| 7 | and not a party to the within action; my business address is 6080 Center Drive, Suite 210, Los Angeles, California 90045. |
| 8 | On March 6, 2008, I served the foregoing documents described as **NOTICE TO STATE** |
| 9 | **COURT AND ADVERSE PARTY OF REMOVAL TO FEDERAL COURT** on the interested parties in this action by placing a true copy thereof enclosed in the sealed envelopes addressed as |
| 10 | follows: |
| 11 | **SEE ATTACHED SERVICE LIST** |
| 12 | |
| 13 | [X]    BY MAIL: I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. |
| 14 | [ ]    BY PERSONAL DELIVERY: I delivered such envelope by hand to the offices of the |
| 15 | addressee. |
| 16 | [ ]    VIA FACSIMILE: I caused all of the pages of the above entitled document to be sent to the recipients noted above via electronic transfer (FAX) at the respective facsimile number(s) |
| 17 | indicated above. This document was transmitted by facsimile and transmission reported complete without error. |
| 18 | |
| 19 | I am readily familiar with the firm's practice of collection and processing correspondence for |
| 20 | mailing. It is deposited with U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or |
| 21 | postal meter date is more than 1 day after date of deposit for mailing in affidavit. |
| 22 | Executed on March 6, 2008, at Los Angeles, California. |
| 23 | I declare under penalty of perjury under the laws of the State of California that the above is true and correct. |
| 24 | |
| 25 | |
| 26 | _____ |
| 27 | Angel Quintero, Jr. |
| 28 | |

1

PROOF OF SERVICE

1

## SERVICE LIST

2

### *Acceptance Insurance Company  v. American Safety Risk Retention Group, Inc., et al.*
Superior Court Case Number BC352725

3

4

Raymond C. Dion

5

Perry E. Rhoads

6

Koletsky, Mancini, Feldman & Morrow
3460 Wilshire Boulevard, 8th Floor

7

Los Angeles, CA 90010
Telephone: (213)427-2350

8

Facsimile: (213)427-2366

9

Attorneys for Plaintiff,

10

ACCEPTANCE INSURANCE COMPANY

11

12

Michael Larin
Dana Alden Fox

13

Matthew Harrison
Lynberg & Watkins

14

888 South Figueroa Street, 16th Floor
Los Angeles, CA 90017-2763

15

Telephone: (213)624-8700

16

Facsimile: (213)892-2763

17

Attorneys for Defendant,

18

AMERICAN SAFETY RISK RETENTION GROUP, INC.

19

20

21

22

23

24

25

26

27

28

2