1 | RAYMOND C. DION (State Bar No. 139206)
BRETT G. HAMPTON (State Bar No. 140535)
2 | **KOLETSKY, MANCINI, FELDMAN & MORROW**
3460 Wilshire Boulevard, Eighth Floor
3 | Los Angeles, CA 90010-2228
Telephone: (213) 427-2350
4 | Facsimile: (213) 427-2366

5 | Attorneys for Plaintiff
ACCEPTANCE INSURANCE COMPANY

6 |

7 | UNITED STATES DISTRICT COURT

8 | FOR THE CENTRAL DISTRICT OF CALIFORNIA

9 |

10 | ACCEPTANCE INSURANCE
COMPANY,
11 |
CASE NO. CV08-01577 GPS (AGRx)
12 | Plaintiff,
**NOTICE OF MOTION AND MOTION TO REMAND CASE; SUPPORTING DECLARATION OF BRETT G. HAMPTON; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
vs.
13 |

14 | AMERICAN SAFETY RISK
RETENTION GROUP, INC., and DOES 1
15 | through 100, inclusively,
Hearing Date: April 28, 2008
Time: 1:30 p.m.
16 | Defendants.
Place: Courtroom 7
Judge: Hon. George P. Schiavelli

17 |

18 | **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

19 | PLEASE TAKE NOTICE that on April 28, 2008, at 1:30 p.m. or as soon thereafter as counsel

20 | may be heard in Courtroom 7 of the above-entitled court located at 312 N. Spring St., Los Angeles,

21 | CA 90012-3014, plaintiff Acceptance Insurance Company will move the Court for an Order remanding

22 | this case back to the Los Angeles County Superior Court.

23 | THIS MOTION IS MADE FOLLOWING THE CONFERENCE OF COUNSEL PURSUANT

24 | TO LOCAL RULE 7-3, WHICH TOOK PLACE VIA TELEPHONE CONFERENCE ON MARCH

25 | 24, 2008.

26 | / / /

27 | / / /

28 |

*Left margin (vertical text):* KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

1        This motion is based on the following memorandum of points and authorities and supporting

2  declarations.    This motion is made on the grounds that Defendant's removal was improper because

3  there is an absence of subject matter jurisdiction as there is no diversity.    The removal is also improper

4  because it is procedurally defective.

5  Dated: March 31, 2008                    KOLETSKY, MANCINI, FELDMAN & MORROW

6

7                    By: _____
                            Raymond C. Dion, Esq.
                            Brett G. Hampton, Esq.

8                    Attorneys for Plaintiff ACCEPTANCE INSURANCE
                    COMPANY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.   BACKGROUND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    California is a Principal Place of Business for Both Plaintiff and Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Ms. Fisher Has Known About This Action for Contribution for Over Two Years and Has Actively Managed This Action During That Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.  LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    Removal of this Case Was Untimely . . . . . . . . . . . . . . . . . . 7

    B.    The Case Should Be Remanded to State Court as There is No Diversity of Citizenship Under the Appropriate Tests for Diversity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Page(s)**

## *CASES*

*Brown v. Demco, Inc.*
    (5th Cir. 1986) 792 F2d 478 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Inland Rubber Corp. v. Triple A Tire Services, Inc.*
    (SD NY 1963) 220 F.Supp. 490, 496 . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kelly v. United States Steel Corp.*
    (3rd Cir. 1960) 284 F.2d 850 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Littlefield v. Continental Cas.Co.*
    (CD CA 1979) 475 F.Supp. 887 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Republic Western Ins. Co. v. International Ins. Co.*
    (ND CA 1991) 765 F.Supp. 628, 629 . . . . . . . . . . . . . . . . . . . . . . . . 8

*Scott Typewriter Co. v. Underwood Corp.*
    (SD NY 1959) 170 F.Supp. 862 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Spencer v. United States Dist. Ct. For Northern Dist. Of Calif. (Altec Industries, Inc.)*
    (9th Cir. 2004) 393 F.3d 867, 870 . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Strawbridge v. Curtiss*
    (1806) 7 US 267 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Tosco Corp. v. Communities for a Better Environment*
    (9th Cir. 2001) 236 F.2d 495, 500 . . . . . . . . . . . . . . . . . . . . . . . 9, 10-11

*Transport Indem. Co. v. Financial Trust Co.*
    (CD CA 1972) 339 F.Supp. 405 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## **STATUTES**

Title 28 USC §1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Title 28 USC §1446 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This case, which has been pending for over two years in the state court, was improperly removed by Defendant American Safety Indemnity Company in that there is no diversity jurisdiction. As is clear with the recently filed Motions by the Defendant and the evidence submitted in support of this motion, all of the parties to this action have principal places of business in the State of California. Having principal places of business in the State of California destroys any claim to diversity. Removal was improper because the Defendants are both "local". As such, Defendants cannot seek removal of this case under 28 U.S.C. §1441[b].

**II.    BACKGROUND FACTS**

**A.    California is a Principal Place of Business for Both Plaintiff and Defendants**

Plaintiff Acceptance Insurance Company has extensive contacts within the State of California. Plaintiff has written numerous policies for California residents over the years. Moreover, the handling of claims made in connection with those policies necessitated extensive involvement with the State of California. As a result of these and other factors, Plaintiff may be considered to have as a principal place of business the State of California. See, Declaration of Brett G. Hampton (attached hereto).

Defendants American Safety Risk Retention Group, Inc. [ASRRG] and American Safety Indemnity Company [ASIC] have also written numerous policies for California residents over many years. Moreover, both ASRRG and ASIC wrote policies, that are the subject matter of this litigation, for the same policyholder/insured for which Acceptance Insurance Company wrote a policy, Bay Area Construction Framers, Inc.

In addition, and as stated in her declaration submitted to this Court, Jean Fisher is the Construction Defect Claims Manager and Corporate Claims Counsel for both ASRRG and ASIC. Ms. Fisher submitted a declaration in a recent filing with this Court in which she details here involvement with, and responsibilities for handing claims for, ASIC and ASRRG. Ms. Fisher is a California resident employed by American Safety Insurance Services [ASIS] in the State of California. Ms. Fisher's office is in San Diego. All of the claims handling activities are conducted in the State of California.

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

NOTICE OF MOTION AND MOTION TO REMAND CASE; SUPPORTING DECLARATION OF BRETT G. HAMPTON; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

3

1    Ms. Fisher, by her own admission, has been intimately involved with the claims handling

2 procedures for the Bay Area Construction Framers claims.  This Court is requested, by separate

3 Request for Judicial Notice, to take judicial notice of ASRRG's Opposition to Plaintiff's Motion for

4 Leave to Amend Complaint to Name American Safety Indemnity Company as DOE 1 filed in the state

5 court action.   This Court is also requested to take Judicial Notice of the Declaration filed by Ms.

6 Fisher in connection with ASIC's Motion for a Change in Venue (the hearing for that motion is

7 currently scheduled for April 14, 2008).

8    Ms. Fisher, who resides in and is employed in the State of California, submitted a sworn

9 declaration in support of the Opposition to the Motion to Amend (state court proceeding) in which she

10 admits the following:

11    1.    She is a licensed attorney in the State of California responsible for overseeing lawsuits

12         filed against American Safety entities (including claims for ASRRG and ASIC);

13    2.    Defendants ASRRG and ASIC are both administered and managed by ASIC;

14    3.    Defendant ASRRG is a risk retention group, and its shareholder members are the

15         insured, including the California insured Bay Area Construction (the insured owed a

16         defense in the underlying action);

17    4.    She has served as Construction Defect ("CD") Claims Manager and Corporate Claims

18         Counsel for claims filed against ASRRG and ASIC;

19    5.    She handled and oversaw tenders and claims involving the California insured, Bay Area

20         Construction;

21    6.    As Corporate Claims Counsel, she oversaw a prior lawsuit brought by Bay Area

22         Construction related to the Portola Meadows project;

23    7.    She reviews and approves declination of coverage letters as program manager for both

24         ASIC and ASRRG.

25 See Declaration of Jean P. Fisher, page 8, lines 7-28.

26    In the supporting declaration filed by Ms. Fisher to the Motion to Change Venue, Ms. Fisher

27 further states as follows:

28    1.    Her duties at ASIS include oversight of all litigation involving ASIC.

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

---

**NOTICE OF MOTION AND MOTION TO REMAND CASE; SUPPORTING DECLARATION OF BRETT G. HAMPTON; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

4

2.    She has under her control the business records relating to litigation involving ASIC.

3.    She has served as the person at ASIC principally responsible for overseeing the investigation and disposition of the tenders of construction defect claims against ASIC and its insureds.

4.    She assumed control of the file of Bay Area Construction in connection with the underlying lawsuit entitled <u>Portola Meadows Townhomes Assoc. v. Davidon Homes, et al.</u>, (the action which is the underlying case for which contribution is sought).

5.    The claims against Bay Area Construction have been administered through ASIC's San Diego office since 2005.  She and all other claim adjusters for ASIC are located in San Diego, California.

6.    ASIC's business and claim records relevant to the underlying claim are located ASIC's office in San Diego, California.

7.    Ms. Fisher is also responsible for oversight and handling of other contribution actions involving matters filed in Oregon and Washington and that litigation is filed in California and handled in San Diego, California.  The matter involving those two actions is being litigated in State Court and ASIC has conceded that the State Court has jurisdiction of that matter.  In so doing, ASIC has acknowledged its business relationship with the State of California.

<u>See</u> <u>Declaration of Jean P. Fisher</u> to Motion to Change Venue.

Additionally, Ms. Fisher's deposition was taken in this action (as a state court action) on December 5, 2007.  Attached hereto as **"Exhibit A"** are excerpts from the transcript of that deposition, in which she confirmed the following facts:

1.    The claims administrator for ASRRG and ASIC is American Safety Insurance Services ["ASIS"]) (Page 13, lines 11-18).

2.    She is employed by ASIS (Page 52 lines 17-18, page 13 lines 4-6).

3.    She is also the person most knowledgeable for ASRRG (Page 6, lines 16-18).

4.    Ms. Fisher's job duties include overseeing all of the direct actions naming American Safety entities (Page 13 lines 11-18).

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

---

**NOTICE OF MOTION AND MOTION TO REMAND CASE; SUPPORTING DECLARATION OF BRETT G. HAMPTON; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

5

5.    Ms. Fisher is responsible for overseeing direct actions against ASRRG and ASIC (Page 52 lines 19-24).

6.    Ms. Fisher is advised when any American Safety entities are named in a lawsuit (ASRRG, ASIC, American Safety Casualty Ins. Co., or ASIS) (Page 12-14, lines 24-25, 1-6).

7.    Her typical practice when a claim/tender does not name the right policy, is that they evaluate coverage under all of the policies (Page 51–52, lines 23-25; 1-8).  Ms. Fisher claims to have evaluated the underlying tender in the matter that is the subject of this litigation under policies issued by both ASRRG and ASIC (Page 52 lines 9-11; page 64, lines 7-9).

8.    Ms. Fisher personally evaluated the issue of coverage under the ASIC policy prior to the filing of the Acceptance complaint.  (Page 22 lines 9-15; page 24 lines 18-22; page 50, lines 10-18).

9.    Ms. Fisher determined that there was no coverage under the ASIC policy at the time its third party administrator issued a declination under the first ASRRG policy.  (Page 28-29, lines 16-25, 5-11).

10.   Throughout the Acceptance case, Ms. Fisher has continued the process of evaluating the claim to determine whether or not there might be a potential for coverage under both policies (Pages 50-51, lines 23-25, lines 3-8).

**B.    <u>Ms. Fisher Has Known About This Action for Contribution for Over Two Years and Has Actively Managed This Action During That Time</u>**

This is a contribution case filed by Plaintiff Acceptance Insurance Company, against Defendants ASRRG and ASIC for failure to defend and indemnify the mutual primary insured, Bay Area Construction Framers, Inc. in an underlying California construction defect case that was settled by Acceptance on behalf of the insured. The Complaint was originally filed in the Los Angeles County Superior Court on May 22, 2006 (Case Number BC 352725).

In January 2008, Plaintiff filed a Motion to Amend the Complaint to name ASIC.   It became apparent that such a motion was necessary after the deposition of Ms. Fisher was taken in the action.

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd. Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

---

NOTICE OF MOTION AND MOTION TO REMAND CASE; SUPPORTING DECLARATION OF BRETT G. HAMPTON; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd, Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

1  After the Court's decision, and as a result of the amendment granted by the Superior Court, Ms. Fisher

2  retained counsel for ASIC and removed this pending California State Court action to Federal Court.

3      Ms. Fisher actions are particularly troubling when considering all of the facts. Ms. Fisher

4  initially retained counsel for ASRRG and has been actively engaged in the state court proceedings for

5  over two years. She did not attempt during that two year period to remove this action to Federal Court.

6  Ms. Fisher's basis for removing the matter to Federal Court has not changed for the past two years.

7  No new facts would justify a removal at this time and it is evident that she is "gaming" the situation.

8      As is evident from that deposition, Ms. Fisher was apparently aware at all times of the mistaken

9  identity of the parties since the initial filing of this action. The ASRRG and ASIC policies were, as

10  Ms. Fisher admits, attached to the Complaint and the First Amended Complaint. Ms. Fisher admits to

11  administering (considering coverage issues) the claims under both policies. Ms. Fisher has been

12  aware, since the initial filing of this action, that Acceptance was seeking contribution under both

13  American Safety policies for which she was responsible for handling.

14      Ms. Fisher took no steps to avoid correcting that mistake in identifying the parties and has in

15  fact sought to exploit that mistake throughout the course of this litigation. Ms. Fisher admits to

16  handling the claim under both policies for ASRRG and ASIC, admits to reviewing the policies

17  attached to the Complaint, admits to overseeing the litigation, and admits to hiring counsel for ASRRG

18  and ASIC. Ms. Fisher sought to mislead opposing counsel into believing that she was acting on behalf

19  of American Safety under both policies.

20  **III.    LEGAL ANALYSIS**

21      **A.    Removal of this Case Was Untimely**

22      Title 28 USC §1446(b) provides in pertinent part that:

23      "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the

24      receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting

25      forth the claim for relief."

26      The one year limitation for removal as prescribed under 28 USC §1446(b) does not expand the

27  30 day removal period, but simply disallows removal by any party, regardless of service, more than

28  one year after the complaint has been filed. The 30 day statute for removal triggers from the date of

---

**NOTICE OF MOTION AND MOTION TO REMAND CASE; SUPPORTING DECLARATION OF BRETT G. HAMPTON; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

7

1   the first served defendant. <u>Brown v. Demco, Inc.</u> (5th Cir. 1986) 792 F2d 478, 481-482, <u>Transport</u>

2   <u>Indem. Co. v. Financial Trust Co.</u> (CD CA 1972) 339 F.Supp. 405, 409. The deadline for removing

3   this case to the federal court expired over a year ago.

4        As established by the declaration and deposition testimony of Jean Fisher, ASIC and ASRGG

5   have acted in unison via their CD Claims Manager and Corporate Claims Counsel, Ms. Fisher. Ms.

6   Fisher had every opportunity to remove this action in or about May 2006. Instead, she choose to

7   litigate this matter in state court for the past two years. This lawsuit was filed on May 22, 2006. At

8   that time, Ms. Fisher, who handles litigation analysis and supervision for both ASRRG and ASIC, was

9   aware of the litigation and she could have directed counsel for ASRRG to remove the case to federal

10  court. In fact, Ms. Fisher was aware that Plaintiff was seeking coverage under both the ASRRG and

11  ASIC policies at that time. Instead, she availed herself of the state court, and should not be permitted a

12  second bite at the apple.

13  **B.    The Case Should Be Remanded to State Court as There is no Diversity of**

14  **Citizenship Under the Appropriate Tests for Diversity**

15        Removal can be affected only by nonresident defendants. Removal is allowed only if "none of

16  the parties in interest properly joined and served as defendants is a citizen of the State in which the

17  action is brought." 28 U.S.C. §1441[b]; <u>Spencer v. United States Dist. Ct. for Northern Dist. Of Calif.</u>

18  <u>(Altec Industries, Inc.)</u> 393 F.3d 867, 870 (9th Cir. 2004); <u>Republic Western Ins. Co. v. International</u>

19  <u>Ins. Co.,</u> 765 F.Supp. 628, 629 (ND CA 1991). A motion for remand lies where there is no diversity of

20  citizenship. 28 U.S.C. §1447[c].

21        For purposes of this litigation, ASRRG and ASIC <u>are local defendants</u>. At the heart of this

22  litigation are insurance coverage opinions rendered and insurance coverage decisions made by the CD

23  Claims Manager and Corporate Claims Counsel for ASRRG and ASIC, Jean Fisher, who resides and

24  works in San Diego in the State of California. In fact, all of the claims handling conducted by Ms.

25  Fisher for ASRRG and ASIC are handled in the State of California.

26        The purpose behind the removal statute was to protect "stranger" litigants (non-residents)

27  against prejudice they might encounter in state courts. Federal court jurisdiction is unnecessary where

28  there is a "local" defendant "because there is less reason to fear state court prejudice against the

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

---

**NOTICE OF MOTION AND MOTION TO REMAND CASE; SUPPORTING DECLARATION OF BRETT G. HAMPTON; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

1  defendants if one or more of them is from the forum state." Spencer, supra, 393 F.3d 867, 870.

2  Indeed, this local defendant (ASIC) is concurrently seeking a change of venue of this case from the

3  Central District in Los Angeles to the Southern District in San Diego for the convenience of Ms. Jean

4  Fisher (a motion of which this Court may take judicial notice). The defendants want to have it both

5  ways: they want to litigate this matter in federal court with spurious claims of diversity and yet obtain a

6  "hometown" advantage by moving the case closer to the defendants' principal place of operations.

7  Defendants bear the burden of establishing federal subject matter jurisdiction due to their

8  attempt to invoke the right of removal. Littlefield v. Continental Cas.Co. (CD CA 1979) 475 F.Supp.

9  887, 889. Subject matter jurisdiction based upon diversity of citizenship requires that no defendant

10 have the same citizenship as any plaintiff. In determining whether there is diversity between corporate

11 parties, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated

12 and [**10] of the State where it has its principal place of business." Tosco Corp. v. Communities for a

13 Better Environment, 236 F.3d 495, 500 (9th Cir. 2001); 28 U.S.C. § 1332(c)(1).

14 Section 28 U.S.C. § 1332(c)(1) provides as follows:

15 [c] For the purposes of this section and section 1441 of this title [28

16 USCS § 1441]– (1) a corporation shall be deemed to be a citizen of any

17 State by which it has been incorporated and of the State where it has its

18 principal place of business, except that in any direct action against the

19 insurer of a policy or contract of liability insurance, whether

20 incorporated or unincorporated, to which action the insured is not joined

21 as a party-defendant, such insurer shall be deemed a citizen of the State

22 of which the insured is a citizen, as well as of any State by which the

23 insurer has been incorporated and of the State where it has its principal

24 place of business .... (Emphasis Added).

25 Corporations are citizens of both the state where they are incorporated and the state where they

26 have their principal place of business, and in this case, possibly the state in which the insured, Bay

27 Area Construction is a citizen. By reason of the testimony of Ms. Fisher, it is clear that Defendants are

28 citizens of the State of California.

---

**NOTICE OF MOTION AND MOTION TO REMAND CASE; SUPPORTING DECLARATION OF BRETT G.
HAMPTON; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

A corporation's "principal place of business" is typically the State where the executive and/or administrative offices for the corporation are located. Scot Typewriter Co. v. Underwood Corp., 170 F. Supp. 862 (S.D.N.Y. 1959). Other Courts have utilized the "center of corporate activity test" where the State where the corporations sales/service or production facilities is deemed the "principal place in business." Kelly v. United States Steel Corp., 284 F.2d 850 (3d Cir. 1960). And yet other courts evaluated the "place of operations" where a substantial predominance in a particular State is evaluated for diversity purposes. Inland Rubber Corp. V. Triple A Tire Service, Inc., 220 F.Supp. 490, 496 (S.D.N.Y. 1963).

The Ninth Circuit, in evaluating whether to employ the "nerve center" or "place of operations" tests has held as follows:

> "The Ninth Circuit Court of Appeals has given lower courts direction to determine which of these tests to apply: where a majority of a corporations's business activity takes place in one state, that state is the corporation's principal place of business, even if the corporate headquarters are located in a different state. The "nerve center" test should be used only when no state contains a substantial predominance of the corporation's business activities. [citation omitted] Thus, the Ninth Circuit applies the place of operations test unless the plaintiff shows that its activities do not substantially predominate in any one state." Tosco Corp. v. Communities for a Better Environment, 236 F.3d 495, 500 (9th Cir. 2001), citing Industrial Tectonics, Inc. V. Aero Alloy, 912 F.2d 1090, 1094 (9th Cir. 1990). [emphasis added.]

The Ninth Circuit approved evaluating a corporate defendant's activities in one state to another, rather than one state to the whole of operations in the United States, for purposes of determining where the predominance of operations are located. The Ninth Circuit has held, ".... determining whether a corporation's business activity substantially predominates in a given state plainly requires a comparison of that corporation's business activity in the state at issue to its business activity in other individual states." Tosco v. Communities for a Better Environment, *supra*, at 500.

/ / /

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

---

NOTICE OF MOTION AND MOTION TO REMAND CASE; SUPPORTING DECLARATION OF BRETT G. HAMPTON; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

10

The court went on to note:

> "Thus, "substantial predominance" does not require the majority of a corporation's total business activity to be located in one state, but instead, requires only that the amount of corporation's business activity in one state be significantly larger than any other state in which the corporation conducts business." *Id.* at 500.

The salient facts of the dispute between Plaintiff Acceptance Insurance Company and Defendants American Safety Risk Retention Group and American Safety Indemnity Company show that there is a substantial predominance of the activities of the defendants in the State of California. Ms. Fisher has stated that all of the adjusters and herself reside in the State of California. The claims activities of ASIC and ASRRG are all handled in the State of California, including claims from such states as Oregon and Washington as stated by Ms. Fisher. Both Defendants wrote policies for insureds in the State of California, decisions were made regarding coverage of those policies in the State of California, and claims handling was performed in the State of California. Attorneys were retained in the State of California and the litigation has been pursued in the State of California. Furthermore, Ms. Fisher has been responsible for the prosecution of the state court proceedings for over two years and made no attempt until recently to remove to the Federal Court.

## IV.     CONCLUSION

For the foregoing reasons and arguments, Plaintiff respectfully submits that this matter must be remanded to the Los Angeles County Superior Court as there is no subject matter jurisdiction, no diversity of citizenship, and more importantly, no timely removal given Ms. Fisher's important role in this litigation since the inception of this action in May 2006.

Dated: March 31, 2008          KOLETSKY, MANCINI, FELDMAN & MORROW

By: _____
     Raymond C. Dion, Esq.
     Brett G. Hampton, Esq.
Attorneys for Plaintiff ACCEPTANCE INSURANCE COMPANY

NOTICE OF MOTION AND MOTION TO REMAND CASE; SUPPORTING DECLARATION OF BRETT G. HAMPTON; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

11

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

## DECLARATION OF BRETT G. HAMPTON

I, Brett G. Hampton, declare as follows:

1.      I am an attorney at law, duly licensed to practice in the State of California and before the United States District Court, Central District of California, and I am an associate attorney with KOLETSKY, MANCINI, FELDMAN & MORROW, attorneys of record herein for Plaintiff Acceptance Insurance Company in the instant action. I have personal knowledge of the facts set forth herein and could and would competently testify as to the truth of same if required to do so.

2.      This is a contribution case filed by Acceptance Insurance, against American Safety Risk Retention Group, Inc. and Does 1through 100, for failure to defend and indemnify the mutual primary insured, Bay Area Construction Framers, Inc. in an underlying construction defect case that settled.

3.      The First Amended Complaint names American Safety Risk Retention Group, Inc., American Safety Indemnity Company,  and Does 1 through 100.  It refers to and attaches the two insurance policies for which plaintiff is seeking contribution.  The court is requested to take judicial notice of Plaintiff's First Amended Complaint via Request for Judicial Notice.

4.      Plaintiff was unaware that the second American Safety policy was issued by a different American Safety entity until recently.

5.      The first policy was issued by American Safety Risk Retention Group, Inc. ("ASRRG").  The aforementioned First Amended Complaint has attached to it as **"Exhibit A"**a true and correct copy of the Declaration page of American Safety Risk Retention Group, Inc. policy number XGI 00-1826-001, effective 8/15/00-10/1/01.

6.      The second policy was issued by American Safety Indemnity Company ("ASIC").  The aforementioned First Amended Complaint has attached to it as **"Exhibit B"** a true and correct copy of the Declaration page of American Safety Indemnity Company policy number XGI 00-1826-002, effective 10/1/01-10/1/02.

7.      The deposition of Jean Fisher was taken on December 5, 2007.  Attached hereto and marked as **"Exhibit A"** to this Motion are true and correct copies of excerpts from the deposition transcript of Jean P. Fisher (without exhibits), taken in this action.

NOTICE OF MOTION AND MOTION TO REMAND CASE; SUPPORTING DECLARATION OF BRETT G. HAMPTON; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

12

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

8.      The following statements made by Ms. Fisher confirm that ASIC had notice of this lawsuit through ASRRG:

a.      The claims administrator (American Safety Insurance Services ["ASIS"]) is the same for both entities (page 13, lines 11-18).

b.      She is employed by ASIS (page 52 lines 17-18, page 13 lines 4-6).

c.      She is also the person most knowledgeable for ASRRG (page 6, lines 16-18).

d.      Ms. Fisher's job duties include overseeing all of the direct actions naming American Safety entities (page 13 lines 11-18).

e.      This includes overseeing direct actions against ASRRG and ASIC (page 52 lines 19-24).

f.      It is brought to her attention when any American Safety entities are named in a lawsuit (ASRRG, ASIC, American Safety Casualty Ins. Co., or ASIS) (Page 12-14, lines 24-25, 1-6).

g.      The administrator's typical practice when a claim/tender does not name the right policy, is that they evaluate coverage under all of the policies (page 51–52, lines 23-25; 1-8).

h.      This is what was done in this case (page 52 lines 9-11; page 64, lines 7-9).

i.      Ms. Fisher personally contemplated whether there was coverage under the American Safety Indemnity policy since before the filing of the Acceptance complaint.  (Page 22 lines 9-15; page 24 lines 18-22; page 50, lines 10-18).

j.      Ms. Fisher determined that there was no coverage under the second policy (issued by American Safety Indemnity) at the time its third party administrator issued a declination under the first policy (issued by American Safety Risk Retention Group).  (Page 28-29, lines 16-25, 5-11).

k.      Throughout the Acceptance case, Ms. Fisher has continued the process of evaluating the claim to determine whether or not there might be a potential for coverage under both policies (pages 50-51, lines 23-25, lines 3-8).

NOTICE OF MOTION AND MOTION TO REMAND CASE; SUPPORTING DECLARATION OF BRETT G. HAMPTON; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

13

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

8.    Ms. Fisher submitted a sworn declaration in support of Defendant American Safety Risk Retention Group, Inc.'s "Opposition to Plaintiff's Motion for Leave to Amend Complaint to Name American Safety Indemnity Company as DOE 1", dated January 17, 2008.  A true and correct copy of that Declaration is attached hereto and incorporated herein by reference as **Exhibit"B."**

9.    Ms. Fisher also submitted a sworn Declaration in support of Defendant American Safety Indemnity Company's Motion for Change of Venue.  I request that the Court take judicial notice of that Declaration contained within the Court's file.

I declare under penalty of perjury under the laws  of the State of California that the foregoing is true and correct.

DATED: March 31, 2008

_____
Brett G. Hampton, Declarant

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd. Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

EXHIBIT "A"

1    SUPERIOR COURT OF THE STATE OF CALIFORNIA

2    FOR THE COUNTY OF LOS ANGELES

3

4  ACCEPTANCE INSURANCE COMPANY,  )
                                  )
5          Plaintiffs,            )
                                  )
6       vs.                       )    No. BC352725
                                  )
7  AMERICAN SAFETY RISK RETENTION )
   GROUP, INC.; and DOES 1 through)
8  100, inclusively,             )
                                  )
9          Defendants.            )
   _____)

10

11

12                    **CERTIFIED COPY**

13

14

15          DEPOSITION OF JEAN P. FISHER

16            Los Angeles, California

17          Wednesday, December 5, 2007

18

19

20

21

22

23
   Reported by:
24 MARYAM T. SALAHUD-DIN
   CSR No. 9669
25 Job No. 667590

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2              FOR THE COUNTY OF LOS ANGELES

3

4   ACCEPTANCE INSURANCE COMPANY,  )
                                   )
5              Plaintiff,          )
                                   )
6           vs.                    )        No. BC352725
                                   )
7   AMERICAN SAFETY RISK RETENTION )
    GROUP, INC.; and DOES 1 through)
8   100, inclusively,              )
                                   )
9              Defendants.         )
    _____)

10

11

12

13

14

15          Deposition of JEAN P. FISHER, taken

16      on behalf of Plaintiff, at 3460 Wilshire

17      Boulevard, 8th Floor, Los Angeles,

18      California, beginning at 10:10 a.m. and

19      ending at 12:34 p.m. on Wednesday,

20      December 5, 2007, before MARYAM T.

21      SALAHUD-DIN, Certified Shorthand

22      Reporter No. 9669.

23

24

25

1     Los Angeles, California, Wednesday, December 5, 2007

2            10:10 a.m. - 12:34 p.m.

3

4            JEAN P. FISHER,

5   having been first duly sworn, was examined and testified

6   as follows:

7

8            EXAMINATION

9   BY MR. DION:

10    Q   Could you please state your full name for the

11  record.

12    A   Jean Fisher.

13    Q   All right.  Ms. Fisher, you are appearing as

14  the person most knowledgeable pursuant to the notice of

15  deposition OF person most knowledgeable?

16    A   I believe it was specifically noticed for me,

17  but I do believe I am also the person most knowledgeable

18  for American Safety Risk Retention Group.

19    Q   Did you receive an original copy of the notice

20  of deposition?

21    A   Which deposition notice?  There has been more

22  than one.

23    Q   There has been a continued one.  There has been

24  an original notice that was sent out.  Did you receive a

25  copy of that?

1      A    No.

2      Q    Is there a parent corporation for American

3  Safety Risk Retention Group?

4      A    No.

5      Q    Are you familiar with an entity known as

6  American Safety Insurance Services, Inc.?

7      A    Yes.

8      Q    Okay.  Is that company related in any way or

9  associated in any way with American Safety Risk

10  Retention Group?

11      A    They are not related entities.

12      Q    Are they associated in any way?

13           MR. LARIN:  Objection.  Vague and ambiguous.

14           THE WITNESS:  No, it isn't except for a

15  contract.

16  BY MR. DION:

17      Q    What is the contract?

18      A    American Safety Risk Retention Group has a

19  contract with American Safety Insurance Services to

20  administer its claims.

21      Q    Okay.  So American Safety Insurance Services,

22  Inc. administers the claims of American Safety Risk

23  Retention Group?

24      A    Correct.

25      Q    Okay.  Do you know if American Safety Insurance

1   Group also administers additional or other claims on

2   behalf of any other American Safety corporations?

3        A   I'm sorry.  You just misspoke.

4        Q   Sure.  I will restate it.  Who are you employed

5   by?

6        A   American Safety Insurance Services.

7        Q   Okay.  Does American Safety Insurance Services

8   administer claims on behalf of American Safety Indemnity

9   Company?

10       A   Yes.

11       Q   Okay.  Now, what are your job duties with

12   respect to American Safety Insurance Services, Inc.?

13       A   Currently, they are to oversee all of the

14  direct actions naming American Safety entities.  They

15  are to work with the underwriting department in various

16  ways and to oversee the coverage opinions authored by

17  the San Diego office and assist the Atlanta office when

18  requested.

19          MR. DION:  Could you repeat that back for me,

20  please.

21          (Record read.)

22  BY MR. DION:

23       Q   Let's go to the first part.  With respect to

24  overseeing direct actions against American Safety

25  entities, what specifically do you do with respect to

1    the oversight of direct actions?

2        A    When any American Safety entity, whether it be

3    American Safety Risk Retention Group, American Safety

4    Indemnity Company, American Safety Casualty Insurance

5    Company or American Safety Insurance Services, are named

6    in a lawsuit, it is brought to my attention.  And I am

7    charged with retaining counsel and overseeing the

8    handling of that lawsuit.

9        Q    Okay.  How about the claims handling where you

10   have a tender, do you also receive the responses to

11   tenders made with respect to American Safety entities?

12       MR. LARIN:  With respect to tenders, you are

13   speaking about additional insured issues.

14       MR. DION:  Actually, it would be tenders under

15   any of the policies issued by American Safety.

16       THE WITNESS:  In regard to construction defect

17   claims or any matters handled by the San Diego office, I

18   review all declinations that go out.  So to the extent

19   that I have that role, I am involved in the handling of

20   the claim.  To the extent they are covered claims, I

21   don't necessarily get involved in the handling of the

22   covered claims.

23   BY MR. DION:

24       Q    Okay.  Do you also, with respect to

25   declinations -- and that is a good point.  We could

1    client's previous tender in this matter.

2            If such a letter had been received, American

3    Safety would have forwarded that on to Breckenridge?

4        A    Correct.  Or a copy.

5        Q    Now, I think we have an understanding that

6    Breckenridge had at least a file open with respect to

7    the first policy issued by American Safety Risk

8    Retention Group; correct?

9        A    American Safety had opened a file as to

10   American Safety Risk Retention Group.

11       Q    American Safety.  And you are referring to

12   Services, Inc.

13       A    Well, there is a file opened, but it is in

14   regards to the American Safety Risk Retention Group

15   policy which is what the tender had been directed to.

16       Q    And what my question really is designed to find

17   out is how American Safety, the program manager, would

18   address a situation where a letter comes in, ambiguous

19   perhaps, as to which policy, in effect, potentially

20   triggers all policies -- how American Safety would deal

21   with that when they already have a file open with

22   respect to one policy issued by American Safety Risk

23   Retention Group.

24           Would they, in the normal course of operations,

25   have first evaluated to determine whether there were

1    other policies issued to Bay Area?  How is it handled?

2        And we will refer to Exhibit 3, where it

3    clearly -- the policies aren't stated or specified.

4    Just the tender is made.

5        A   Right.  But recognize that the declination had

6    already been issued --

7        Q   Right.

8        A   -- to Bay Area indicating that the American

9    Safety Risk Retention Group policy was not going to

10   apply which thus means the American Safety Indemnity

11   Company policy is not going to be applicable either.

12       Q   Okay.

13       A   But had it been applicable, then we open a

14   separate claim file if there is coverage under a policy.

15       Q   So if it isn't applicable, then you would have

16   not opened another file?

17       A   Correct.

18       Q   And just would have dealt with matters under

19   the original file?

20       A   Correct.

21       Q   And so with respect to Exhibits 3 and 4, in the

22   normal course of the transaction of business dealings,

23   Breckenridge would have been with authority to issue or

24   reaffirm the declination as to any and all policies

25   issued to Bay Area under the file that was opened in

1  you have been sued but whether you believe that there

2  has been a -- or that Bay Area or Acceptance or anyone

3  related to the policies are seeking coverage at any

4  point in time under the indemnity policy.  Did you at

5  any point in time conclude that?

6      A   No, I did not.

7      Q   So you have never made an evaluation then --

8  well, let's take, despite the fact that you apparently

9  are not aware of any tender or any pursuit of such a

10  claim under the indemnity policy, did you at any point

11  in time evaluate whether or not there might be coverage

12  under the indemnity policy?

13      A   Yes.

14      Q   When did you first do that?

15      A   When I got the file.

16      Q   And that was how long ago?  Two-and-a-half

17  years?

18      A   Yes.

19      Q   So at that point you made an evaluation under

20  the indemnity policy, and you made certain conclusions;

21  correct?

22      A   Yes.

23      Q   Have you continued to evaluate to determine

24  whether or not there might be coverage under either of

25  the policies?

1        MR. LARIN:  Vague and ambiguous.

2        MR. DION:  I can restate it.

3        Q    What I'm asking you is, in the course of this

4   two-and-a-half years of litigation, have you continued

5   the process of evaluating the claim to determine whether

6   or not there might be a potential for coverage?

7        MR. LARIN:  Same objection.

8        THE WITNESS:  Yes.

9   BY MR. DION:

10       Q    And is there anything that has come to light,

11  in your mind, that would cause you to believe that there

12  might be potential coverage under either of the policies

13  issued to Bay Area?

14       A    No.

15       Q    So as you sit here today, you still believe

16  that there is no coverage under both policies issued to

17  Bay Area; correct?

18       A    Correct.

19       Q    And that position has remained the same

20  irrespective of any information that has been provided

21  to you during the course of this litigation; correct?

22       A    Correct.

23       Q    All right.  Do you have a custom and practice

24  with respect to evaluating claims where an insured,

25  perhaps, doesn't name a right policy but you believe

1    there is coverage under that policy?  Is there anything

2    that you would do typically in that kind of a

3    situation?

4         A    Yes.

5         Q    What is your typical practice in that type of a

6    situation?

7         A    I typically evaluate coverage under all of the

8    policies.

9         Q    And, in fact, you did that in this case with

10   respect to Bay Area; correct?

11        A    Yes.

12        Q    Now, I think you have referred to both American

13   Safety Risk Retention Group and American Indemnity

14   Company as American Safety entities; is that correct?

15        A    Well, to the extent they all begin with

16   American Safety, yes.  And to the extent I may have

17   misspoken, said us, when I'm really employed by American

18   Safety Insurance Services, yes.

19        Q    What I was referring to is, you said you

20   oversee direct actions against American Safety

21   entities.  You are charged with overseeing actions as it

22   relates to both American Safety Risk Retention Group and

23   American Safety Indemnity; correct?

24        A    Correct.

25        Q    And a few other American Safety companies;

EXHIBIT "B"

## DECLARATION OF JEAN FISHER

I, Jean Fisher, declare as follows:

1.    I make this declaration in support of American Safety Risk Retention Group's ("ASRRG") Opposition for leave to amend the complaint to add American Safety Indemnity Company ("ASIC") as a defendant. The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

2.    I am a resident of the State of California, a licensed attorney in the State of California and am employed as an attorney responsible for overseeing lawsuits filed against American Safety entities. ASRRG is administered and managed by American Safety Insurance Services (ASIS). ASIC is administered and managed by American Safety Insurance Services (ASIS). However, ASRRG and ASIC are separate, unrelated corporations. ASRRG was incorporated in Vermont and is a risk retention group which means that its shareholder members are actually made up of the insureds, including Bay Area Construction. In contrast, ASIC is an Oklahoma corporation and is a subsidiary of a publicly traded company, American Safety Insurance Holdings, Ltd., to which ASIS is also a subsidiary. ASRRG is not a subsidiary entity, and is not related to ASIC.

3.    In my employment with ASIS, I have served as a CD Claims Manager and also Corporate Claims Counsel. In these capacities, I have reviewed the underwriting file of Bay Area Construction Framers ("Bay Area Construction") including the policies issued by both ASRRG and ASIC, and I have handled and overseen tenders and claims involving Bay Area Construction. As Corporate Claims Counsel, I oversaw a prior lawsuit brought by Bay Area Construction related to a project known as Portola Meadows. This claim by Acceptance involves the defense fees and costs, as well as indemnity, that it incurred in 2002 to 2004 for Bay Area Construction. Prior to this lawsuit filed by Acceptance, I have previously overseen the handling of tenders, claims and lawsuits involving ASRRG's insured, Bay Area Construction. In my employment, I review and approve declination of coverage letters written to Bay Area Construction by ASIS as program manager for both ASRRG and ASIC. Thus, it is common that I review the policies issued to Bay Area Construction and generally know their content.

4.    In this case, Acceptance cannot claim it did not know who issued subsequent coverage to mutual insured Bay Area Construction since Acceptance actually possessed the ASIC policy. It would be unbelievable to me for Acceptance to claim that it, as an insurance company, did not recognize that two separate companies issued the policies, because it has done business with American Safety entities for years and actually visited counsel and officer actually visited our home office years ago. Further, correspondence written to Acceptance's counsel previously, and clearly, set forth the information pertaining to the issuance of the policies. On May 2, 2007, I sent a letter to other counsel for Acceptance in another claim and my letter clearly set forth the policies of ASRRG and ASIC. A true and correct copy of the letter is attached hereto as Exhibit 1.

5.    ASIC has not been served in this case and has not retained any counsel in this matter as it would be my role to retain counsel for ASIC as its program manager. As no suit names ASIC, there is no claim file set up related to this action. While I, in my role with ASIS, may have evaluated coverage under the policies of both ASRRG and ASIC and made coverage determinations as to each, ASIC has not been participating and has not retained counsel. During my deposition, we objected to questioning regarding the ASIC policy. I was not comfortable answering any questions pertaining to ASIC as ASIC was not a party and defense counsel had not been retained to represent ASIC. True and correct copies of pertinent pages of my deposition are attached as Exhibit 2.

6.    The inappropriateness of this belated motion is highlighted by the same counsel's problems with identifying and serving ASRRG in a related matter that was initially filed in the name of Bay Area Construction to recover the same fees and costs. That action was eventually dismissed when it became apparent that the insured had no damages since Acceptance had paid the fees and was the real party in interest. In that action, the same counsel and firm filed an action against "American Safety Insurance Company" (a nonexistent entity) but served American Safety Casualty Insurance Company, which is another, separate company (ASCIC). ASCIC filed a motion to quash.

7.    As part of that motion, the role of American Safety Insurance Services was set forth and explained as the program manager. The court granted the motion, instructing Mr. Rhoads, the very same counsel: "that there is no relationship between the defendant that you named and the defendant who's appearing here today, you're going to have to do your homework and sue the right defendant." A true and correct copy of the Reporters Transcript for the hearing of 9/9/04 is attached hereto as Exhibit 3. Thereafter, counsel named **only ASRRG** and discovery involved only ASRRG until it was dismissed. This action has similarly involved only ASRRG.

8.    This motion is not timely made as the deadlines for discovery and motions have come and gone, and both parties have pending motions for summary judgment pending before the court. If the court permitted leave to amend and allowed ASIC to be added to this matter, ASIC would be deprived of its right to assert meritorious defenses based on the statute of limitation as well as to assert an exclusion in the ASIC policy, similar to the ASRRG policy.

9.    The underlying action involving Bay Area Construction and its framing work on the Portola Meadow project commenced with a Legal Proceeding in May 1999, before the ASRRG and ASIC policies incepted. The association and various homeowner plaintiffs filed suit and Bay Area Construction was named as a party **before** the ASIC policy was issued. The *Portola Meadow* Complaint was filed 4/10/01. Exhibit B to Acceptance's motion and complaint shows the ASIC policy incepted sixth months later. As the Court can see, Exhibit B contains an exclusion for any suit filed before its inception as prescribed in form 98 08 08 99, and thus, ASIC never had a duty to defend Bay Area Construction or pay the settlement which Acceptance paid in 2004.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

10.    Furthermore, it is also clear that this belated addition of ASIC to this matter in 2008 is time barred by the statute of limitations. The applicable statute of limitations for Acceptance's contribution action against ASIC is two years per Code of Civil Procedure section 339 and *Century Indemnity v. Superior Court* (1996) 50 Cal.App.4th 1115. More than two years have passed since Acceptance paid for the defense and settlement of the *Portola Meadow* lawsuit and Acceptance cannot have the benefit of Section 474 for an unknown defendant. Thus, this court should reject the arguments that adding ASIC to this action will have an minimal impact, as ASIC would be entitled to its own discovery and motions and be severely prejudiced by the current cutoff dates which have already passed.

I declare under penalty of perjury that the foregoing is true and correct under the laws of California. Executed this ___17th___ day of January 2008 at San Diego, California.

Jean Fisher

Declaration of Jean Fisher in Support of ASRRG's Motion – Page 5

**ASI**

*AMERICAN SAFETY INSURANCE*

American Safety Insurance
Services, Inc.

*In California a/b/a*
*ASIG Insurance Services*

Suite #166
11440 West Bernardo Court
San Diego, CA 92127

Toll Free: 866.642.1149
Tel:        858.716.2200
Fax:        858.716.2201

www.americansafetyinsurance.com

May 2, 2007

Thomas A. Foster, Esq.
Marrone, Robinson, Frederick & Foster
111 North First Street, Suite 300
Burbank, CA 91502-1851

| | |
|---|---|
| RE: | <u>George Aurelio, et al v. A.F. Evans Company, Inc., et al</u> |
| | San Mateo County Superior Court Case No. CIV443674 |
| Insured: | Bay Area Construction Framers, Inc. |
| Policy No.: | XGI 00-1826-001 (8/15/00 to 10/1/01) |
| Policy No.: | XGI 01-1826-002 (10/1/01 to 10/1/02) |
| Policy No.: | XGI 02-1826-003 (10/1/02 to 10/1/03) |
| Policy No.: | XGI 03-1826-004 (10/1/03 to 10/1/04) |
| Policy No.: | XGI 04-1826-005 (10/1/04 to 10/1/05) |
| ASIS Claim No: | 010822 |
| Your Client: | Acceptance Insurance Company |
| Your File No.: | ACC-3422 |

Dear Mr. Foster:

American Safety Insurance Services ("ASIS") is the Program Manager for American Safety Risk Retention Group ("ASRRG") and American Safety Indemnity Company ("ASIC") in regard to the above-captioned matter. Lynne Bergmann is the file handler of the Bay Area Construction account and we acknowledge receipt of your re-tender for defense and indemnity on behalf of your client, Acceptance Insurance Company.

This letter will supplement Ms. Bergmann's email to you of April 4, 2007 and provide you with our formal response in regards to your re-tender letter dated March 21, 2007 to CRMI. We requested that you provide us with any additional information and/or documentation for our re-consideration that may impact the American Safety's coverage position. We never received a response and as such our coverage position is based upon the documents contained in the file.

This letter is to inform you that our review of the file materials reveals that there is no coverage for this claim under the above referenced ASSRG and ASIC policies. As previously stated in my email to you of April 4, 2007; the "Amended Definition of Occurrence" and "Pre-Existing Injury Exclusion" were added to the policy in order to bar coverage for continuous and progressive losses. The language addresses the holdings of the Montrose decision and is similar to language recently analyzed in USF Insurance v. Claredon. The Company's intent was to limit coverage to an insured only for their work that was completed during the policy and to which damage first occurs. The insured's premiums are based upon the work that that they do during the policy and does not provide coverage for work that the insured completed prior to the inception of the policy. You also take exception with ASI's "Other

ASI
NYSE

**EXHIBIT 1**

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 2 of 12

Insurance" language, which clearly states that the ASI policies are excess over any other insurance that is valid and collectible insurance available to the insured. In this instance, Acceptance insured Bay Area Construction Framers, Inc. from September, 1993 through August, 2000 and therefore was on the risk during and subsequent to the completion of the insured's work on the project. While ASI can certainly rely on the language contained in the "Other Insurance Clause" in part to deny coverage, the primary reason for the denial is based upon the "Amended Definition of Occurrence" and "Pre-Existing Injury Exclusion".

On behalf of ASSRG and ASIC, we are reaffirming our denial of coverage as set forth below.

Background Facts

It is our understanding that this is a construction defect case involving approximately 50 single-family homes in the Bay Ridge subdivision located in Daly City, CA.

Plaintiffs' file a Complaint on December 13, 2004 in San Mateo County Superior Court Case No. CIV443674 against A.F. Evans Company, Inc.; A.F. Development, Inc. Bay Ridge Daly City, LP; and Bay Ridge Associates for Strict Liability; Breach of Implied Warranty; Breach of Express Warranty; Breach of Contract and Negligence. The Andrade, et al; Fontanilla, et al; Acena, et al were consolidated with the Aurelio case. It is also our understanding that there is another action entitled, Quiles, which includes one home with a possibility of two additional homes being added. We do not have any information regarding the Quiles, et al homes and whether the action was consolidated with the Aurelio matter. Therefore, our analysis will be based upon the Aurelio, et al v. A.F. Evans Company, Inc. matter and the three other cases that were consolidated with the Aurelio, et al matter.

A.F. Evans Company, Inc. filed a Cross Complaint against the subcontractors on April 12, 2005 for Total Equitable Indemnity; Comparative Indemnity and Contribution; Negligence; Breach of Implied Warranty; Breach of Express Warranty; Express Contractual Indemnity; Breach of Contract; and Declaratory Relief.

Bay Ridge Associations entered into a contract with Bay Area Construction Framers, Inc. on or about June 4, 1994 to perform the rough carpentry work on the project to include the installation of the siding, trim and windows. There are various addendums to the contract for Phase 1, Releases 2 through 7 of the Bay Ridge subdivision.

A review of the homeowners' matrix indicates that the subject homes have notice of completion dates ranging from 5/11/95 to 12/15/98 and original close of escrow dates ranging from 5/12/95 to 12/31/98, which is prior to the inception of the ASI policies.

The following is a summary of American Safety Insurance Service's analysis and evaluation as it relates to coverage under the terms, conditions and/or provisions of Bay Area Construction Framers, Inc.'s policies as it relates to the subject claim.

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 3 of 12

ASRRG Policy

ASRRG afforded a Commercial General Liability policy to Bay Area Construction Framers, Inc. under policy XGI 00-1826-001, effective August 15, 2000 to October 1, 2001, provides coverage of $1 million per Occurrence Limit and a $2 million Products/Completed Operations Aggregate Limit subject to a $10,000 per occurrence Self-Insured Retention ("SIR"). ASRRG denies coverage under this policy.

ASIC Policies

ASIC afforded Commercial General Liability policies to Bay Area Construction Framers, Inc. as follows.

Policy number XGI 01-1826-001, effective October 1, 2001 to October 1, 2002, provides coverage of $1 million per Occurrence Limit and a $1 million Products/Completed Operations Aggregate subject to a $10,000 per occurrence Self-Insured Retention ("SIR").

Policy number XGI 02-1826-003, effective October 1, 2002 to October 1, 2003, provides coverage of $1 million per Occurrence Limit and a $1 million Products/Completed Operations Aggregate subject to a $10,000 per occurrence Self-Insured Retention ("SIR").

Policy number XGI 03-1826-004, effective October 1, 2003 to October 1, 2004, provides coverage of $1 million per Occurrence Limit and a $1 million Products/Completed Operations Aggregate subject to a $10,000 per occurrence Self-Insured Retention ("SIR").

Policy number XGI 04-1826-005, effective October 1, 2004 to October 1, 2005, provides coverage of $1 million per Occurrence Limit and a $1 million Products/Completed Operations Aggregate subject to a $25,000 per occurrence Self-Insured Retention ("SIR").

ASIC denies coverage under each of the policies.

Based upon the "Amended Definitions Endorsement Occurrence or Duty to Defend" and the "Pre-Exiting Injury or Damage Exclusion" exclusion the following policy language precludes coverage for this matter under each of your policies as set forth below:

Self Insured Retention

Policy XGI 00-1826-001, effective August 15, 2000 to October 1, 2001 contains a $10,000 per occurrence Self-Insured Retention ("SIR").

Policy number XGI 01-1826-002, effective October 1, 2001 to October 1, 2002 and contains a $10,000 per occurrence Self-Insured Retention ("SIR").

Policy number XGI 02-1826-003, effective October 1, 2002 to October 1, 2003 contains a $10,000 per occurrence Self-Insured Retention ("SIR").

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 4 of 12

Policy number XGI 03-1826-004, effective October 1, 2003 to October 1, 2004 contains a $10,000 per occurrence Self-Insured Retention ("SIR").

Policy number XGI 04-1826-005, effective October 1, 2004 to October 1, 2005 contains a $25,000 per occurrence Self-Insured Retention ("SIR").

If there were coverage for this matter, which there isn't, each of the policies contain a self-insured retention. Thus, if coverage were not barred for the reasons set forth in this letter, as a condition precedent to coverage, the self-insured retention must be satisfied in order to trigger coverage under the policy. Where multiple policies are potentially triggered a self-insured retention must be satisfied for each policy under which coverage is being sought. However, satisfaction of only one self-insured retention is required to trigger the duty to defend a potentially covered claim. As stated, there is no potential for coverage for the subject claim.

The form ES 98 01 entitled Self-Insured Retention provides in pertinent part:

> As a condition precedent to our obligations to provide or continue to provide indemnity, coverage or defense hereunder, the insured, upon receipt of notice of any "suit", incident or "occurrence" that may give rise to a "suit", and at our request, shall pay over and deposit with us all or any part of the self-insured retention amount as specified in the policy, requested by us, to be applied by us as payment toward any damages or SUPPLEMENTARY PAYMENTS - COVERAGES A AND B incurred in the handling or settlement of any such incident, "occurrence" or "suit".

Each of the policies contain the policy form CG 00 01 07 98. The CGL policy form provides in pertinent part under Section I Coverage A, subsection 1 of the Commercial General Liability Coverage Form as follows:

> 1. Insuring Agreement
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply...
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
> (1) the "bodily injury" or "property damage" is caused by an **"occurrence"** that takes place in the "coverage territory"; and
> (2) The "bodily injury" or "property damage" occurs during the policy period.

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 5 of 12

Please note that Policy number XGI 04-1826-005, effective October 1,
2004 to October 1, 2005 is endorsed with ES 98 120 05 04 , Absolute
Limits of Liability Endorsement.  This endorsement modifies the policy so
that all supplementary payments will reduce limits of insurance.
Supplemental Payments includes but is not limited to all expense we incur
including defending the named insured and any additional insured

Section V of the Commercial General Liability Coverage Form (CG 00 01 07 98) defines "property
damage" and "suit" as follows:

17. "Property damage" means:
   a. Physical injury to tangible property, including all resulting loss of use of that
      property.  All such loss of use shall be deemed to occur at the time of the
      physical injury that caused it; or
   b. Loss of use of tangible property that is not physically injured. All such loss
      of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of
   "bodily injury", "property damage" or "personal and advertising injury" to which this
   insurance applies are
   alleged.  "Suit" includes:
   a. An arbitration proceeding in which such damages are
      claimed and to which the insured must submit or
      does submit with our consent: or

   b. Any other alternative dispute resolution proceeding in
      which such damages are claimed and to which the
      insured submits with our consent.

Note that the highlighted word of this Insuring Agreement has been done to emphasize and call to your
attention certain endorsements that are attached to aforementioned policies that further define or change
this section of the basic Commercial General Liability Coverage Form ("CGL").

This highlighted word, "*occurrence*", is referred to by endorsement ASIC ES 98 03, and is titled the
AMENDED DEFINITIONS ENDORSEMENT OCCURRENCE OR DUTY TO DEFEND.  The
endorsement reads as follows:

<u>Amended Definitions Endorsement – Occurrence of Duty to Defend</u>

"It is hereby agreed that paragraph 13. 'occurrence', of SECTION V – DEFINITIONS is deleted
in its entirety and replaced with the following:

13. 'Occurrence' means an accident, including continuous or repeated exposure to substantially
    the same general harmful conditions that happen during the term of this insurance.  'Property
    damage', 'bodily injury' or 'personal and advertising injury' which commenced prior to the

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 6 of 12

effective date of this insurance will be deemed to have happened prior to, and not during the term of this insurance.

There shall be no obligation of the Company to defend any 'suit' against the insured or any Additional Insured if such 'suit' does not allege and 'occurrence' as defined in this Endorsement."

Thus, Bay Area Construction Framers, Inc. must show an "occurrence" during the term of the policy. Further, to the extent that "property damage" claimed in the suit commenced prior to the policies' inception, ASRRG and ASIC would have no duty to defend or indemnify Bay Area Construction Framers, Inc. in the "suit" as such "property damage" is deemed to have happened prior to the term of the policy.

These ASIC manuscript forms were written to address thethe two findings of the Supreme Court that led it to follow a continuous injury trigger of coverage in *Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645 when looking at typical CGL policies. In that case, the court analyzed the standard definitions of "occurrence" [that required an injury within the definition], finding it was not ambiguous, and also compared the timing issues of "occurrence" and "property damage," and noticed:

"It is the latter injury or damage that must "occur" during the policy period," and that "the timing of the accident, event or conditions causing the bodily injury or property damage, e.g., an insured's negligent act, is largely immaterial to establishing coverage; it can occur before or during the policy period." (*Id.* at 669, 675.)

In contrast, the ASIC policy has made the timing of the insured's negligent act material to establishing coverage. The insured's negligent act must take place during the policy term.

Similar language was evaluated by the California Central District Court in *USF Ins. v. Claredon*, where the court noted the Policies make a clear distinction between the "occurrence," which is the accident or exposure that causes damage to the claimant, and the resulting "physical damage." As noted above, the Insuring Agreement requires the "occurrence" cause "property damage," so they are not the same thing. The Clarendon Policies required "that both the occurrence and the first instance of property damage take place during the policy period," and also explicitly deemed that all property damage caused contributed to by an occurrence takes place "at the time of the first such damage." Having admitted coverage under its own Policy, USF's contention that coverage under defendants' Policies was also triggered essentially asked the court to ignore the language of the Claredon policies which is very similar to the language of American Safety's policies.

We respectfully refer you to the following policy language exclusion that bars coverage for a continuing loss, which occurred before the policies, is alleged to be in the process of occurring and bars any known damages:

<u>Pre-Existing Injury and Damage Exclusion – Form A, ES 98-08</u>

"This insurance does not apply to:

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 7 of 12

1. Any 'occurrence', incident or 'suit' whether known or unknown to any officer of the Named Insured:
   a. which first occurred prior to the inception date of this policy or the retroactive date of this policy, if any; or
   b. which is, or alleged to be, in the process of occurring as of the inception date of this policy or the retroactive date of this policy, if any, even if the 'occurrence' continues during this policy period.
2. Any damages arising our of or relating to 'bodily injury', 'property damage' or 'personal and advertising injury' which are known to any officer of any insured, which are in the process of settlement, adjustment or 'suit' as of the inception date of this policy, or the retroactive date of this policy, if any.

We shall have no duty to defend any insured or Additional Insured against any loss, 'occurrence', incident or 'suit' or other proceeding alleging damages arising out of or related to 'bodily injury', 'property damage' or 'personal and advertising injury' to which this Endorsement applies."

(Compare *Montrose* at 673, finding "nothing in the policy language purports to exclude damage or injury of a continuous or progressively deteriorating nature.")

The complaint alleges that the subject residences are not fit for single-family purposes, in not of merchantable quality, and is not safe and in habitable condition. Since completion, said Project developed latent defects not apparent by reasonable inspection at the time of purchase, including but not limited to basic design components were omitted and/or improperly installed and/or built out of defective materials; defective siding material and/or workmanship which has caused damage to the Plaintiffs homes; defective windows and/or window installation which has caused damage to the Plaintiffs' homes; and defective framing materials and/or workmanship which caused damage to the Plaintiffs' homes.

The allegations of inadequate design, construction and materials would have occurred at the time of the work by Bay Area Construction Framers, Inc. As it alleged the subject properties and improvements were not of merchantable quality and were not erected in a reasonable manner, such deficiencies would have first occurred before the American Safety policy incepted. Thus, the "occurrence" is not during the term of the policy and/or commenced before the policy incepted, and is therefore excluded.

Based on the previously stated facts and the language in the Amended Definition of Occurrence and Duty to Defend Endorsement, we, on behalf of American Safety Indemnity Company, deny coverage for this claim. While we deny coverage for this claim, we do disagree with your contention that our coverage language makes coverage illusory, as there are projects involving this insured that we have defended and/or settled when the work was completed during the American Safety policy period. For example, we defended both Bay Area Construction and the general contractor (as an additional insured) in a claim brought by the City of Pinole and paid indemnity of $200,000 to settle that claim, as the project was completed during the American Safety policy period.

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 8 of 12

In addition to exclusions incorporated into the policy by endorsement, several of the exclusions contained in the CGL coverage form also eliminate coverage. The policy provides in Section I,

Coverage A:

  2.  Exclusions

      This insurance does not apply to:

      b. Contractual Liability

         (1) "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

         (2) That the insured would have in the absence of the contract or agreement.

The various causes of action for breach of implied warranty and breach of express warranty are not covered by the policy of insurance. Nor would there be coverage for breach of contract unless your subcontract agreement meets the definition of "insured contract". Further, defects are not covered if there is no resultant damage.

The CGL policy form excludes coverage for:

  j.  Damage to Property

      "Property damage" to:

      (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

      (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

  l.  Damage to Your Work

      "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

      This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Thus, claims for defects that do not result in covered "property damage" are not covered. In particular there is no coverage under the policies for repair or replacement of your defective work, and the "work product" exclusions in general preclude coverage for property damage attributable to your work, as specified in the policy.

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 9 of 12

Other Exclusionary Language

"Property damage" arising out of subsidence would not be covered pursuant to the Subsidence Exclusion (ES 98 12 08 99 and/or ES 09 12 05 04 Editions) under the ASRRG and ASIC policies, which states in part: 'This insurance does not apply to: "Bodily injury", "property damage" or "personal and advertising injury" arising out of or related to the subsidence of the natural surface of the ground." "For the purposes of this exclusion, subsidence shall mean any earth movement including but not limited to earthquake, landslide, mudflow, earth sinking, earth rising, earth shifting or earth settling.'

Policies XGI 01-1826-002, XGI 02-1826-003, XGI 03-1826-004 and XGI 04-1826-005 also contain the Mold and Mildew Exclusion (ES 98 115 06 01 and/or ES 98 115 05 04 Editions), the CGL Policy further provides as follows:

    A.  This insurance does not apply to any of the following:

        1.  "Bodily Injury", "property damage" or "personal and advertising injury" arising out of, relating to or resulting from the actual or alleged existence, ingestion, inhalation, abatement, testing, monitoring, remediation, "enclosure", decontamination, repair or removal of "mold, mildew or fungus" in any form.

        2.  Any loss, cost, expense or damages whether actual or alleged, arising out of, relating to, or resulting from "mold, mildew or fungus" that arises from any cause whatsoever, whether caused by any act or omission of any insured or any third party, whether caused by chronic water intrusion into the building envelope, whether caused by the presence of water on or in any substance or substrate, whether caused by construction defects, whether caused by action or inaction of any insured or third party, whether caused by any act of God, or whether caused by any combination of factors.

        3.  "Bodily injury", "property damage" or "personal and advertising injury" or repair or replacement, remediation, decontamination or removal of any material or building structure or member arising out of the existence, ingestion, inhalation, abatement, testing, monitoring, "enclosure", "microbiological decontamination", remediation, repair or removal of any contamination that causes any alleged chemical sensitivity.

    "Mold, Mildew or Fungus" means any plant-like group that does not produce chlorophyll and derives food either by decomposing organic matter from dead plants and animals or by parasitic attachment to living organisms or any substance specifically or commonly referred to as mold, mildew or fungus.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 10 of 12

Policies XGI 01-1826-002, XGI 02-1826-003, XGI 03-1826-004 and XGI 04-1826-005 are endorsed with the "Professional Liability Exclusion" (ES 98 07 08 09 and/or ES 98 07 05 04 Editions), the CGL Policy further provides as follows:

A. This insurance does not apply to:

"Bodily injury", "property damage" or personal and advertising injury" arising out of the rendering of or failure to render any "professional services" by or for the insured.

B. SECTION V. is amended to add the following definitions:

1. "Professional services" means:

a. The preparing, approving, recommending or failing to prepare, approve or recommend maps, drawings, opinions, reports, surveys, change orders, designs, specifications, hazard assessments plans, response actions, abatement methods or products, air monitoring plans or insurance requirements:

a. Supervisory, inspection, training or engineering services; or

b. Commercial or industrial hygiene, air monitoring, testing laboratory analysis, public health, legal, accounting, architectural, medical, nursing, data processing, consulting or investment advisory services.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Policies XGI 01-1826-002, XGI 02-1826-003, XGI 03-1826-004 and XGI 04-1826-005 endorsed with (ES 98 95 01 01 and/or ES 98 95 05 04 Editions), Exterior Insulation and Finish Systems (EIFS) Exclusion, which states in part:

This is insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of or caused by the actual or alleged:

1. Design, construction, fabrication, preparation, installation, application, maintenance, or service of an "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof.

2. Any work or operations with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system" is used on that particular part of that structure.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 11 of 12

The policies also contain the "Other Insurance" clauses for which ASIC reserves its rights. The endorsement provides in pertinent part:

> "b. This insurance is excess over any other insurance that is valid and collectible insurance available to the insured or any Additional Insured whether such insurance is primary, excess, contingent or on any other basis and regardless of the nature, type, date of issuance or limits of such other insurance available to the insured or any Additional Insured. Our obligation under this policy shall not arise until the limits of such other insurance are exhausted."
> "c. As a condition precedent to our obligations to provide or continue to provide indemnity, coverage or defense hereunder, each insured, upon receipt of notice of any "suit", incident or "occurrence" that may give rise to a "suit", shall first demand indemnity, coverage and defense from each other insurer that may provide indemnity, coverage or defense to it. The insured waives any right it may have to insist that we provide indemnity, coverage or defense when any other insurer may also provide indemnity, coverage or defense to the insured. The insured waives any rights it may have to a targeted tender or any other right to select us as the insurer to provide indemnity, coverage or defense."

Thus, we ask that you tender this claim to all other insurers.

While other policy language may also sustain our position, we have chosen the above language as being the most pertinent for the facts known in this case. We therefore reserve all rights to amend or put forth additional language if necessary at any later date.

Given the aforementioned policy language, exclusions and endorsements; there is no coverage for this loss under American Safety Risk Retention Group's policy number XGI 00-1826-001, effective August 15, 2000 to October 1, 2001 or under American Safety Indemnity Company's policy number XGI 01-1826-002, effective October 1, 2001 to October 1, 2002; XGI 02-1826-003, effective October 1, 2002 to October 1, 2003; XGI 03-1826-004, effective October 1, 2003 to October 1, 2004 or XGI 04-1826-005, effective October 1, 2004 to October 1, 2005. American Safety Risk Retention Group and/or American Safety Indemnity Company has no duty to defend or indemnify Bay Area Construction Framers, Inc. or any additional named insured or additional insureds by endorsement. This declination letter does not necessarily set forth all possible bases for a denial of coverage, and therefore should not be construed as a waiver or American Safety Indemnity Company's rights to raise other bases for a denial of coverage not contained in this letter.

Should you disagree with this declination of coverage, or feel you have information that may have a bearing on our decision, please submit it to this office immediately. Any information we receive from you will be reviewed and we will advise accordingly. Additionally, we, on behalf of American Safety Indemnity Company, reserve all rights to amend or supplement our coverage position and to assert any policy defenses as additional information is discovered.

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 12 of 12

If you believe your claim has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance, Consumer Communications Bureau, 300 South Spring Street, 11th Floor, Los Angeles, CA 90013, telephone number (213) 346-6523 or 800-927-4357.

Should you have any questions with regard to the above, please contact the undersigned at 9650 286-1180.

Very truly yours,
*American Safety Insurance Services, Inc.*


Jean D. Fisher
*Corporate Claims Counsel*

cc:

Daniel J. Smith, Esq.
Parris H. Schmidt, Esq.
Law Offices of Bowman & Brooke
1741 Technology Drive, Suite 220
San Jose, CA 95110-1355

Mr. Paul D. Verrips
Bay Area Construction Framers, Inc.
7633 Southfront Road, Suite 120
Livermore, CA 94551

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

ACCEPTANCE INSURANCE COMPANY,  )
                               )
            Plaintiffs,        )
                               )
      vs.                      )        No. BC352725
                               )
AMERICAN SAFETY RISK RETENTION )
GROUP, INC.; and DOES 1 through)
100, inclusively,              )
                               )
            Defendants.        )
_____)

DEPOSITION OF JEAN P. FISHER

Los Angeles, California

Wednesday, December 5, 2007

Reported by:
MARYAM T. SALAHUD-DIN
CSR No. 9669
Job No. 667590



1            SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                 FOR THE COUNTY OF LOS ANGELES

3

4    ACCEPTANCE INSURANCE COMPANY,    )
                                      )
5                 Plaintiff,          )
                                      )
6            vs.                      )    No. BC352725
                                      )
7    AMERICAN SAFETY RISK RETENTION   )
     GROUP, INC.; and DOES 1 through  )
8    100, inclusively,                )
                                      )
9                 Defendants.         )
     _____)

10

11

12

13

14

15            Deposition of JEAN P. FISHER, taken

16        on behalf of Plaintiff, at 3460 Wilshire

17        Boulevard, 8th Floor, Los Angeles,

18        California, beginning at 10:10 a.m. and

19        ending at 12:34 p.m. on Wednesday,

20        December 5, 2007, before MARYAM T.

21        SALAHUD-DIN, Certified Shorthand

22        Reporter No. 9669.

23

24

25

1  correct?

2      A   Correct.

3      Q   Is it your understanding that that is a true

4  and correct copy of the coverage form, that being CG

5  00010798, that that is a true and correct copy of the

6  coverage form that was attached to the indemnity company

7  policy issued to Bay Area?

8      A   Yes.

9      Q   And so the insuring language that you reviewed

10  in evaluating whether or not there was coverage under

11  the second policy issued by indemnity company, that

12  language that is contained in page 1 of that form is --

13  as stated in that form, is correct to your

14  understanding; correct?

15      A   Correct.  Can we take a short break.

16      Q   Absolutely.

17      (Recess.)

18  BY MR. DION:

19      Q   If we can go back to the second policy issued

20  by American Safety Indemnity Company -- by the way, the

21  address on the declaration page lists the same address

22  as indicated for American Safety Services, Inc.;

23  correct?

24      MR. LARIN:  Let me just object here.  You have

25  asked her a number of questions about the distinctions

1   between American Safety Risk Retention and American

2   Safety Indemnity.

3           And I understand from our off-the-record

4   discussion that we may be at some point in the very near

5   future discussing whether or not that entity will be

6   brought into this case.

7           That is actually not the scope of this

8   deposition.  And that company, as you know our position,

9   is not a defendant in this case.

10          So I can let you run a little bit with this,

11  but if we are going to spend the whole time talking

12  about American Safety Indemnity Company, I think we are

13  well beyond the scope.

14          THE WITNESS:  I have not been retained by that

15  entity.  So it is not a defendant that -- I'm not

16  comfortable continuing into lot of coverage issues

17  without them being a party.

18  BY MR. DION:

19      Q    You are the person who is responsible for

20  handling direct claims against American Safety

21  Indemnity; correct?

22      A    In my role with American Safety Insurance

23  Services, I oversee the suits against the insurance

24  companies.

25      Q    And that would include American Safety

be330082-ed81-4a7b-96b3-7ffebb1c3a2f

1  Indemnity Company; correct?

2      A    Correct.

3      Q    And you did evaluate the Portola action as it

4  relates to the American Safety Indemnity Company;

5  correct?

6      A    I evaluated --

7      MR. LARIN:  Objection.  Outside of the scope of

8  the notice.

9      MR. DION:  The scope of all commercial general

10  liability insurance coverage provided by American Safety

11  to insured Bay Area Construction Framers, Inc.  I don't

12  believe --

13      MR. LARIN:  And the foundational question was

14  whether or not American Safety Indemnity Company is a

15  related company as defined here in No. 1, and the

16  witness said it was not.

17  BY MR. DION:

18      Q    It is your position that it is not a related

19  company?

20      A    They are not related companies.

21      Q    Okay.  And related, in my opinion, could be

22  anything from companies that are associated under an

23  umbrella holding company or something else.  It is

24  sufficiently vague here that clearly those two companies

25  could be construed as related?

1    A    They are not related.  That is what I have told

2    you.  The underwriting filing, there is a certificate

3    that actually you issued the shareholder, as I

4    understand it, to the insured.  It is a risk retention

5    group separate and apart, unrelated to American Safety

6    Holding and all of the subsidiaries which include

7    American Safety Indemnity Company, American Safety

8    Casualty Insurance Company.

9         So I have tried to be very clear here today.

10   They are unrelated companies.  So they is no way that

11   American Safety Indemnity Company is the defendant in

12   this case or a subject of the scope of the testimony in

13   the notice of deposition.

14   Q    American Safety's investigation into Bay Area's

15   tender regarding the Portola action, it is your position

16   that that has nothing to do with American Safety

17   Indemnity Company?

18        MR. LARIN:  Well, I will state that as a legal

19   objection, the scope of this is American Safety as

20   defined here.  And we don't define it as a related

21   entity there are as American Safety on No. 3 would

22   relate to -- relating to its definition under No. 1

23   there is limited to ASRG.

24        MR. DION:  Tell you what.  To make it very

25   easy, you can instruct her not to answer, and then we go

be330082-ed81-4a7b-96b3-7ffebb1c3a2f

1    to court.  Is that fine?  I am going to ask a few more

2    questions about this policy to determine whether or not

3    this is a true and correct copy of the relevant policy

4    terms that she considered in connection with their

5    evaluation of the claim under this policy.  You can

6    decide whether she is going to answer or not.  We will

7    go from there.

8              MR. LARIN:  Is that the limit of it?

9              MR. DION:  That is pretty much the limit of it,

10   yes.  And I don't know where we would go otherwise.

11             THE WITNESS:  The problem I have is that he is

12   not retained at this point for American Safety Indemnity

13   Company.

14             So I guess we will go to a point.  And if I'm

15   not comfortable as the counsel on behalf of American

16   Safety Insurance Services to answer questions about an

17   entity you haven't sued, I am not going to answer it

18   without them being a party.

19   BY MR. DION:

20        Q    And that is perfectly fine because I think you

21   have evaluated under the policy -- I think it has been

22   tendered.  But we can argue that later.

23             MR. LARIN:  Hold on.  I understand your

24   position because we have talked about it at some length

25   today.

1  IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2    IN AND FOR THE COUNTY OF ALAMEDA

3  BEFORE THE HONORABLE STEVEN A. BRICK, JUDGE

4     DEPARTMENT NO. 31

5    - - - O O O - - -  COPY

6 BAY AREA CONSTRUCTION FRAMERS,
  INC., A CALIFORNIA CORPORATION,

7

8     PLAINTIFFS,

9 VS.       NO. RG04-163152

10 AMERICAN SAFETY INSURANCE COMPANY,
  AND DOES 1 THROUGH 100, INCLUSIVELY,

11

12     DEFENDANTS,

13 _____/

14

15    U.S. POST OFFICE BUILDING

16     201-13TH STREET

17   OAKLAND, CALIFORNIA 94612

18  REPORTER'S TRANSCRIPT OF PROCEEDINGS

19  THURSDAY, SEPTEMBER 9, 2004

20

21     APPEARANCES

22 FOR THE PLAINTIFF: PERRY E. RHOADS, ESQ.
         KOLETSKY MANCINI FELDMAN &

23         MORROW
         3460 WILSHIRE BOULEVARD,

24         8TH FLR.
         LOS ANGELES, CA 90010-2228

25

26 FOR THE DEFENDANT: HENRY J. WEINBLATT, ESQ.
         DALE BRADEN & HINCHCLIFFE

27         3415 SO. SEPULVEDA BLVD., 9TH FLR.
         LOS ANGELES, CA 90034

28

SUSAN A. SHEPARD, CSR. NO. 8752

EXHIBIT 3

2

```
 1   09/09/04                        DEPARTMENT NO. 31
 2                    P R O C E E D I N G S
 3                    - - - O O O - - -
 4           THE COURT:  BAY AREA CONSTRUCTION VERSUS
 5   AMERICAN.
 6           COURT ATTENDANT:  WE HAVE ONE PARTY ON LINE,
 7   YOUR HONOR.
 8           THE COURT:  OKAY.
 9           MR. RHOADS:  PERRY RHOADS FOR ATTORNEY
10   PLAINTIFF, BAY AREA CONSTRUCTION FRAMERS.
11           THE COURT:  AND IN COURT WE HAVE?
12           MR. WEINBLATT:  GOOD AFTERNOON, YOUR HONOR.
13   HENRY WEINBLATT, DALE, BRADEN & HINCHCLIFFE, SPECIALLY
14   APPEARING FOR MOVING PARTY, AMERICAN SAFETY CASUALTY
15   INSURANCE COMPANY.
16           THE COURT:  OKAY.  MR. RHOADS?
17           MR. RHOADS:  YES.  FIRST OFF, I'D LIKE TO
18   APOLOGIZE TO THE COURT FOR HAVING TO HEAR THIS MOTION.
19   AND I UNDERSTAND WHY THE COURT GRANTED THE MOTION, BUT
20   EVEN THOUGH IT GOT TO THE POINT WHERE WE HAD TO FILE
21   AN OPPOSITION AND CONTEST THE TENTATIVE RULING, WE'VE
22   ATTEMPTED TO MEET AND CONFER WITH THE MOVING PARTY TO
23   OBTAIN FROM THEM THE CORRECT LEGAL NAME OF THE
24   INSURANCE COMPANY THAT ISSUED THE POLICY TO OUR
25   INSURED.  TO DATE THE MOVING PARTY HAS REFUSED TO
26   PROVIDE THIS INFORMATION WHICH IS IN THE POSSESSION OF
27   THE MOVING PARTY.  AND THERE'S NO REASON WHY THEY
28   CAN'T PROVIDE THIS INFORMATION TO US.
```

SUSAN A. SHEPARD, CSR. NO. 8752

3

```
1          THE COURT:  I TAKE IT YOUR CLIENT DOESN'T
2   HAVE A COPY OF THE POLICY ANYMORE?
3          MR. RHOADS:  THAT'S RIGHT.
4          THE COURT:  OKAY.  WELL, THERE'S -- THIS CASE
5   IS GETTING OFF TO A VERY BAD START.  NORMALLY WHEN A
6   SITUATION LIKE THIS ARISES A DEFENDANT WHO HAS ACTUAL
7   NOTICE OF THE DISPUTE FILES A RESPONSIVE PLEADING
8   SAYING, IN ITS OWN CORRECT NAME AND THEN FOLLOWED BY
9   COMMA, INCORRECTLY SUED AS.  I DON'T KNOW WHY
10  MR. WEINBLATT'S CLIENT HAS CHOSEN NOT TO DO THAT
11  TODAY.  MAYBE YOU'D LIKE TO ENLIGHTEN US.
12         MR. WEINBLATT:  MY -- FIRST OF ALL, MY CLIENT
13  IS AMERICAN SAFETY INSURANCE SERVICES INCORPORATED
14  WHICH IS A, WHICH IS THE PROGRAM MANAGER FOR CLAIMS
15  HANDLING WITH REGARD TO THE AMERICAN SAFETY GROUP OF
16  INSURERS.  AND THEY, ASIS, AMERICAN SAFETY INSURANCE
17  SERVICES, INC. HANDLES CLAIMS MADE AGAINST ANY POLICY
18  ISSUED BY ANY ONE OF THE GROUP OF INSURERS OR ANY
19  CLAIMS OR AGAINST THE -- ANY ONE OF THE INSURERS
20  THEMSELVES SUCH AS A BAD FAITH ACTION.
21      NOW, THIS IS THE COMPLAINT HERE, BAY AREA
22  CONSTRUCTION FRAMERS, MR. RODES' CLIENT, IS ALLEGING
23  THAT THEY TENDERED THEIR DEFENSE TO A CARRIER.  AND
24  MR. RHOADS HAS IN HIS DECLARATION THE NAME OF A
25  CARRIER.  AND THAT THAT CARRIER -- THAT'S AT PARAGRAPH
26  FOUR, MR. RODES' DECLARATION FILED TO SUPPORT THE
27  OPPOSITION TO THE MOTION TO QUASH.
28      NOW, I THINK THE RULES OF PROFESSIONAL
```

SUSAN A. SHEPARD, CSR. NO. 8752

```
 1  RESPONSIBILITY AND THE LAWS REGARDING MALICIOUS

 2  PROSECUTION REQUIRE AT LEAST THE MINIMUM OF DUE

 3  DILIGENCE PRIOR TO SERVING A COMPLAINT.  NOW THESE

 4  PEOPLE, BAY AREA, ARE ALLEGING THAT THEY MADE A

 5  TENDER.  THEIR TENDER WAS DENIED.  IT'S THEIR POLICY.

 6  THEY'RE NOT AN ADDITIONAL INSURED.  THEY IDENTIFY A

 7  POLICY NUMBER.  I WOULD THINK THAT THEY HAVE A RETAIL

 8  INSURANCE BROKER THAT PROVIDED THAT POLICY.  SO I

 9  WOULD THINK THAT WITHIN EVEN A MODICUM OF DUE

10  DILIGENCE AN APPROPRIATE -- THE APPROPRIATE DEFENDANT

11  SHOULD BE -- SHOULD HAVE BEEN NAMED.

12      AND, YOUR HONOR, JUST TO SAVE US A LITTLE TROUBLE

13  AND TO SHOW YOU HOW CONFUSED MR. RHOADS IS, AT

14  PARAGRAPH FOUR IN HIS DECLARATION HE STATES, "BAY AREA

15  WAS INSURED BY AN INSURANCE COMPANY NOW BELIEVED" --

16  THIS IS TWO MONTHS AFTER THE COMPLAINT IS FILED -- "TO

17  BE AMERICAN SAFETY CASUALTY."

18      THEN I REFER THE COURT TO EXHIBIT A IN BAY CITY'S

19  OPPOSITION TO THE MOTION TO QUASH.  THE FIRST

20  PARAGRAPH IN THEIR OWN DOCUMENTS, THERE'S A LETTER

21  THERE FROM BRECKENRIDGE & ASSOCIATES THAT SAYS:

22  AMERICAN SAFETY INSURANCE SERVICES, INC., ASIS, IS THE

23  PROGRAM MANAGER FOR AMERICAN SAFETY RISK RETENTION

24  GROUP.

25      NOW, I DON'T THINK ANYTHING COULD BE PLAINER THAN

26  THAT.  THIS CAME FROM THEIR OWN FILES.  IT'S -- THIS

27  IS A PARADIGM EXAMPLE OF JUST FLAT, SLOPPY LAWYERING.

28          THE COURT:  WELL --
```

SUSAN A. SHEPARD, CSR. NO. 8752

```
 1              MR. RHOADS:  YOUR HONOR --
 2              THE COURT:  -- MR. RHOADS, ON THE CURRENT
 3     STATE OF THE RECORD AND IN LIGHT OF THE ASSERTIONS BY
 4     MR. WEINBLATT'S ASSOCIATE OR PARTNER, MR. DIDSZUN,
 5     UNDER OATH, THAT THERE IS NO RELATIONSHIP BETWEEN THE
 6     DEFENDANT THAT YOU NAMED AND THE DEFENDANT WHO'S
 7     APPEARING HERE TODAY, YOU'RE GOING TO HAVE TO DO YOUR
 8     HOMEWORK AND SUE THE RIGHT DEFENDANT.  TENTATIVE IS
 9     AFFIRMED.
10              MR. WEINBLATT:  THANK YOU, YOUR HONOR.
11     NOTICE WAIVED?
12              THE COURT:  IS NOTICE WAIVED?
13              MR. RHOADS:  YES, YOUR HONOR.
14              THE COURT:  THANK YOU, VERY MUCH.
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

SUSAN A. SHEPARD, CSR. NO. 8752

1  STATE OF CALIFORNIA      )
                            )         SS.
2
   COUNTY OF ALAMEDA        )
3

4

5

6

7

8
9        I, SUSAN A. SHEPARD, DO HEREBY CERTIFY THAT I AM
10  AN OFFICIAL REPORTER OF THE SUPERIOR COURT OF THE
    STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF ALAMEDA,
11
    AND THAT AS SUCH I REPORTED THE PROCEEDINGS HAD IN THE
12
    ABOVE ENTITLED MATTER, AT THE TIME AND PLACE SET FORTH
13
    HEREIN:
14
         THAT MY STENOGRAPH NOTES WERE THEREAFTER
15
    TRANSCRIBED INTO TYPEWRITING UNDER MY DIRECTION AND
16
    THAT THE FOREGOING PAGES CONSTITUTE A FULL, TRUE AND
17
    CORRECT TRANSCRIPTION OF MY SAID NOTES.
18

19

20
    DATED:   OCTOBER 25, 2004
21

22

23

24

25                              _____
                                    SUSAN A SHEPARD
26                              CERTIFIED SHORTHAND REPORTER
                                        NO. 8752
27

28

SUSAN A. SHEPARD, CSR. NO. 8752