1  Raymond C. Dion (State Bar No. 139206)
   Perry E. Rhoads (State Bar No. 209812)
2  **KOLETSKY, MANCINI, FELDMAN & MORROW**
   3460 Wilshire Boulevard, Eighth Floor
3  Los Angeles, CA 90010-2228
   Telephone: (213) 427-2350
4  Facsimile: (213) 427-2366

5  Attorneys for Plaintiff
   ACCEPTANCE INSURANCE COMPANY

6

7              **UNITED STATES DISTRICT COURT**

8          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

9

10  ACCEPTANCE INSURANCE           CASE NO.  CV 08-01577 GPS (AGRx)
    COMPANY,
11                                 **REQUEST FOR JUDICIAL NOTICE IN
                Plaintiff,         SUPPORT OF PLAINTIFF ACCEPTANCE
12                                 INSURANCE COMPANY'S OPPOSITION TO
         vs.                       MOTION TO DISMISS [FED. R. EVID. 201]**
13
                                   [Filed and Served Concurrently with Opposition]
14  AMERICAN SAFETY RISK
    RETENTION GROUP, INC. and       Date:      April 14, 2008
15  AMERICAN SAFETY INDEMNITY        Time:      1:30 p.m.
    COMPANY,                        Location:  Courtroom 7
16                                  Judge:     Hon. George P. Schiavelli
                Defendants.
17

18  TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

19        Pursuant to Federal Rule of Evidence, Rule 201, Plaintiff Acceptance Ins. Company requests

20  that this Court take judicial notice of the following:

21        1.    "Notice of Motion and Motion for Leave to Amend Complaint to Name American

22  Safety Indemnity Company as Doe 1," filed on January 7, 2008, in the state court in the above

23  captioned action prior to removal, Los Angeles Superior Court, Case No. BC353725.  A true and

24  correct copy of this Motion and supporting documents is attached hereto as **Exhibit "1"**.

25        2.    "Opposition to Plaintiff's Motion for Leave to Amend Complaint to Name American

26  Safety Indemnity Company as Doe 1," filed on January 17, 2008, in the state court in the above

27  captioned action prior to removal, Los Angeles Superior Court, Case No. BC353725.  A true and

28  correct copy of this Motion and supporting documents is attached hereto as **Exhibit "2"**.

**KOLETSKY, MANCINI, FELDMAN & MORROW**
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

1     3.    "Reply to Opposition to Plaintiff's Motion to Amend Complaint to Name American

2   Safety Indemnity Company as Doe 1," filed on January 24, 2008, in the state court in the above

3   captioned action prior to removal, Los Angeles Superior Court, Case No. BC353725.  A true and

4   correct copy of this Motion and supporting documents is attached hereto as **Exhibit "3"**.

5     4.    "Minute Order," entered on January 31, 2008, granting Motion for Leave to Amend the

6   Complaint in the state court in the above captioned action prior to removal, Los Angeles Superior

7   Court, Case No. BC353725.  A true and correct copy of this Minute Order is attached hereto as

8   **Exhibit "4"**.

9

10   Dated: March 31, 2008              KOLETSKY, MANCINI, FELDMAN & MORROW

11                                      By: _____

12                                           Raymond C. Dion, Esq.
                                             Perry H. Rhoads, Esq.

13                                      Attorneys for Plaintiff ACCEPTANCE INS. CO.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

# EXHIBIT 1

1 | RAYMOND C. DION (State Bar No. 139206)
PERRY E. RHOADS (State Bar No. 209812)
2 | **KOLETSKY, MANCINI, FELDMAN & MORROW**
3460 Wilshire Boulevard, Eighth Floor
3 | Los Angeles, CA 90010-2228
Telephone: (213) 427-2350
4 | Facsimile: (213) 427-2366

5 | Attorneys for Plaintiff
ACCEPTANCE INSURANCE COMPANY

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 07 2008

John A. Clarke, Executive Officer/Clerk

BY SHAUNYA WESLEY, Deputy

7 | SUPERIOR COURT OF CALIFORNIA

8 | COUNTY OF LOS ANGELES

| | |
|---|---|
| ACCEPTANCE INSURANCE COMPANY, | CASE NO.  BC352725<br>Unlimited Jurisdiction |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND COMPLAINT TO NAME AMERICAN SAFETY INDEMNITY COMPANY AS DOE 1; SUPPORTING DECLARATION OF PERRY E. RHOADS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| AMERICAN SAFETY RISK RETENTION GROUP, INC., and DOES 1 through 100, inclusively, | Hearing Date: January 31, 2007<br>Time: 8:30 a.m.<br>Location: Dept. 55 |
| Defendants. | |

18 | **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

19 |          PLEASE TAKE NOTICE that on January 31, 2007, at 8:30 a.m. in Department 55 of the

20 | above-entitled court located at 111 N. Hill St., Los Angeles, CA 90012-3014, plaintiff Acceptance Ins.

21 | Co. will be seeking an order to amend the Complaint to name American Safety Indemnity Company as

22 | Doe 1.  This motion is based on California *Code of Civil Procedure*, section 473(a)(1) and California

23 | *Rules of Court,* Rule 3.1324 and the following motion and supporting declaration.

24 | Dated: January 7, 2008               KOLETSKY, MANCINI, FELDMAN & MORROW

25 |

26 | By: _____

27 |                                                  Raymond C. Dion, Esq.
                                                 Perry E. Rhoads, Esq.
                                                 Attorneys for Plaintiff ACCEPTANCE INS. CO.

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd. Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

---

NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND COMPLAINT TO NAME AMERICAN
SAFETY INDEMNITY COMPANY AS DOE 1; SUPPORTING DECLARATION OF PERRY E. RHOADS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

1-7-08

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This is a contribution case filed by Acceptance Insurance Company, against American Safety Risk Retention Group, Inc. and Does 1 through 100, for failure to defend and indemnify the mutual primary insured, Bay Area Construction Framers, Inc. in an underlying construction defect case that settled.

The Complaint names American Safety Risk Retention Group, Inc. and Does 1 through 100. It refers to and attaches the two insurance policies for which plaintiff is seeking contribution. The court is requested to take judicial notice of Plaintiff's Complaint within the court's file.

The first policy was issued by American Safety Risk Retention Group, Inc. ("ASRRG"). Attached hereto as **"Exhibit A"** is the Declaration page of American Safety Risk Retention Group, Inc. policy number XGI 00-1826-001, effective 8/15/00-10/1/01.

The second policy was issued by American Safety Indemnity Company ("ASIC"). Attached hereto as **"Exhibit B"** is the Declaration page of American Safety Indemnity Company policy number XGI 01-1826-002, effective 10/1/01-10/1/02.

It was not until recently that plaintiff counsel was made aware that defense counsel, who appeared on behalf of ASRRG, did not intend to appear or mediate on behalf of ASIC. Defense counsel refuses to negotiate or participate on behalf of ASIC, asserting that ASIC was not named as a defendant. Plaintiff recently took the deposition of Jean Fisher, the claims administrator for both policies. Attached hereto as **"Exhibit C"** are excerpts from the Deposition Transcript of Jean P. Fisher, taken December 5, 2007 (without exhibits). It was then revealed that defendant was taking this position because the complaint failed to identify the correct American Safety entity that issued the second policy, and contained a clerical error in identifying the attached second policy number as "XGI-00-1826-002" instead of "XGI-01-1826-002" (page 3 line 1 of the complaint).

Therefore, this motion is necessary to add the second American Safety entity that issued the second policy (ASIC) to ensure its complete participation in this case.

There will be no undue prejudice to ASIC being named at this late date, as ASIC is aware of this lawsuit, and has been in effect participating through ASRRG.

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND COMPLAINT TO NAME AMERICAN SAFETY INDEMNITY COMPANY AS DOE 1; SUPPORTING DECLARATION OF PERRY E. RHOADS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

2

1         Granting of the present motion will avoid duplication of actions, and is in the interests of

2    justice and judicial economy..

3         Good cause exists for the court to grant the present motion, as no additional discovery,

4    investigation or delay will be occasioned by naming the additional American Safety entity, aside from

5    potentially taking the continued deposition of Jean Fisher, in order to authenticate the ASIC policy.

6    **II.**    **FACTUAL BACKGROUND**

7         The deposition of Jean Fisher was taken on December 5, 2007.  Attached hereto as **"Exhibit**

8    **C"** are excerpts from the deposition transcript of Jean P. Fisher, taken in this action (without exhibits).

9    Ms. Fisher is an employee of American Safety Insurance Services ["ASIS"]).  ASIS is the claims

10   administrator for all of the American Safety entities (including ASRRG and ASIC).  Her deposition

11   revealed that:

12       A.    ASIC had notice of this lawsuit through ASRRG;

13       B.    ASIS evaluated coverage under both policies when it received a tender for the

14             underlying *Portola* action (which is the subject of this contribution action);

15       C.    ASIC is aware of this lawsuit, and has been in effect participating through ASRRG and

16             therefore is not prejudiced by being named at a late date.

17       **A.**    **ASIC had notice of this lawsuit through ASRRG**

18        The following statements made by Ms. Fisher in her recent deposition (attached as **"Exhibit**

19   **C"**) confirm that ASIC had notice of this lawsuit through ASRRG:

20       1.    The claims administrator (American Safety Insurance Services ["ASIS"]) is the same

21             for both entities (page 13, lines 11-18).

22       2.    Ms. Jean Fisher is employed by ASIS (page 52 lines 17-18, page 13 lines 4-6).

23       3.    She is also the PMK for ASRRG (page 6, lines 16-18).

24       4.    Ms. Fisher's job duties include overseeing all of the direct actions naming American

25             Safety entities (page 13 lines 11-18).

26       5.    This includes overseeing direct actions against ASRRG and ASIC (page 52 lines

27             19-24).

28       6.    It is brought to her attention when any American Safety entities are named in a lawsuit

ROBERT, ... GLEITMAN & MORGAN
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

(ASRRG, American Safety Indemnity Co., American Safety Casualty Ins. Co., or ASIS) (Page 12-14, lines 24-25, 1-6).

**B.    ASIS evaluated coverage under both policies when it received a tender for the underlying Portola action (which is the subject of this contribution action)**

The following statements made by Ms. Fisher confirm that ASIS evaluated coverage under both policies when it received a tender for the underlying *Portola* action (which is the subject of this contribution action):

1.    The administrator's typical practice when a claim/tender does not name the right policy, is that they evaluate coverage under all of the policies (page 51–52, lines 23-25; 1-8). This is what was done in this case (page 52 lines 9-11; page 64, lines 7-9).

2.    Ms. Fisher personally contemplated whether there was coverage under the American Safety Indemnity policy since before the filing of the Acceptance complaint. (Page 22 lines 9-15; page 24 lines 18-22; page 50, lines 10-18).

3.    Ms. Fisher determined that there was no coverage under the second policy (issued by American Safety Indemnity) at the time its third party administrator issued a declination under the first policy (issued by American Safety Risk Retention Group). (Page 28-29, lines 16-25, 5-11).

**C.    ASIC is aware of this lawsuit, and has been in effect participating through ASRRG and therefore is not prejudiced by being named at a late date**

The following statements made by Ms. Fisher confirm that ASIC is aware of this lawsuit, and has been in effect participating through ASRRG and therefore is not prejudiced by being named at a late date:

1.    Throughout the Acceptance case, Ms. Fisher has continued the process of evaluating the claim to determine whether or not there might be a potential for coverage under both policies (pages 50-51, lines 23-25, lines 3-8).

2.    As to Bay Area, there are no changes of significance between the first and second policies with respect to evaluation of whether there is coverage under either policy (pages 54-55, lines 19-24, 1).

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

III.    **THE COURT HAS THE AUTHORITY TO GRANT LEAVE TO AMEND THE COMPLAINT TO NAME AMERICAN SAFETY INDEMNITY CO. AS DOE 1.**

"*The court may, in furtherance of justice, and on such terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party...*" CCP section 473(a)(1).

It is judicial policy to resolve all disputes between the parties on their merits, and to allow amendment of the pleadings to put all such disputes at the time of trial.

"*While a motion to permit an amendment to a pleading to be filed is one addressed to the discretion of the court...it is a rare case in which a court will be justified in refusing a party leave to amend his pleadings so that he may properly present his case...If the motion to amend is timely made and the granting of the motion will not prejudice the opposing party, it is error to refuse permission to amend and where refusal also results in a party being deprived of the right to assert a meritorious cause of action or a meritorious defense, it is not only error, but an abuse of discretion.*" California Casualty General Insurance Company v. Superior Court (Gorgei) (1985) 173 CA3d 274, 278, 218 CR 817,819

In the instant case, Plaintiff was unaware that the second American Safety policy was issued by a different American Safety entity until recently.  Plaintiff therefore seeks to name ASIC, which was the second American Safety entity that issued the second policy.

Therefore, there will be no undue prejudice to ASIC being named at this late date, as ASIC is aware of this lawsuit, and has been in effect participating through ASRRG.

IV.    **CONCLUSION**

Based upon the above, plaintiff requests leave to file its proposed Doe Amendment naming American Safety Indemnity Company as Doe 1.


Dated: January 7, 2008                    KOLETSKY, MANCINI, FELDMAN & MORROW


                                          By: _____
                                              Raymond C. Dion, Esq.
                                              Perry E. Rhoads, Esq.
                                          Attorneys for Plaintiff ACCEPTANCE INS. CO.

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

### DECLARATION OF PERRY E. RHOADS

I, Perry E. Rhoads, declare as follows:

1.      I am an attorney at law, duly licensed to practice before all the courts of the State of California and am an associate attorney with KOLETSKY, MANCINI, FELDMAN & MORROW, attorneys of record herein for Plaintiff Acceptance Insurance Company in the instant action.  I have personal knowledge of the facts set forth herein and could and would competently testify as to the truth of same if required to do so.

2.      This is a contribution case filed by Acceptance Insurance, against American Safety Risk Retention Group, Inc. and Does 1 through 100, for failure to defend and indemnify the mutual primary insured, Bay Area Construction Framers, Inc. in an underlying construction defect case that settled.

3.      The Complaint names American Safety Risk Retention Group, Inc. and Does 1 through 100. It refers to and attaches the two insurance policies for which plaintiff is seeking contribution.  The court is requested to take judicial notice of Plaintiff's Complaint within the court's file.

4.      Plaintiff was unaware that the second American Safety policy was issued by a different American Safety entity until recently.

5.      The first policy was issued by American Safety Risk Retention Group, Inc. ("ASRRG"). Attached hereto and marked as **"Exhibit A"** is a true and correct copy of the Declaration page of American Safety Risk Retention Group, Inc. policy number XGI 00-1826-001, effective 8/15/00-10/1/01.

6.      The second policy was issued by American Safety Indemnity Company ("ASIC").  Attached hereto and marked as **"Exhibit B"** is a true and correct copy of the Declaration page of American Safety Indemnity Company policy number XGI 00-1826-002, effective 10/1/01-10/1/02.

7.      It was not until recently that plaintiff counsel was made aware that defense counsel, who appeared on behalf of ASRRG, did not intend to appear or mediate on behalf of ASIC.  Defense counsel refuses to negotiate or participate on behalf of ASIC, because they were not a named defendant.  Therefore, this motion is necessary to add the second American Safety entity that issued the second policy (ASIC) to ensure its complete participation.

8.      There will be no undue prejudice to ASIC being named at this late date, as ASIC is aware of

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

---

NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND COMPLAINT TO NAME AMERICAN
SAFETY INDEMNITY COMPANY AS DOE 1; SUPPORTING DECLARATION OF PERRY E. RHOADS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  this lawsuit, and has been in effect participating through ASRRG.

2      9.      Granting of the present motion will avoid duplication of actions, and is in the interests of

3  justice and judicial economy.

4      10.     Good cause exists for the court to grant the present motion, as no additional discovery,

5  investigation or delay will be occasioned by naming the additional American Safety entity, aside from

6  potentially taking the continued deposition of Jean Fisher, in order to authenticate the ASIC policy.

7      11.     The deposition of Jean Fisher was taken on December 5, 2007.  Attached hereto and marked

8  as **"Exhibit C"** is a true and correct copy of excerpts from the deposition transcript of Jean P. Fisher

9  (without exhibits), taken in this action.

10     12.     The following statements made by Ms. Fisher confirm that ASIC had notice of this lawsuit

11 through ASRRG:

12          A.    The claims administrator (American Safety Insurance Services ["ASIS"]) is the same

13               for both entities (page 13, lines 11-18).

14          B.    Ms. Jean Fisher is employed by ASIS (page 52 lines 17-18, page 13 lines 4-6).

15          C.    She is also the PMK for ASRRG (page 6, lines 16-18).

16          D.    Ms. Fisher's job duties include overseeing all of the direct actions naming American

17               Safety entities (page 13 lines 11-18).

18          E.    This includes overseeing direct actions against ASRRG and ASIC (page 52 lines 19-

19               24).

20          F.    It is brought to her attention when any American Safety entities are named in a

21               lawsuit (ASRRG, American Safety Indemnity Co., American Safety Casualty Ins.

22               Co., or ASIS.  (Page 12-14, lines 24-25, 1-6).

23     13.     The following statements made by Ms. Fisher confirm that ASIS evaluated coverage under

24 both policies when it received a tender for the underlying Portola action (which is the subject of this

25 contribution action):

26          A.    The administrator's typical practice when a claim/tender does not name the right

27               policy, is that they evaluate coverage under all of the policies. (Page 51–52, lines 23-

28               25; 1-8.  This is what was done in this case (page 52 lines 9-11; page 64, lines 7-9.

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

**NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND COMPLAINT TO NAME AMERICAN SAFETY INDEMNITY COMPANY AS DOE 1; SUPPORTING DECLARATION OF PERRY E. RHOADS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

B.    Ms. Fisher personally contemplated whether there was coverage under the American Safety Indemnity policy since before the filing of the Acceptance complaint. (Page 22 lines 9-15; page 24 lines 18-22; page 50, lines 10-18.

C.    Ms. Fisher determined that there was no coverage under the second policy (issued by American Safety Indemnity) at the time its third party administrator issued a declination under the first policy (issued by American Safety Risk Retention Group). (Page 28-29, lines 16-25, 5-11).

14.    The following statements made by Ms. Fisher confirm that ASIC is aware of this lawsuit, and has been in effect participating through ASRRG and therefore is not prejudiced by being named at a late date:

A.    Throughout the Acceptance case, Ms. Fisher has continued the process of evaluating the claim to determine whether or not there might be a potential for coverage under both policies (pages 50-51, lines 23-25, lines 3-8).

B.    As to Bay Area, there are no changes of significance between the first and second policies with respect to evaluation of whether there is coverage under either policy (pages 54-55, lines 19-24, 1).

15.    Based upon the above, plaintiff requests leave to file its proposed Doe Amendment naming American Safety Indemnity Company as Doe 1.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: January 7, 2008

_____
Perry E. Rhoads, Declarant

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

# EXHIBIT A

**AS**

*AMERICAN SAFETY*

*RISK RETENTION GROUP, INC.*

POLICY NUMBER:   XGI 00-1826-001

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

| Broker -  American E & S | Producer – Mr. Richard Schlesinger |
|---|---|

Named Insured:  Bay Area Construction Framers, Inc.
Mailing Address:  7080 Donlon Way Suite 204
Dublin, CA 94568

Policy Period:   From:   Aug. 15, 00   To:   Oct. 1, 01   At 12:01 A.M. Time At
Your Mailing Address Shown Above

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

## LIMITS OF INSURANCE

| | |
|---|---|
| Each Occurrence Limit | $ 1,000,000.00 |
| Fire Damage Limit - Any one fire | $      50,000.00 |
| Medical Expense Limit - Any one person | $      Excluded |
| Personal & Advertising Injury Limit  - Any one person or organization | $ 1,000,000.00 |
| General Aggregate Limit | $ 2,000,000.00 |
| Products/Completed Operations Aggregate Limit | $ 2,000,000.00 |

## RETROACTIVE DATE (CG 00 02 ONLY)

THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY" OR "PROPERTY DAMAGE" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.
RETROACTIVE DATE:   "Does Not Apply"
(ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES)

## DESCRIPTION OF BUSINESS

FORM OF BUSINESS:
  Individual                          Partnership                    Joint Venture
  Limited Liability Company      x  Organization, Including a Corporation (but not
                                       including a Partnership, Joint Venture or Limited Liability
                                       Company)
                                       Residential Framer Subcontractor

Business Description:

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY. THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.

NOTICE:  THIS POLICY IS ISSUED BY YOUR RISK RETENTION GROUP.  YOUR RISK RETENTION GROUP MAY NOT BE SUBJECT TO ALL OF THE INSURANCE LAWS AND REGULATIONS OF YOUR STATE.  STATE INSURANCE INSOLVENCY GUARANTY FUNDS ARE NOT AVAILABLE FOR YOUR RISK RETENTION GROUP.

Page 1 of 2

Exhibit 4

**AS**

**AMERICAN SAFETY**

RISK RETENTION GROUP, INC.

1845 The Exchange, Suite 200 ♦ Atlanta, GA  30339
☎ (800) 388-3647   ♦   FAX  ☎  (770) 955-8339

## ALL PREMISES YOU OWN, RENT OR OCCUPY

| LOCATION NUMBER | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
|---|---|
| | As on file with application dated March 28, 2000 |

## CLASSIFICATION AND PREMIUM

| LOCATION NUMBER | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE Prem/Ops | RATE Prod/Comp Ops | ADVANCE PREMIUM Prem/Ops | ADVANCE PREMIUM Prod/Comp Ops |
|---|---|---|---|---|---|---|---|
| | Contractor | 94444 | 8,000,000 | Included | $1.129 per $1000 Est. Receipts | Included | $ 108,384 |
| | State Tax or Other (if applicable) | | | | $ | | |
| | Total premium (Subject to Audit) | | | | $ 108,384 | | |

| Premium shown is payable: | At Inception; | $ 108,384 |
|---|---|---|
| | At Each Anniversary | $ |
| | (If policy period is more than one year and premium is paid in annual installments) | |

| Audit Period (If Applicable | X | Annually | | Semi-Annually | | Quarterly | | Monthly |

## ENDORSEMENTS

ENDORSEMENTS ATTACHED TO THIS POLICY:

| | | |
|---|---|---|
| CG 00 01 07 98 | ES 98 01 08 99 | ES 98 08 08 99 |
| CG 20 1011 85 | ES 98 02 08 99 | ES 98 10 08 99 |
| CG 24 04 11 85 | ES 98 03 08 99 | ES 98 11 08 99 |
| CG 25 03 11 85 | ES 98 04 08 99 | ES 98 12 08 99 |
| IL  00 17 11 85 | ES 98 05 08 99 | ES 98 13 08 99 |
| IL  00 21 11 94 | ES 98 06 08 99 | ES 98 14 08 99 |
| | | ES 98 18 09 99 |
| | | ES 98 24 09 99 |
| | | ES 98 28 10 99 |
| | | ES 98 29 10 99 |
| | | ES 98 30 10 99 |
| | | ES 98 39 03 00 |

THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.

| Endorsement Effective: | August 15, 2000 | Countersigned By: _Fred J. Pinckey_ |
|---|---|---|
| Named Insured: | Bay Area Construction Framers, Inc. | (Authorized Representative) |

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY.

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.

NOTICE:  THIS POLICY IS ISSUED BY YOUR RISK RETENTION GROUP.  YOUR RISK RETENTION GROUP MAY NOT BE SUBJECT TO ALL OF THE INSURANCE LAWS AND REGULATIONS OF YOUR STATE.  STATE INSURANCE INSOLVENCY GUARANTY FUNDS ARE NOT AVAILABLE FOR YOUR RISK RETENTION GROUP.

# EXHIBIT B

**AS**
*AMERICAN*
Indemnity Company

1845 The Exchange, Suite 200 ♦ Atlanta, GA 30339
☎ (800) 288-3647  ♦  Fx ☎ (770) 955-6163

POLICY NUMBER:  XGI 01-1826-002

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

| Broker - American E & S | Producer - Mr. Richard Schlesinger |
|---|---|
| Named Insured:<br>Mailing Address: | Bay Area Construction Framers, Inc.<br>7080 Donlon Way,   Ste 204<br>Dublin, CA  94568 |
| Policy Period: | From:   October 1, 2001     To:   October 1, 2002<br>At 12:01 A.M. Time at your Mailing Address Shown Above |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

### LIMITS OF INSURANCE

| | |
|---|---|
| Each Occurrence Limit | $  1,000,000.00 |
| Fire Damage Limit - Any one fire | $       50,000.00 |
| Medical Expense Limit – Any one person | $     Excluded |
| Personal & Advertising Injury Limit  - Any one person or organization | $  1,000,000.00 |
| General Aggregate Limit | $  2,000,000.00 |
| Products/Completed Operations Aggregate Limit | $  1,000,000.00 |
| Subsidence sublimit per occurrence aggregate | $     100,000.00 |

### RETROACTIVE DATE (CG 00 02 ONLY)

THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY" OR "PROPERTY DAMAGE" WHICH
OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.
RETROACTIVE DATE:   "Does not apply"
(ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES)

### DESCRIPTION OF BUSINESS

FORM OF BUSINESS:
☐ Individual     ☐ Partnership     ☐ Joint Venture
☐ Limited Liability Company     [x] Organization, Including a Corporation (but not
including a Partnership, Joint Venture or Limited Liability
Company)

Business Description:   Residential Framers Subcontractor

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS
POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY.
THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO
FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.

Page 1 of 2

PREMIUM     $ 127,500 00
CA STATE TAX:   3,825 00
STAMPING FEE:   318 75

*D. Reves     1/28/02*

Exhibit 5

AMERICAN
SAFETY
Indemnity Company
1845 The Exchange, Suite 200 ♦ ...nta, GA 30339
(800) 388-3647 ... FAX (770) 955-6166
Case 3:08-cv-01057-J-WMC   Document 12-3   Filed 03/31/2008   Page 16 of 40

| LOCATION NUMBER | ALL PREMISES YOU OWN, RENT OR OCCUPY |
|---|---|
| | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
| | As on file with application dated: Sept. 8, 2001 |

| CLASSIFICATION AND PREMIUM | | | | | | | |
|---|---|---|---|---|---|---|---|
| LOCATION NUMBER | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
| | | | | Prem/Ops | Prod/Comp Ops | Prem/Ops | Prod/Comp Ops |
| | Contractor | 94444 | $10,000,000 | Included | $ 12.75 per $1000 est. receipts | Included | $ 127,500 |

| | | |
|---|---|---|
| | State Tax or Other (if applicable) | $ 0 |
| | Total premium (Subject to Audit) | $ 127,500 |
| Premium shown is payable: | At Inception; | $ 127,500 |
| | At Each Anniversary | $ |
| | (If policy period is more than one year and premium is paid in annual installments) | |

| Audit Period (If Applicable) | X | Annually | | Semi-Annually | | Quarterly | | Monthly |
|---|---|---|---|---|---|---|---|---|

## ENDORSEMENTS

ENDORSEMENTS ATTACHED TO THIS POLICY:

| | | | | |
|---|---|---|---|---|
| CG 00 01 07 98 | ES 98 03 08 99 | ES 98 10 08 99 | ES 98 17 09 99 | ES 98 95 01 01 |
| CG 25 03 11 85 | ES 98 04 08 99 | ES 98 11 08 99 | ES 98 18 09 99 | ES 98 98 01 01 |
| ... 00 17 11 85 | ES 98 05 08 99 | ES 98 12 08 99 | ES 98 20 09 99 | ES 98 112 05 01 |
| ... 00 21 11 94 | ES 98 06 08 99 | ES 98 13 08 99 | ES 98 21 09 99 | ES 98 113 05 01 |
| ES 98 01 08 99 | ES 98 07 08 99 | ES 98 14 08 99 | ES 98 30 10 99 | ES 98 115 06 01 |
| ES 98 02 08 99 | ES 98 08 08 99 | ES 98 15 08 99 | ES 98 38 02 00 | |

THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.

| | Countersigned By: |
|---|---|
| Endorsement Effective:   October 1, 2001 | |
| Named Insured:   Bay Area Construction Framers, Inc. | (Authorized Representative) |

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY. THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.

# EXHIBIT C

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

ACCEPTANCE INSURANCE COMPANY,    )
                                )
          Plaintiffs,            )
                                )
     vs.                        )    No. BC352725
                                )
AMERICAN SAFETY RISK RETENTION )
GROUP, INC.; and DOES 1 through)
100, inclusively,               )
                                )
         Defendants.            )
_____)

DEPOSITION OF JEAN P. FISHER

Los Angeles, California

Wednesday, December 5, 2007

Reported by:
MARYAM T. SALAHUD-DIN
CSR No. 9669
Job No. 667590

1 Group also administers additional or other claims on

2 behalf of any other American Safety corporations?

3      A    I'm sorry.  You just misspoke.

4      Q    Sure.  I will restate it.  Who are you employed

5 by?

6      A    American Safety Insurance Services.

7      Q    Okay.  Does American Safety Insurance Services

8 administer claims on behalf of American Safety Indemnity

9 Company?

10     A    Yes.

11     Q    Okay.  Now, what are your job duties with

12 respect to American Safety Insurance Services, Inc.?

13     A     Currently, they are to oversee all of the

14 direct actions naming American Safety entities.  They

15 are to work with the underwriting department in various

16 ways and to oversee the coverage opinions authored by

17 the San Diego office and assist the Atlanta office when

18 requested.

19          MR. DION:  Could you repeat that back for me,

20 please.

21          (Record read.)

22 BY MR. DION:

23     Q    Let's go to the first part.  With respect to

24 overseeing direct actions against American Safety

25 entities, what specifically do you do with respect to

1 there is coverage under that policy?  Is there anything

2 that you would do typically in that kind of a

3 situation?

4       A    Yes.

5       Q    What is your typical practice in that type of a

6 situation?

7       A    I typically evaluate coverage under all of the

8 policies.

9       Q    And, in fact, you did that in this case with

10 respect to Bay Area; correct?

11      A    Yes.

12      Q    Now, I think you have referred to both American

13 Safety Risk Retention Group and American Indemnity

14 Company as American Safety entities; is that correct?

15      A    Well, to the extent they all begin with

16 American Safety, yes.  And to the extent I may have

17 misspoken, said us, when I'm really employed by American

18 Safety Insurance Services, yes.

19      Q    What I was referring to is, you said you

20 oversee direct actions against American Safety

21 entities.  You are charged with overseeing actions as it

22 relates to both American Safety Risk Retention Group and

23 American Safety Indemnity; correct?

24      A    Correct.

25      Q    And a few other American Safety companies;

1 Group also administers additional or other claims on

2 behalf of any other American Safety corporations?

3     A   I'm sorry.  You just misspoke.

4     Q   Sure.  I will restate it.  Who are you employed

5 by?

6     A   American Safety Insurance Services.

7     Q   Okay.  Does American Safety Insurance Services

8 administer claims on behalf of American Safety Indemnity

9 Company?

10     A   Yes.

11     Q   Okay.  Now, what are your job duties with

12 respect to American Safety Insurance Services, Inc.?

13     A   Currently, they are to oversee all of the

14 direct actions naming American Safety entities.  They

15 are to work with the underwriting department in various

16 ways and to oversee the coverage opinions authored by

17 the San Diego office and assist the Atlanta office when

18 requested.

19         MR. DION:  Could you repeat that back for me,

20 please.

21         (Record read.)

22 BY MR. DION:

23     Q   Let's go to the first part.  With respect to

24 overseeing direct actions against American Safety

25 entities, what specifically do you do with respect to

```
 1   Los Angeles, California, Wednesday, December 5, 2007

 2                   10:10 a.m. - 12:34 p.m.

 3

 4                   JEAN P. FISHER,

 5   having been first duly sworn, was examined and testified

 6   as follows:

 7

 8                   EXAMINATION

 9   BY MR. DION:

10       Q    Could you please state your full name for the

11   record.

12       A    Jean Fisher.

13       Q    All right.  Ms. Fisher, you are appearing as

14   the person most knowledgeable pursuant to the notice of

15   deposition OF person most knowledgeable?

16       A    I believe it was specifically noticed for me,

17   but I do believe I am also the person most knowledgeable

18   for American Safety Risk Retention Group.

19       Q    Did you receive an original copy of the notice

20   of deposition?

21       A    Which deposition notice?  There has been more

22   than one.

23       Q    There has been a continued one.  There has been

24   an original notice that was sent out.  Did you receive a

25   copy of that?
```

1  Group also administers additional or other claims on

2  behalf of any other American Safety corporations?

3       A    I'm sorry.  You just misspoke.

4       Q    Sure.  I will restate it.  Who are you employed

5  by?

6       A    American Safety Insurance Services.

7       Q    Okay.  Does American Safety Insurance Services

8  administer claims on behalf of American Safety Indemnity

9  Company?

10      A    Yes.

11      Q    Okay.  Now, what are your job duties with

12  respect to American Safety Insurance Services, Inc.?

13      A    Currently, they are to oversee all of the

14  direct actions naming American Safety entities.  They

15  are to work with the underwriting department in various

16  ways and to oversee the coverage opinions authored by

17  the San Diego office and assist the Atlanta office when

18  requested.

19           MR. DION:  Could you repeat that back for me,

20  please.

21           (Record read.)

22  BY MR. DION:

23      Q    Let's go to the first part.  With respect to

24  overseeing direct actions against American Safety

25  entities, what specifically do you do with respect to

1  there is coverage under that policy?  Is there anything

2  that you would do typically in that kind of a

3  situation?

4      A  Yes.

5      Q  What is your typical practice in that type of a

6  situation?

7      A  I typically evaluate coverage under all of the

8  policies.

9      Q  And, in fact, you did that in this case with

10  respect to Bay Area; correct?

11     A  Yes.

12     Q  Now, I think you have referred to both American

13  Safety Risk Retention Group and American Indemnity

14  Company as American Safety entities; is that correct?

15     A  Well, to the extent they all begin with

16  American Safety, yes.  And to the extent I may have

17  misspoken, said us, when I'm really employed by American

18  Safety Insurance Services, yes.

19     Q  What I was referring to is, you said you

20  oversee direct actions against American Safety

21  entities.  You are charged with overseeing actions as it

22  relates to both American Safety Risk Retention Group and

23  American Safety Indemnity; correct?

24     A  Correct.

25     Q  And a few other American Safety companies;

1     A    No.

2     Q    Is there a parent corporation for American

3 Safety Risk Retention Group?

4     A    No.

5     Q    Are you familiar with an entity known as

6 American Safety Insurance Services, Inc.?

7     A    Yes.

8     Q    Okay.  Is that company related in any way or

9 associated in any way with American Safety Risk

10 Retention Group?

11     A    They are not related entities.

12     Q    Are they associated in any way?

13          MR. LARIN:  Objection.  Vague and ambiguous.

14          THE WITNESS:  No, it isn't except for a

15 contract.

16 BY MR. DION:

17     Q    What is the contract?

18     A    American Safety Risk Retention Group has a

19 contract with American Safety Insurance Services to

20 administer its claims.

21     Q    Okay.  So American Safety Insurance Services,

22 Inc. administers the claims of American Safety Risk

23 Retention Group?

24     A    Correct.

25     Q    Okay.  Do you know if American Safety Insurance

1 Group also administers additional or other claims on

2 behalf of any other American Safety corporations?

3     A    I'm sorry.  You just misspoke.

4     Q    Sure.  I will restate it.  Who are you employed

5 by?

6     A    American Safety Insurance Services.

7     Q    Okay.  Does American Safety Insurance Services

8 administer claims on behalf of American Safety Indemnity

9 Company?

10     A    Yes.

11     Q    Okay.  Now, what are your job duties with

12 respect to American Safety Insurance Services, Inc.?

13     A    Currently, they are to oversee all of the

14 direct actions naming American Safety entities.  They

15 are to work with the underwriting department in various

16 ways and to oversee the coverage opinions authored by

17 the San Diego office and assist the Atlanta office when

18 requested.

19         MR. DION:  Could you repeat that back for me,

20 please.

21         (Record read.)

22 BY MR. DION:

23     Q    Let's go to the first part.  With respect to

24 overseeing direct actions against American Safety

25 entities, what specifically do you do with respect to

1 the oversight of direct actions?

2      A    When any American Safety entity, whether it be

3 American Safety Risk Retention Group, American Safety

4 Indemnity Company, American Safety Casualty Insurance

5 Company or American Safety Insurance Services, are named

6 in a lawsuit, it is brought to my attention.  And I am

7 charged with retaining counsel and overseeing the

8 handling of that lawsuit.

9      Q    Okay.  How about the claims handling where you

10 have a tender, do you also receive the responses to

11 tenders made with respect to American Safety entities?

12           MR. LARIN:  With respect to tenders, you are

13 speaking about additional insured issues.

14           MR. DION:  Actually, it would be tenders under

15 any of the policies issued by American Safety.

16           THE WITNESS:  In regard to construction defect

17 claims or any matters handled by the San Diego office, I

18 review all declinations that go out.  So to the extent

19 that I have that role, I am involved in the handling of

20 the claim.  To the extent they are covered claims, I

21 don't necessarily get involved in the handling of the

22 covered claims.

23 BY MR. DION:

24      Q    Okay.  Do you also, with respect to

25 declinations -- and that is a good point.  We could

1          MR. LARIN:  Vague and ambiguous.

2          MR. DION:  I can restate it.

3      Q   What I'm asking you is, in the course of this

4  two-and-a-half years of litigation, have you continued

5  the process of evaluating the claim to determine whether

6  or not there might be a potential for coverage?

7          MR. LARIN:  Same objection.

8          THE WITNESS:  Yes.

9  BY MR. DION:

10      Q   And is there anything that has come to light,

11  in your mind, that would cause you to believe that there

12  might be potential coverage under either of the policies

13  issued to Bay Area?

14      A   No.

15      Q   So as you sit here today, you still believe

16  that there is no coverage under both policies issued to

17  Bay Area; correct?

18      A   Correct.

19      Q   And that position has remained the same

20  irrespective of any information that has been provided

21  to you during the course of this litigation; correct?

22      A   Correct.

23      Q   All right.  Do you have a custom and practice

24  with respect to evaluating claims where an insured,

25  perhaps, doesn't name a right policy but you believe

1 there is coverage under that policy?  Is there anything

2 that you would do typically in that kind of a

3 situation?

4        A    Yes.

5        Q    What is your typical practice in that type of a

6 situation?

7        A    I typically evaluate coverage under all of the

8 policies.

9        Q    And, in fact, you did that in this case with

10 respect to Bay Area; correct?

11       A    Yes.

12       Q    Now, I think you have referred to both American

13 Safety Risk Retention Group and American Indemnity

14 Company as American Safety entities; is that correct?

15       A    Well, to the extent they all begin with

16 American Safety, yes.  And to the extent I may have

17 misspoken, said us, when I'm really employed by American

18 Safety Insurance Services, yes.

19       Q    What I was referring to is, you said you

20 oversee direct actions against American Safety

21 entities.  You are charged with overseeing actions as it

22 relates to both American Safety Risk Retention Group and

23 American Safety Indemnity; correct?

24       A    Correct.

25       Q    And a few other American Safety companies;

1 there is coverage under that policy?  Is there anything

2 that you would do typically in that kind of a

3 situation?

4      A    Yes.

5      Q    What is your typical practice in that type of a

6 situation?

7      A    I typically evaluate coverage under all of the

8 policies.

9      Q    And, in fact, you did that in this case with

10 respect to Bay Area; correct?

11      A    Yes.

12      Q    Now, I think you have referred to both American

13 Safety Risk Retention Group and American Indemnity

14 Company as American Safety entities; is that correct?

15      A    Well, to the extent they all begin with

16 American Safety, yes.  And to the extent I may have

17 misspoken, said us, when I'm really employed by American

18 Safety Insurance Services, yes.

19      Q    What I was referring to is, you said you

20 oversee direct actions against American Safety

21 entities.  You are charged with overseeing actions as it

22 relates to both American Safety Risk Retention Group and

23 American Safety Indemnity; correct?

24      A    Correct.

25      Q    And a few other American Safety companies;

1          (Instruction not to answer.)

2 BY MR. DION:

3     Q    By the way --

4     A    Can I clarify one thing for the record for

5 you.

6     Q    Sure.

7     A    I am employed by American Safety Insurance

8 Services.  And so in that capacity, I have to look at

9 coverage under both insureds' policies.

10    Q    That is what I understand.

11    A    At this point you only sued American Safety

12 Risk Retention Group.  So what American Safety Insurance

13 Services, who is also not a party, does on behalf of

14 American Safety Indemnity Company is not an issue in

15 this case right now.  Though, you are asking questions

16 about it where I have done these things.  But I did not

17 do them on behalf of American Safety Risk Retention

18 Group.

19         MR. LARIN:  The objection is it is immaterial.

20 I learned that from law school.

21         MR. DION:  Just so I understand, Counsel, you

22 are going to instruct her similarly with respect to all

23 questions regarding her evaluation of the indemnity

24 company policy; correct?

25         MR. LARIN:  That would be correct.  And I will

1 consideration by American Safety Insurance Services

2 regarding the potential coverage that might be afforded

3 under the policy issued by American Safety Indemnity

4 Company to Bay Area?

5      A    Yes.

6      Q    Okay.  And do you recall when those discussions

7 or that discussion first occurred?

8      A    I'm sorry.  There was no discussions.  You said

9 whether it was contemplated.  I have personally

10 contemplated all coverage since Bay Area had sued our

11 company or sued American Safety Risk Retention Group.  I

12 considered whether American Safety Indemnity Company

13 could have been added to that lawsuit.  And so it was

14 contemplated.  It was not discussed.  I have not

15 discussed this matter with anybody.

16      Q    Okay.  So you never forwarded any request to

17 anyone at American Safety where they consider whether or

18 not there might be potential coverage under the

19 indemnity policy issued to Bay Area?

20      A    There would be no one to send the request to.

21      Q    That would be a decision made by you?

22      A    Correct.

23      Q    And you were never advised, were you, by anyone

24 that a tender had been made with respect to the second

25 policy, the American Safety Indemnity policy; is that

1 exchange of correspondence, was the third-party

2 administrator for American Safety -- American Safety

3 Insurance Services with respect to American Safety

4 policies?

5     A   Yes.

6     Q   You will notice that Exhibit 3, the cc is

7 addressed to Mr. Harland Newby.

8     A   Yes.

9     Q   Breckenridge and Associates, to your

10 understanding, never responded to any tender under the

11 American Indemnity policy; correct?

12     A   I don't recall.

13     Q   Well, you have indicated that you contemplated

14 but don't recall having any discussions with anyone

15 about a tender under the American Indemnity policy;

16 correct?

17     A   No.  That misstates my testimony.

18     Q   Okay.  Let's clarify that.  I want to make sure

19 I understand.  You did indicate that you contemplated

20 whether or not there was coverage under the American

21 Indemnity policy; correct?

22     A   Correct.

23     Q   And I thought you indicated that you had no

24 discussions about your contemplations with anyone;

25 correct?

1 you have been sued but whether you believe that there

2 has been a -- or that Bay Area or Acceptance or anyone

3 related to the policies are seeking coverage at any

4 point in time under the indemnity policy.  Did you at

5 any point in time conclude that?

6     A    No, I did not.

7     Q    So you have never made an evaluation then --

8 well, let's take, despite the fact that you apparently

9 are not aware of any tender or any pursuit of such a

10 claim under the indemnity policy, did you at any point

11 in time evaluate whether or not there might be coverage

12 under the indemnity policy?

13     A    Yes.

14     Q    When did you first do that?

15     A    When I got the file.

16     Q    And that was how long ago?  Two-and-a-half

17 years?

18     A    Yes.

19     Q    So at that point you made an evaluation under

20 the indemnity policy, and you made certain conclusions;

21 correct?

22     A    Yes.

23     Q    Have you continued to evaluate to determine

24 whether or not there might be coverage under either of

25 the policies?

1  client's previous tender in this matter.

2          If such a letter had been received, American

3  Safety would have forwarded that on to Breckenridge?

4      A    Correct.  Or a copy.

5      Q    Now, I think we have an understanding that

6  Breckenridge had at least a file open with respect to

7  the first policy issued by American Safety Risk

8  Retention Group; correct?

9      A    American Safety had opened a file as to

10  American Safety Risk Retention Group.

11      Q    American Safety.  And you are referring to

12  Services, Inc.

13      A    Well, there is a file opened, but it is in

14  regards to the American Safety Risk Retention Group

15  policy which is what the tender had been directed to.

16      Q    And what my question really is designed to find

17  out is how American Safety, the program manager, would

18  address a situation where a letter comes in, ambiguous

19  perhaps, as to which policy, in effect, potentially

20  triggers all policies -- how American Safety would deal

21  with that when they already have a file open with

22  respect to one policy issued by American Safety Risk

23  Retention Group.

24          Would they, in the normal course of operations,

25  have first evaluated to determine whether there were

1 other policies issued to Bay Area?  How is it handled?

2          And we will refer to Exhibit 3, where it

3 clearly -- the policies aren't stated or specified.

4 Just the tender is made.

5     A    Right.  But recognize that the declination had

6 already been issued --

7     Q    Right.

8     A    -- to Bay Area indicating that the American

9 Safety Risk Retention Group policy was not going to

10 apply which thus means the American Safety Indemnity

11 Company policy is not going to be applicable either.

12     Q    Okay.

13     A    But had it been applicable, then we open a

14 separate claim file if there is coverage under a policy.

15     Q    So if it isn't applicable, then you would have

16 not opened another file?

17     A    Correct.

18     Q    And just would have dealt with matters under

19 the original file?

20     A    Correct.

21     Q    And so with respect to Exhibits 3 and 4, in the

22 normal course of the transaction of business dealings,

23 Breckenridge would have been with authority to issue or

24 reaffirm the declination as to any and all policies

25 issued to Bay Area under the file that was opened in

1  you have been sued but whether you believe that there

2  has been a -- or that Bay Area or Acceptance or anyone

3  related to the policies are seeking coverage at any

4  point in time under the indemnity policy.  Did you at

5  any point in time conclude that?

6      A    No, I did not.

7      Q    So you have never made an evaluation then --

8  well, let's take, despite the fact that you apparently

9  are not aware of any tender or any pursuit of such a

10  claim under the indemnity policy, did you at any point

11  in time evaluate whether or not there might be coverage

12  under the indemnity policy?

13      A    Yes.

14      Q    When did you first do that?

15      A    When I got the file.

16      Q    And that was how long ago?  Two-and-a-half

17  years?

18      A    Yes.

19      Q    So at that point you made an evaluation under

20  the indemnity policy, and you made certain conclusions;

21  correct?

22      A    Yes.

23      Q    Have you continued to evaluate to determine

24  whether or not there might be coverage under either of

25  the policies?

1          MR. LARIN:  Vague and ambiguous.

2          MR. DION:  I can restate it.

3     Q    What I'm asking you is, in the course of this

4 two-and-a-half years of litigation, have you continued

5 the process of evaluating the claim to determine whether

6 or not there might be a potential for coverage?

7          MR. LARIN:  Same objection.

8          THE WITNESS:  Yes.

9 BY MR. DION:

10     Q    And is there anything that has come to light,

11 in your mind, that would cause you to believe that there

12 might be potential coverage under either of the policies

13 issued to Bay Area?

14     A    No.

15     Q    So as you sit here today, you still believe

16 that there is no coverage under both policies issued to

17 Bay Area; correct?

18     A    Correct.

19     Q    And that position has remained the same

20 irrespective of any information that has been provided

21 to you during the course of this litigation; correct?

22     A    Correct.

23     Q    All right.  Do you have a custom and practice

24 with respect to evaluating claims where an insured,

25 perhaps, doesn't name a right policy but you believe

1 endorsements as well?

2      A    Yes.

3      Q    And just to kind of nail this down, it was

4 effective for the policy period August 15, 2000 through

5 October 1st, 2001; correct?

6      A    Correct.

7      Q    Are you familiar with any differences between

8 the policy that you have in front of you, the 2000, 2001

9 policy, and the subsequent policy issued by American

10 Safety Indemnity Company?

11           And by that, differences, I mean significant

12 differences in either the insuring agreement language

13 and/or any endorsements or definitions or other

14 provisions that you think may have some application in

15 this case?

16      A    Can I take a look at it.

17      Q    Sure.  I'm not trying to make this a test.  And

18 we can narrow it a little bit further.

19           Obviously, that is an evaluation of this

20 Portola matter with respect to both policies.  And I

21 guess what I'm looking for is, in the course of that

22 evaluation of whether there is coverage under either of

23 these policies, is there any significance of either

24 policy that is different from one policy to the other in

25 your evaluation?

1    A    As to the named insured, no.

2    Q    How about as to additional insureds?

3    A    Yes.

4    Q    What differences are there with respect to the

5  two policies that you have noted in your previous

6  evaluation?

7    A    They are completely different endorsements.

8    Q    Okay.  And do those endorsements have

9  significance with respect to your evaluation as it

10 relates to the Portola action?

11   A    No.

12   Q    So with respect to your evaluation of claims,

13 as it relates to the Portola action, is it correct to

14 state that the two policies, one issued by American

15 Safety Risk Retention and the other issued by American

16 Safety Indemnity Company, were essentially the same?

17   A    Well, they cover different policy periods.

18   Q    I absolutely understand.

19        My question more is in the nature of coverage

20 beyond the policy periods.

21   A    Well, that is very, very germane to our

22 policy.  So --

23   Q    Let's do it another way.  I was hoping to kind

24 of short circuit a little bit.  I think I know where you

25 are going, but that is fine.

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within entitled action; my business address is 3460 Wilshire Blvd., 8th Floor, Los Angeles, California 90010.

    On January 7, 2008 I caused to be served the foregoing document described as: **NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND COMPLAINT TO NAME AMERICAN SAFETY INDEMNITY COMPANY AS DOE 1; SUPPORTING DECLARATION OF PERRY E. RHOADS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF,** on the interested parties as follows:

Matthew P. Harrison, Esq.
**LYNBERG & WATKINS**
888 South Figueroa Street, 16th Floor
Los Angeles, CA 90017
(213) 624-8700
(213) 892-2763 Fax

[X]   **(BY MAIL)** By placing [ ] **the original** [X] **a true copy** thereof enclosed in a sealed envelope(s) addressed as to the above-named counsel of record or parties in propria persona. I deposited such envelope in the mail at Los Angeles, California, with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   **(BY FACSIMILE)** I caused said document, along with a signed copy of this Declaration, to be transmitted to a facsimile machine telephone number as last given by said counsel or party in propria persona as noted above.

[X]   **(STATE)** I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.

Dated: January 7, 2008

_Maria Didia_
Maria Didia

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

# EXHIBIT 2

1   DANA ALDEN FOX, State Bar #119761
    MICHAEL J. LARIN, State Bar #77116
2   LYNBERG & WATKINS
    A Professional Corporation
3   888 South Figueroa Street, 16th Floor
    Los Angeles, California  90017-5449
4   Phone:  (213) 624-8700
    Facsimile: (213) 892-2763
5

6   Attorneys for Defendant, AMERICAN SAFETY RISK RETENTION GROUP

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       FOR THE COUNTY OF LOS ANGELES

10

11  ACCEPTANCE INSURANCE COMPANY, )        Case No. BC 352725
                                  )
12              Plaintiff,        )        [Assigned to Hon. Malcolm H. Mackey,
                                  )        Dept. 55]
13          v.                    )
                                  )
14  AMERICAN SAFETY RISK RETENTION )       **DATE:  January 31, 2008**
    GROUP, INC., and DOES 1 through100,  ) **TIME:   8:30 a.m.**
15  Inclusively,                  )        **DEPT:  55**
                                  )
16              Defendants.       )        **OPPOSITION TO PLAINTIFF'S**
                                  )        **MOTION FOR LEAVE TO AMEND**
17                                )        **COMPLAINT TO NAME AMERICAN**
                                  )        **SAFETY INDEMNITY COMPANY AS**
18                                )        **DOE 1; MEMORANDUM OF POINTS**
                                  )        **AND AUTHORITIES; DECLARATION**
19                                )        **OF JEAN FISHER; AND EXHIBITS**
                                  )
20                                )
                                  )        **Trial: March 17, 2008**
21  _____)        Complaint filed: 5/22/06

22

23        TO THIS HONORABLE COURT, AND TO ALL PARTIES HEREIN AND THEIR

24  COUNSEL OF RECORD:

25  / / /

26  / / /

27  / / /

28  / / /

1    <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2    American Safety Risk Retention Group ("ASSRG") opposes Acceptance Insurance

3    Company's last minute effort to add an American Safety Indemnity Company ("ASIC"), a

4    separate, unrelated corporation into this lawsuit. While completely separate and unrelated

5    corporations, ASSRG files this Opposition in light of the misleading statements made in the

6    motion. ASSRG points out (1) Acceptance has been aware of policies issued by two separate

7    companies; (2) the addition of a separate corporation is not a mere "clerical error"; (3) this is not

8    the first time that counsel has mixed up the American Safety entities; (4) the claim is time barred

9    as to American Safety Indemnity Company; and (5) a last minute addition of a party would be

10   prejudicial and confusing.

11

12   I.   <u>THE COURT SHOULD NOT PERMIT ACCEPTANCE INSURANCE COMPANY</u>

13        <u>TO ADD AN UNRELATED AMERICAN SAFETY INDEMNITY COMPANY TO</u>

14        <u>THIS ACTION WHEN THE CLAIM IS TIME BARRED AND ITS POLICY IS</u>

15        <u>NOT APPLICABLE TO THE UNDERLYING LOSS.</u>

16

17   A.   ACCEPTANCE HAS BEEN AWARE OF POLICIES ISSUED BY TWO

18        SEPARATE COMPANIES.

19        Acceptance Insurance Company cannot claim ignorance of the policy issued by ASIC as

20   it possessed it and even attached it to the Complaint. Comparing Exhibit A and Exhibit B, it is

21   quite apparent from the first page that one policy was issued by ASRRG and one policy is issued

22   by ASIC. Consequently, Acceptance cannot simply "DOE" in ASIC to this action under Code of

23   Civil Procedure section 474. Plaintiff cannot claim ignorance of the identity of ASIC since it

24   had the policies before the suit. Acceptance cannot rely on Code of Civil Procedure section 474

25   to claim a relation back to the date of filing of the original complaint. Code of Civil Procedure

26   section 474 permits that procedure when "the plaintiff is ignorant of the name of a defendant. . .

27   "Under section 474, "the lack of knowledge of the true name of the defendant must be real and

28   not feigned." *Snoke v. Bolen* (1991) 235 Cal.App.3d. 1427, 1432; *Munoz v. Purdy* (1979) 91

1    Cal.App.3d. 942, 947. In *Snoke v. Bolen* (1991) 235 Cal.App.3d. 1430, a defendant was granted

2    summary judgment on the ground that plaintiff's action against him was barred by the statute of

3    limitations and that the substitution of him for Doe 1 was improper. When the plaintiff in *Snoke*

4    timely filed the original complaint against one doctor, she knew another doctor had performed

5    dental work during the period of time in which she was injured. The plaintiff tried to amend her

6    complaint after the statute of limitations had run to add the second doctor as a "Doe" defendant.

7    The "Doe" defendant argued that knowledge of the facts about the surgery was sufficient

8    knowledge of his identity at the time the original complaint was filed and, therefore he could not

9    be substituted for a "Doe" after the statute of limitations had expired. On appeal, the court

10    agreed that summary judgment was properly granted. *Id.* at 495.

11         In this case, Acceptance cannot claim it did not know who issued subsequent coverage to

12    mutual insured Bay Area Construction since Acceptance actually possessed the ASIC policy. It

13    would be disingenuous for Acceptance to claim that it, as an insurance company, did not

14    recognize two separate companies issued the policies. Further, correspondence written to

15    Acceptance's counsel previously, and clearly, set forth the information pertaining to the issuance

16    of the policies. (See Declaration of Jean Fisher and Exhibit 1 thereto.)

17         Thus, this motion does not concern simply the ability of Acceptance to add ASIC as a

18    Doe defendant when all Doe defendants have previously been dismissed by the court. This is an

19    improper attempt to strategically try to add a new and totally different insurance company to the

20    case at the last minute and in violation of the Code of Civil Procedure. The disregard of Code of

21    Civil Procedure is highlighted by Acceptance's motion for summary judgment which has been

22    filed and actually seeks to adjudicate claims against ASIC which is not yet before the Court even

23    though section 437c(a) specifically restricts the timing of making such a motion against a party to

24    "any time after 60 days have elapsed since the general appearance in the action or proceeding of

25    each party against whom the motion is directed." Here, ASIC has not made a general appearance

26    and yet a motion seeking an adjudication of Acceptance's claims has been filed. [The court

27    should actually strike the motion or such argument, pursuant to section 436 as improper and not

28    filed in conformity with the laws of this state.]

**B.    THE ADDITION OF A SEPARATE CORPORATION IS NOT A MERE**
**"CLERICAL ERROR."**

ASRRG and ASIC are separate, unrelated corporations. (Declaration of Jean Fisher filed herewith.) As such, they must be separately named in the caption, separately identified in the complaint; Acceptance would have had to pay for two separate filing fees, issue a separate Summons and individually serve the two separate corporations. Pursuant to various sections of the Code of Civil Procedure, deliberate steps must be taken to identify, name, issue Summons and serve a party in an action. (See CCP section 412.10, 412.20, et. seq.) These steps were obviously not taken by counsel.

Acceptance and its counsel cannot now claim a "clerical mistake" occurred back in May 22, 2006 when Andrew Morrow & Perry Rhoads (as counsel on the caption) signed and filed a Complaint that listed only ASSRG and identified only "AMERICAN SAFETY RISK RETENTION GROUP" in the caption, introductory paragraph on page 1, and never referenced American Safety Indemnity Company by name. It is equally inappropriate for Acceptance to pay only a single filing fee, issue a single Summons for only ASRRG and then receive responsive pleadings from only one entity, and now over a year later, seek to add ASIC to this action under an argument of mistake (which under section 473 must be made within six months).

Because ASRRG and ASIC are separate, unrelated corporation, it is improper for counsel to assert that ASIC is already participating in the case. Ms. Fisher works for American Safety Insurance Services, who contracts with ASRRG and ASIC and acts as their Program Manager. (Declaration of Jean Fisher.) However, ASIC has not been served in this case and has not retained any counsel in this matter and there is no claim file set up related to this action. While ASIS may have evaluated coverage under the policies of both ASRRG and ASIC and made coverage determinations as to each, **ASIC has not been participating and has not retained counsel, and Ms. Fisher specifically felt uncomfortable answering any questions pertaining to ASIC in her deposition (noticed as ASRRG's person most knowledgeable) as ASIC was not a party and defense counsel had not been retained to represent ASIC.** (See Declaration of Jean Fisher and relevant pages of her deposition attached as Exhibit 2, in which objections

1  were asserted to questions about ASIC's policy as it was not a party or represented.)

2

3      **C.     THIS IS NOT THE FIRST TIME THAT COUNSEL LACKED DUE**

4              **DILIGENCE IN FILING AGAINST AMERICAN SAFETY ENTITIES IN**

5              **REGARD TO THE *PORTOLA MEADOW* CLAIM.**

6          The inappropriateness of this belated motion is highlighted by the same counsel's

7  problems with identifying and serving ASRRG in a related matter that was initially filed in the

8  name of Bay Area Construction to recover the same fees and costs.  That action was eventually

9  dismissed when it became apparent that the insured had no damages since Acceptance had paid

10 the fees and was the real party in interest.  In that action, the same counsel and firm filed an

11 action against "American Safety Insurance Company" (a nonexistent entity) but served American

12 Safety Casualty Insurance Company, another company (ASCIC).  ASCIC filed a motion to

13 quash.

14         As part of that motion, the role of American Safety Insurance Services was set forth and

15 explained as the program manager.  (See Exhibit 3.) Moreover, the court granted the motion,

16 instructing Mr. Rhoads, the very same counsel: "that there is no relationship between the

17 defendant that you named and the defendant who's appearing here today, you're going to have to

18 do your homework and sue the right defendant."  (Exhibit 3 to Declaration of Jean Fisher.)

19 Notwithstanding that admonishment, counsel thereafter filed a complaint in that action which

20 named **only ASRRG** and discovery involved only ASRRG until it was dismissed.  This action

21 has similarly involved only ASRRG.

22

23     **D.     THE CLAIM IS TIME BARRED AS TO AMERICAN SAFETY**

24             **INDEMNITY COMPANY WHO WOULD BE PREJUDICED BY THIS**

25             **MOTION TO AMEND.**

26         This motion is not timely made as the deadlines for discovery and motions have come and

27 gone, and both parties have pending motions for summary judgment pending before the court.  If

28 the court permitted leave to amend and allowed ASIC to be added to this matter, ASIC would be

1   deprived of its right to assert meritorious defenses based on the statute of limitation as well as to

2   assert an exclusion in the ASIC policy, similar to the ASRRG policy.

3        The underlying action involving Bay Area Construction and its framing work on the

4   Portola Meadow project commenced with a Legal Proceeding in May 1999, before the ASRRG

5   and ASIC policies incepted. The association and various homeowner plaintiffs filed suit and Bay

6   Area Construction was named as a party **before** the ASIC policy was issued. (See Acceptance's

7   Complaint describing *Portola Meadow* Complaint filed 4/10/01.) Exhibit B to Acceptance's

8   motion and complaint shows the ASIC policy incepted sixth months later. As the court can see,

9   Exhibit B contains an exclusion for any suit filed before its inception as prescribed in form 98 08

10  08 99, and thus, ASIC never had a duty to defend Bay Area Construction or pay the settlement

11  which Acceptance paid in 2004.

12       Furthermore, it is also clear that this belated addition of ASIC to this matter in 2008 is

13  time barred by the statute of limitation. The applicable statute of limitations for Acceptance's

14  contribution action against ASIC is two years per Code of Civil Procedure section 339 and

15  *Century Indemnity v. Superior Court* (1996) 50 Cal.App.4th 1115. More than two years have

16  past since Acceptance paid for the defense and settlement of the *Portola Meadow* lawsuit and

17  Acceptance cannot have the benefit of 474 for an unknown defendant. Thus, this court should

18  reject the arguments that adding ASIC to this action will have an minimal impact, as ASIC would

19  be entitled to its own discovery and motions and be severely prejudiced by the current cutoff

20  dates which have already passed. [In fact, the motion deadline for this motion of Acceptance had

21  passed.]

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1      In conclusion, it is submitted that the legal basis to apply CCP Section 474 does not exist.

2  Moreover, good cause for the Court to exercise its discretion to grant the relief requested is

3  absent.  Based on the foregoing, it is respectfully requested that Acceptance's motion be denied.

4

5  DATED: January 17, 2008

6                              LYNBERG & WATKINS
                               A Professional Corporation

7

8                        By: _____

9                           MICHAEL J. LARIN
                          Attorneys for Defendant, AMERICAN RISK
                          RETENTION GROUP

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF JEAN FISHER

I, Jean Fisher, declare as follows:

1.      I make this declaration in support of American Safety Risk Retention Group's ("ASRRG") Opposition for leave to amend the complaint to add American Safety Indemnity Company ("ASIC") as a defendant. The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

2.      I am a resident of the State of California, a licensed attorney in the State of California and am employed as an attorney responsible for overseeing lawsuits filed against American Safety entities. ASRRG is administered and managed by American Safety Insurance Services (ASIS). ASIC is administered and managed by American Safety Insurance Services (ASIS). However, ASRRG and ASIC are separate, unrelated corporations. ASRRG was incorporated in Vermont and is a risk retention group which means that its shareholder members are actually made up of the insureds, including Bay Area Construction. In contrast, ASIC is an Oklahoma corporation and is a subsidiary of a publicly traded company, American Safety Insurance Holdings, Ltd., to which ASIS is also a subsidiary. ASRRG is not a subsidiary entity, and is not related to ASIC.

3.      In my employment with ASIS, I have served as a CD Claims Manager and also Corporate Claims Counsel. In these capacities, I have reviewed the underwriting file of Bay Area Construction Framers ("Bay Area Construction") including the policies issued by both ASRRG and ASIC, and I have handled and overseen tenders and claims involving Bay Area Construction. As Corporate Claims Counsel, I oversaw a prior lawsuit brought by Bay Area Construction related to a project known as Portola Meadows.  This claim by Acceptance involves the defense fees and costs, as well as indemnity, that it incurred in 2002 to 2004 for Bay Area Construction. Prior to this lawsuit filed by Acceptance, I have previously overseen the handling of tenders, claims and lawsuits involving ASRRG's insured, Bay Area Construction. In my employment, I review and approve declination of coverage letters written to Bay Area Construction by ASIS as program manager for both ASRRG and ASIC. Thus, it is common that I review the policies issued to Bay Area Construction and generally know their content.

1    4.    In this case, Acceptance cannot claim it did not know who issued subsequent

2  coverage to mutual insured Bay Area Construction since Acceptance actually possessed the ASIC

3  policy.  It would be unbelievable to me for Acceptance to claim that it, as an insurance company,

4  did not recognize that two separate companies issued the policies, because it has done business

5  with American Safety entities for years and actually visited counsel and officer actually visited

6  our home office years ago.  Further, correspondence written to Acceptance's counsel previously,

7  and clearly, set forth the information pertaining to the issuance of the policies.  On May 2, 2007,

8  I sent a letter to other counsel for Acceptance in another claim and my letter clearly set forth the

9  policies of ASRRG and ASIC.  A true and correct copy of the letter is attached hereto as Exhibit

10  1.

11    5.    ASIC has not been served in this case and has not retained any counsel in this

12  matter as it would be my role to retain counsel for ASIC as its program manager. As no suit

13  names ASIC, there is no claim file set up related to this action.  While I, in my role with ASIS,

14  may have evaluated coverage under the policies of both ASRRG and ASIC and made coverage

15  determinations as to each, ASIC has not been participating and has not retained counsel.  During

16  my deposition, we objected to questioning regarding the ASIC policy.  I was not comfortable

17  answering any questions pertaining to ASIC as ASIC was not a party and defense counsel had not

18  been retained to represent ASIC.  True and correct copies of pertinent pages of my deposition are

19  attached as Exhibit 2.

20    6.    The inappropriateness of this belated motion is highlighted by the same counsel's

21  problems with identifying and serving ASRRG in a related matter that was initially filed in the

22  name of Bay Area Construction to recover the same fees and costs.  That action was eventually

23  dismissed when it became apparent that the insured had no damages since Acceptance had paid

24  the fees and was the real party in interest.  In that action, the same counsel and firm filed an

25  action against "American Safety Insurance Company" (a nonexistent entity) but served American

26  Safety Casualty Insurance Company, which is another, separate company (ASCIC).  ASCIC filed

27  a motion to quash.

28

1    7.    As part of that motion, the role of American Safety Insurance Services was set

2    forth and explained as the program manager.  The court granted the motion, instructing Mr.

3    Rhoads, the very same counsel: "that there is no relationship between the defendant that you

4    named and the defendant who's appearing here today, you're going to have to do your homework

5    and sue the right defendant."  A true and correct copy of the Reporters Transcript for the hearing

6    of 9/9/04 is attached hereto as Exhibit 3.  Thereafter, counsel named **only ASRRG** and discovery

7    involved only ASRRG until it was dismissed.  This action has similarly involved only ASRRG.

8    8.    This motion is not timely made as the deadlines for discovery and motions have

9    come and gone, and both parties have pending motions for summary judgment pending before

10    the court.  If the court permitted leave to amend and allowed ASIC to be added to this matter,

11    ASIC would be deprived of its right to assert meritorious defenses based on the statute of

12    limitation as well as to assert an exclusion in the ASIC policy, similar to the ASRRG policy.

13    9.    The underlying action involving Bay Area Construction and its framing work on

14    the Portola Meadow project commenced with a Legal Proceeding in May 1999, before the

15    ASRRG and ASIC policies incepted.  The association and various homeowner plaintiffs filed suit

16    and Bay Area Construction was named as a party **before** the ASIC policy was issued.  The

17    *Portola Meadow* Complaint was filed 4/10/01.  Exhibit B to Acceptance's motion and complaint

18    shows the ASIC policy incepted sixth months later.  As the Court can see, Exhibit B contains an

19    exclusion for any suit filed before its inception as prescribed in form 98 08 08 99, and thus, ASIC

20    never had a duty to defend Bay Area Construction or pay the settlement which Acceptance paid

21    in 2004.

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

10.    Furthermore, it is also clear that this belated addition of ASIC to this matter in 2008 is time barred by the statute of limitations. The applicable statute of limitations for Acceptance's contribution action against ASIC is two years per Code of Civil Procedure section 339 and *Century Indemnity v. Superior Court* (1996) 50 Cal.App.4th 1115. More than two years have passed since Acceptance paid for the defense and settlement of the *Portola Meadow* lawsuit and Acceptance cannot have the benefit of Section 474 for an unknown defendant. Thus, this court should reject the arguments that adding ASIC to this action will have an minimal impact, as ASIC would be entitled to its own discovery and motions and be severely prejudiced by the current cutoff dates which have already passed.

I declare under penalty of perjury that the foregoing is true and correct under the laws of California. Executed this _17th_ day of January 2008 at San Diego, California.

Jean Fisher

Declaration of Jean Fisher in Support of ASRRG's Motion – Page 5

**ASI**
AMERICAN SAFETY INSURANCE

American Safety Insurance
Services, Inc.

In California a/b/a
ASIG Insurance Services

Suite #166
11440 West Bernardo Court
San Diego, CA 92127

Toll Free: 866.642.1149
Tel:        858.716.2200
Fax:       858.716.2201

www.americansafetyinsurance.com

May 2, 2007

Thomas A. Foster, Esq.
Marrone, Robinson, Frederick & Foster
111 North First Street, Suite 300
Burbank, CA  91502-1851

RE:    <u>George Aurelio, et al v. A.F. Evans Comp[any, Inc., et al</u>
       San Mateo County Superior Court Case No. CIV443674
Insured:        Bay Area Construction Framers, Inc.
Policy No.:     XGI 00-1826-001 (8/15/00 to 10/1/01)
Policy No.:     XGI 01-1826-002 (10/1/01 to 10/1/02)
Policy No.:     XGI 02-1826-003 (10/1/02 to 10/1/03)
Policy No.:     XGI 03-1826-004 (10/1/03 to 10/1/04)
Policy No.:     XGI 04-1826-005 (10/1/04 to 10/1/05)
ASIS Claim No:  010822
Your Client:    Acceptance Insurance Company
Your File No.:  ACC-3422

Dear Mr. Foster:

American Safety Insurance Services ("ASIS") is the Program Manager for American Safety Risk Retention Group ("ASRRG") and American Safety Indemnity Company ("ASIC") in regard to the above-captioned matter.  Lynne Bergmann is the file handler of the Bay Area Construction account and we acknowledge receipt of your re-tender for defense and indemnity on behalf of your client, Acceptance Insurance Company.

This letter will supplement Ms. Bergmann's email to you of April 4, 2007 and provide you with our formal response in regards to your re-tender letter dated March 21, 2007 to CRMI.  We requested that you provide us with any additional information and/or documentation for our re-consideration that may impact the American Safety's coverage position.  We never received a response and as such our coverage position is based upon the documents contained in the file.

This letter is to inform you that our review of the file materials reveals that there is no coverage for this claim under the above referenced ASSRG and ASIC policies.  As previously stated in my email to you of April 4, 2007; the "Amended Definition of Occurrence" and "Pre-Existing Injury Exclusion" were added to the policy in order to bar coverage for continuous and progressive losses.  The language addresses the holdings of the Montrose decision and is similar to language recently analyzed in USF Insurance v. Claredon.  The Company's intent was to limit coverage to an insured only for their work that was completed during the policy and to which damage first occurs.  The insured's premiums are based upon the work that that they do during the policy and does not provide coverage for work that the insured completed prior to the inception of the policy.  You also take exception with ASI's "Other

ASI
NYSE

EXHIBIT 1

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 2 of 12

Insurance" language, which clearly states that the ASI policies are excess over any other insurance that is valid and collectible insurance available to the insured. In this instance, Acceptance insured Bay Area Construction Framers, Inc. from September, 1993 through August, 2000 and therefore was on the risk during and subsequent to the completion of the insured's work on the project. While ASI can certainly rely on the language contained in the "Other Insurance Clause" in part to deny coverage, the primary reason for the denial is based upon the "Amended Definition of Occurrence" and "Pre-Existing Injury Exclusion".

On behalf of ASSRG and ASIC, we are reaffirming our denial of coverage as set forth below.

Background Facts

It is our understanding that this is a construction defect case involving approximately 50 single-family homes in the Bay Ridge subdivision located in Daly City, CA.

Plaintiffs' file a Complaint on December 13, 2004 in San Mateo County Superior Court Case No. CIV443674 against A.F. Evans Company, Inc.; A.F. Development, Inc. Bay Ridge Daly City, LP; and Bay Ridge Associates for Strict Liability; Breach of Implied Warranty; Breach of Express Warranty; Breach of Contract and Negligence. The Andrade, et al; Fontanilla, et al; Acena, et al were consolidated with the Aurelio case. It is also our understanding that there is another action entitled, Quiles, which includes one home with a possibility of two additional homes being added. We do not have any information regarding the Quiles, et al homes and whether the action was consolidated with the Aurelio matter. Therefore, our analysis will be based upon the Aurelio, et al v. A.F. Evans Company, Inc. matter and the three other cases that were consolidated with the Aurelio, et al matter.

A.F. Evans Company, Inc. filed a Cross Complaint against the subcontractors on April 12, 2005 for Total Equitable Indemnity; Comparative Indemnity and Contribution; Negligence; Breach of Implied Warranty; Breach of Express Warranty; Express Contractual Indemnity; Breach of Contract; and Declaratory Relief.

Bay Ridge Associations entered into a contract with Bay Area Construction Framers, Inc. on or about June 4, 1994 to perform the rough carpentry work on the project to include the installation of the siding, trim and windows. There are various addendums to the contract for Phase 1, Releases 2 through 7 of the Bay Ridge subdivision.

A review of the homeowners' matrix indicates that the subject homes have notice of completion dates ranging from 5/11/95 to 12/15/98 and original close of escrow dates ranging from 5/12/95 to 12/31/98, which is prior to the inception of the ASI policies.

The following is a summary of American Safety Insurance Service's analysis and evaluation as it relates to coverage under the terms, conditions and/or provisions of Bay Area Construction Framers, Inc.'s policies as it relates to the subject claim.

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 3 of 12

<u>ASRRG Policy</u>

ASRRG afforded a Commercial General Liability policy to Bay Area Construction Framers, Inc. under policy XGI 00-1826-001, effective August 15, 2000 to October 1, 2001, provides coverage of $1 million per Occurrence Limit and a $2 million Products/Completed Operations Aggregate Limit subject to a $10,000 per occurrence Self-Insured Retention ("SIR"). ASRRG denies coverage under this policy.

<u>ASIC Policies</u>

ASIC afforded Commercial General Liability policies to Bay Area Construction Framers, Inc. as follows.

Policy number XGI 01-1826-001, effective October 1, 2001 to October 1, 2002, provides coverage of $1 million per Occurrence Limit and a $1 million Products/Completed Operations Aggregate subject to a $10,000 per occurrence Self-Insured Retention ("SIR").

Policy number XGI 02-1826-003, effective October 1, 2002 to October 1, 2003, provides coverage of $1 million per Occurrence Limit and a $1 million Products/Completed Operations Aggregate subject to a $10,000 per occurrence Self-Insured Retention ("SIR").

Policy number XGI 03-1826-004, effective October 1, 2003 to October 1, 2004, provides coverage of $1 million per Occurrence Limit and a $1 million Products/Completed Operations Aggregate subject to a $10,000 per occurrence Self-Insured Retention ("SIR").

Policy number XGI 04-1826-005, effective October 1, 2004 to October 1, 2005, provides coverage of $1 million per Occurrence Limit and a $1 million Products/Completed Operations Aggregate subject to a $25,000 per occurrence Self-Insured Retention ("SIR").

ASIC denies coverage under each of the policies.

Based upon the "Amended Definitions Endorsement Occurrence or Duty to Defend" and the "Pre-Exiting Injury or Damage Exclusion" exclusion the following policy language precludes coverage for this matter under each of your policies as set forth below:

<u>Self Insured Retention</u>

Policy XGI 00-1826-001, effective August 15, 2000 to October 1, 2001 contains a $10,000 per occurrence Self-Insured Retention ("SIR").

Policy number XGI 01-1826-002, effective October 1, 2001 to October 1, 2002 and contains a $10,000 per occurrence Self-Insured Retention ("SIR").

Policy number XGI 02-1826-003, effective October 1, 2002 to October 1, 2003 contains a $10,000 per occurrence Self-Insured Retention ("SIR").

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 4 of 12

Policy number XGI 03-1826-004, effective October 1, 2003 to October 1, 2004 contains a $10,000 per occurrence Self-Insured Retention ("SIR").

Policy number XGI 04-1826-005, effective October 1, 2004 to October 1, 2005 contains a $25,000 per occurrence Self-Insured Retention ("SIR").

If there were coverage for this matter, which there isn't, each of the policies contain a self-insured retention. Thus, if coverage were not barred for the reasons set forth in this letter, as a condition precedent to coverage, the self-insured retention must be satisfied in order to trigger coverage under the policy. Where multiple policies are potentially triggered a self-insured retention must be satisfied for each policy under which coverage is being sought. However, satisfaction of only one self-insured retention is required to trigger the duty to defend a potentially covered claim. As stated, there is no potential for coverage for the subject claim.

The form ES 98 01 entitled Self-Insured Retention provides in pertinent part:

> As a condition precedent to our obligations to provide or continue to provide indemnity, coverage or defense hereunder, the insured, upon receipt of notice of any "suit", incident or "occurrence" that may give rise to a "suit", and at our request, shall pay over and deposit with us all or any part of the self-insured retention amount as specified in the policy, requested by us, to be applied by us as payment toward any damages or SUPPLEMENTARY PAYMENTS - COVERAGES A AND B incurred in the handling or settlement of any such incident, "occurrence" or "suit".

Each of the policies contain the policy form CG 00 01 07 98. The CGL policy form provides in pertinent part under Section I Coverage A, subsection 1 of the Commercial General Liability Coverage Form as follows:

> 1. Insuring Agreement
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply...
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
> (1) the "bodily injury" or "property damage" is caused by an **"occurrence"** that takes place in the "coverage territory"; and
> (2) The "bodily injury" or "property damage" occurs during the policy period.

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 5 of 12

Please note that Policy number XGI 04-1826-005, effective October 1, 2004 to October 1, 2005 is endorsed with ES 98 120 05 04 , Absolute Limits of Liability Endorsement. This endorsement modifies the policy so that all supplementary payments will reduce limits of insurance. Supplemental Payments includes but is not limited to all expense we incur including defending the named insured and any additional insured

Section V of the Commercial General Liability Coverage Form (CG 00 01 07 98) defines "property damage" and "suit" as follows:

17. "Property damage" means:
   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent: or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Note that the highlighted word of this Insuring Agreement has been done to emphasize and call to your attention certain endorsements that are attached to aforementioned policies that further define or change this section of the basic Commercial General Liability Coverage Form ("CGL").

This highlighted word, "*occurrence*", is referred to by endorsement ASIC ES 98 03, and is titled the AMENDED DEFINITIONS ENDORSEMENT OCCURRENCE OR DUTY TO DEFEND. The endorsement reads as follows:

<u>Amended Definitions Endorsement – Occurrence of Duty to Defend</u>

"It is hereby agreed that paragraph 13. 'occurrence', of SECTION V – DEFINITIONS is deleted in its entirety and replaced with the following:

13. 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions that happen during the term of this insurance. 'Property damage', 'bodily injury' or 'personal and advertising injury' which commenced prior to the

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 6 of 12

> effective date of this insurance will be deemed to have happened prior to, and not during the term of this insurance.
>
> There shall be no obligation of the Company to defend any 'suit' against the insured or any Additional Insured if such 'suit' does not allege and 'occurrence' as defined in this Endorsement."

Thus, Bay Area Construction Framers, Inc. must show an "occurrence" during the term of the policy. Further, to the extent that "property damage" claimed in the suit commenced prior to the policies' inception, ASRRG and ASIC would have no duty to defend or indemnify Bay Area Construction Framers, Inc. in the "suit" as such "property damage" is deemed to have happened prior to the term of the policy.

These ASIC manuscript forms were written to address thethe two findings of the Supreme Court that led it to follow a continuous injury trigger of coverage in *Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645 when looking at typical CGL policies. In that case, the court analyzed the standard definitions of "occurrence" [that required an injury within the definition], finding it was not ambiguous, and also compared the timing issues of "occurrence" and "property damage," and noticed:

> "It is the latter injury or damage that must "occur" during the policy period," and that "the timing of the accident, event or conditions causing the bodily injury or property damage, e.g., an insured's negligent act, is largely immaterial to establishing coverage; it can occur before or during the policy period." (*Id.* at 669, 675.)

In contrast, the ASIC policy has made the timing of the insured's negligent act material to establishing coverage. The insured's negligent act must take place during the policy term.

Similar language was evaluated by the California Central District Court in *USF Ins. v. Claredon*, where the court noted the Policies make a clear distinction between the "occurrence," which is the accident or exposure that causes damage to the claimant, and the resulting "physical damage." As noted above, the Insuring Agreement requires the "occurrence" cause "property damage," so they are not the same thing. The Clarendon Policies required "that both the occurrence and the first instance of property damage take place during the policy period," and also explicitly deemed that all property damage caused contributed to by an occurrence takes place "at the time of the first such damage." Having admitted coverage under its own Policy, USF's contention that coverage under defendants' Policies was also triggered essentially asked the court to ignore the language of the Claredon policies which is very similar to the language of American Safety's policies.

We respectfully refer you to the following policy language exclusion that bars coverage for a continuing loss, which occurred before the policies, is alleged to be in the process of occurring and bars any known damages:

<u>Pre-Existing Injury and Damage Exclusion – Form A, ES 98-08</u>

"This insurance does not apply to:

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 7 of 12

1. Any 'occurrence', incident or 'suit' whether known or unknown to any officer of the Named Insured:
   a. which first occurred prior to the inception date of this policy or the retroactive date of this policy, if any; or
   b. which is, or alleged to be, in the process of occurring as of the inception date of this policy or the retroactive date of this policy, if any, even if the 'occurrence' continues during this policy period.
2. Any damages arising our of or relating to 'bodily injury', 'property damage' or 'personal and advertising injury' which are known to any officer of any insured, which are in the process of settlement, adjustment or 'suit' as of the inception date of this policy, or the retroactive date of this policy, if any.

We shall have no duty to defend any insured or Additional Insured against any loss, 'occurrence', incident or 'suit' or other proceeding alleging damages arising out of or related to 'bodily injury', 'property damage' or 'personal and advertising injury' to which this Endorsement applies."

(Compare *Montrose* at 673, finding "nothing in the policy language purports to exclude damage or injury of a continuous or progressively deteriorating nature.")

The complaint alleges that the subject residences are not fit for single-family purposes, in not of merchantable quality, and is not safe and in habitable condition. Since completion, said Project developed latent defects not apparent by reasonable inspection at the time of purchase, including but not limited to basic design components were omitted and/or improperly installed and/or built out of defective materials; defective siding material and/or workmanship which has caused damage to the Plaintiffs homes; defective windows and/or window installation which has caused damage to the Plaintiffs' homes; and defective framing materials and/or workmanship which caused damage to the Plaintiffs' homes.

The allegations of inadequate design, construction and materials would have occurred at the time of the work by Bay Area Construction Framers, Inc. As it alleged the subject properties and improvements were not of merchantable quality and were not erected in a reasonable manner, such deficiencies would have first occurred before the American Safety policy incepted. Thus, the "occurrence" is not during the term of the policy and/or commenced before the policy incepted, and is therefore excluded.

Based on the previously stated facts and the language in the Amended Definition of Occurrence and Duty to Defend Endorsement, we, on behalf of American Safety Indemnity Company, deny coverage for this claim. While we deny coverage for this claim, we do disagree with your contention that our coverage language makes coverage illusory, as there are projects involving this insured that we have defended and/or settled when the work was completed during the American Safety policy period. For example, we defended both Bay Area Construction and the general contractor (as an additional insured) in a claim brought by the City of Pinole and paid indemnity of $200,000 to settle as that claim, as the project was completed during the American Safety policy period.

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 8 of 12

In addition to exclusions incorporated into the policy by endorsement, several of the exclusions contained in the CGL coverage form also eliminate coverage. The policy provides in Section I,

Coverage A:

2.   Exclusions

This insurance does not apply to:

b.  Contractual Liability

(1) "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(2) That the insured would have in the absence of the contract or agreement.

The various causes of action for breach of implied warranty and breach of express warranty are not covered by the policy of insurance. Nor would there be coverage for breach of contract unless your subcontract agreement meets the definition of "insured contract". Further, defects are not covered if there is no resultant damage.

The CGL policy form excludes coverage for:

j.   Damage to Property

"Property damage" to:

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

l.   Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Thus, claims for defects that do not result in covered "property damage" are not covered. In particular there is no coverage under the policies for repair or replacement of your defective work, and the "work product" exclusions in general preclude coverage for property damage attributable to your work, as specified in the policy.

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 9 of 12

Other Exclusionary Language

"Property damage" arising out of subsidence would not be covered pursuant to the Subsidence Exclusion (ES 98 12 08 99 and/or ES 09 12 05 04 Editions) under the ASRRG and ASIC policies, which states in part: 'This insurance does not apply to: "Bodily injury", "property damage" or "personal and advertising injury" arising out of or related to the subsidence of the natural surface of the ground." "For the purposes of this exclusion, subsidence shall mean any earth movement including but not limited to earthquake, landslide, mudflow, earth sinking, earth rising, earth shifting or earth settling.'

Policies XGI 01-1826-002, XGI 02-1826-003, XGI 03-1826-004 and XGI 04-1826-005 also contain the Mold and Mildew Exclusion (ES 98 115 06 01 and/or ES 98 115 05 04 Editions), the CGL Policy further provides as follows:

A. This insurance does not apply to any of the following:

1. "Bodily Injury", "property damage" or "personal and advertising injury" arising out of, relating to or resulting from the actual or alleged existence, ingestion, inhalation, abatement, testing, monitoring, remediation, "enclosure", decontamination, repair or removal of "mold, mildew or fungus" in any form.

2. Any loss, cost, expense or damages whether actual or alleged, arising out of, relating to, or resulting from "mold, mildew or fungus" that arises from any cause whatsoever, whether caused by any act or omission of any insured or any third party, whether caused by chronic water intrusion into the building envelope, whether caused by the presence of water on or in any substance or substrate, whether caused by construction defects, whether caused by action or inaction of any insured or third party, whether caused by any act of God, or whether caused by any combination of factors.

3. "Bodily injury", "property damage" or "personal and advertising injury" or repair or replacement, remediation, decontamination or removal of any material or building structure or member arising out of the existence, ingestion, inhalation, abatement, testing, monitoring, "enclosure", "microbiological decontamination", remediation, repair or removal of any contamination that causes any alleged chemical sensitivity.

"Mold, Mildew or Fungus" means any plant-like group that does not produce chlorophyll and derives food either by decomposing organic matter from dead plants and animals or by parasitic attachment to living organisms or any substance specifically or commonly referred to as mold, mildew or fungus.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 10 of 12

Policies XGI 01-1826-002, XGI 02-1826-003, XGI 03-1826-004 and XGI 04-1826-005 are endorsed with the "Professional Liability Exclusion" (ES 98 07 08 09 and/or ES 98 07 05 04 Editions), the CGL Policy further provides as follows:

    A.  This insurance does not apply to:

        "Bodily injury", "property damage" or personal and advertising injury" arising out of the rendering of or failure to render any "professional services" by or for the insured.

    B.  SECTION V. is amended to add the following definitions:

        1.  "Professional services" means:

            a.  The preparing, approving, recommending or failing to prepare, approve or recommend maps, drawings, opinions, reports, surveys, change orders, designs, specifications, hazard assessments plans, response actions, abatement methods or products, air monitoring plans or insurance requirements;

    a.  Supervisory, inspection, training or engineering services; or

    b.  Commercial or industrial hygiene, air monitoring, testing laboratory analysis, public health, legal, accounting, architectural, medical, nursing, data processing, consulting or investment advisory services.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Policies XGI 01-1826-002, XGI 02-1826-003, XGI 03-1826-004 and XGI 04-1826-005  endorsed with (ES 98 95 01 01 and/or ES 98 95 05 04 Editions), Exterior Insulation and Finish Systems (EIFS) Exclusion, which states in part:

This is insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of or caused by the actual or alleged:

    1.  Design, construction, fabrication, preparation, installation, application, maintenance, or service of an "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof.

    2.  Any work or operations with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system" is used on that particular part of that structure.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 11 of 12

The policies also contain the "Other Insurance" clauses for which ASIC reserves its rights. The endorsement provides in pertinent part:

> "b. This insurance is excess over any other insurance that is valid and collectible insurance available to the insured or any Additional Insured whether such insurance is primary, excess, contingent or on any other basis and regardless of the nature, type, date of issuance or limits of such other insurance available to the insured or any Additional Insured. Our obligation under this policy shall not arise until the limits of such other insurance are exhausted."
>
> "c. As a condition precedent to our obligations to provide or continue to provide indemnity, coverage or defense hereunder, each insured, upon receipt of notice of any "suit", incident or "occurrence" that may give rise to a "suit", shall first demand indemnity, coverage and defense from each other insurer that may provide indemnity, coverage or defense to it. The insured waives any right it may have to insist that we provide indemnity, coverage or defense when any other insurer may also provide indemnity, coverage or defense to the insured. The insured waives any rights it may have to a targeted tender or any other right to select us as the insurer to provide indemnity, coverage or defense."

Thus, we ask that you tender this claim to all other insurers.

While other policy language may also sustain our position, we have chosen the above language as being the most pertinent for the facts known in this case. We therefore reserve all rights to amend or put forth additional language if necessary at any later date.

Given the aforementioned policy language, exclusions and endorsements; there is no coverage for this loss under American Safety Risk Retention Group's policy number XGI 00-1826-001, effective August 15, 2000 to October 1, 2001 or under American Safety Indemnity Company's policy number XGI 01-1826-002, effective October 1, 2001 to October 1, 2002; XGI 02-1826-003, effective October 1, 2002 to October 1, 2003; XGI 03-1826-004, effective October 1, 2003 to October 1, 2004 or XGI 04-1826-005, effective October 1, 2004 to October 1, 2005. American Safety Risk Retention Group and/or American Safety Indemnity Company has no duty to defend or indemnify Bay Area Construction Framers, Inc. or any additional named insured or additional insureds by endorsement. This declination letter does not necessarily set forth all possible bases for a denial of coverage, and therefore should not be construed as a waiver or American Safety Indemnity Company's rights to raise other bases for a denial of coverage not contained in this letter.

Should you disagree with this declination of coverage, or feel you have information that may have a bearing on our decision, please submit it to this office immediately. Any information we receive from you will be reviewed and we will advise accordingly. Additionally, we, on behalf of American Safety Indemnity Company, reserve all rights to amend or supplement our coverage position and to assert any policy defenses as additional information is discovered.

Bay Area Construction Framers, Inc.
Claim No.: 010822
Page 12 of 12

If you believe your claim has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance, Consumer Communications Bureau, 300 South Spring Street, 11th Floor, Los Angeles, CA 90013, telephone number (213) 346-6523 or 800-927-4357.

Should you have any questions with regard to the above, please contact the undersigned at 9650 286-1180.

Very truly yours,
*American Safety Insurance Services, Inc.*


Jean D. Fisher
*Corporate Claims Counsel*

cc:

Daniel J. Smith, Esq.
Parris H. Schmidt, Esq.
Law Offices of Bowman & Brooke
1741 Technology Drive, Suite 220
San Jose, CA 95110-1355

Mr. Paul D. Verrips
Bay Area Construction Framers, Inc.
7633 Southfront Road, Suite 120
Livermore, CA 94551

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

ACCEPTANCE INSURANCE COMPANY,   )
                                )
            Plaintiffs,         )
                                )
        vs.                     )        No. BC352725
                                )
AMERICAN SAFETY RISK RETENTION  )
GROUP, INC.; and DOES 1 through )
100, inclusively,               )
                                )
            Defendants.         )
_____)

DEPOSITION OF JEAN P. FISHER

Los Angeles, California

Wednesday, December 5, 2007

Reported by:
MARYAM T. SALAHUD-DIN
CSR No. 9669
Job No. 667590



1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                 FOR THE COUNTY OF LOS ANGELES

3

4    ACCEPTANCE INSURANCE COMPANY,    )
                                      )
5             Plaintiff,              )
                                      )
6         vs.                         )        No. BC352725
                                      )
7    AMERICAN SAFETY RISK RETENTION   )
     GROUP, INC.; and DOES 1 through  )
8    100, inclusively,                )
                                      )
9             Defendants.             )
     _____)

10

11

12

13

14

15              Deposition of JEAN P. FISHER, taken

16         on behalf of Plaintiff, at 3460 Wilshire

17         Boulevard, 8th Floor, Los Angeles,

18         California, beginning at 10:10 a.m. and

19         ending at 12:34 p.m. on Wednesday,

20         December 5, 2007, before MARYAM T.

21         SALAHUD-DIN, Certified Shorthand

22         Reporter No. 9669.

23

24

25

be330082-ed81-4a7b-96b3-7ffebb1c3a2f

1    correct?

2         A    Correct.

3         Q    Is it your understanding that that is a true

4    and correct copy of the coverage form, that being CG

5    00010798, that that is a true and correct copy of the

6    coverage form that was attached to the indemnity company

7    policy issued to Bay Area?

8         A    Yes.

9         Q    And so the insuring language that you reviewed

10   in evaluating whether or not there was coverage under

11   the second policy issued by indemnity company, that

12   language that is contained in page 1 of that form is --

13   as stated in that form, is correct to your

14   understanding; correct?

15        A    Correct.  Can we take a short break.

16        Q    Absolutely.

17             (Recess.)

18   BY MR. DION:

19        Q    If we can go back to the second policy issued

20   by American Safety Indemnity Company -- by the way, the

21   address on the declaration page lists the same address

22   as indicated for American Safety Services, Inc.;

23   correct?

24             MR. LARIN:  Let me just object here.  You have

25   asked her a number of questions about the distinctions

1    between American Safety Risk Retention and American

2    Safety Indemnity.

3            And I understand from our off-the-record

4    discussion that we may be at some point in the very near

5    future discussing whether or not that entity will be

6    brought into this case.

7            That is actually not the scope of this

8    deposition.  And that company, as you know our position,

9    is not a defendant in this case.

10           So I can let you run a little bit with this,

11   but if we are going to spend the whole time talking

12   about American Safety Indemnity Company, I think we are

13   well beyond the scope.

14           THE WITNESS:  I have not been retained by that

15   entity.  So it is not a defendant that -- I'm not

16   comfortable continuing into lot of coverage issues

17   without them being a party.

18   BY MR. DION:

19       Q   You are the person who is responsible for

20   handling direct claims against American Safety

21   Indemnity; correct?

22       A   In my role with American Safety Insurance

23   Services, I oversee the suits against the insurance

24   companies.

25       Q   And that would include American Safety

be330082-ed81-4a7b-96b3-7ffebb1c3a2f

1    Indemnity Company; correct?

2        A    Correct.

3        Q    And you did evaluate the Portola action as it

4    relates to the American Safety Indemnity Company;

5    correct?

6        A    I evaluated --

7        MR. LARIN:  Objection.  Outside of the scope of

8    the notice.

9        MR. DION:  The scope of all commercial general

10   liability insurance coverage provided by American Safety

11   to insured Bay Area Construction Framers, Inc.  I don't

12   believe --

13       MR. LARIN:  And the foundational question was

14   whether or not American Safety Indemnity Company is a

15   related company as defined here in No. 1, and the

16   witness said it was not.

17   BY MR. DION:

18       Q    It is your position that it is not a related

19   company?

20       A    They are not related companies.

21       Q    Okay.  And related, in my opinion, could be

22   anything from companies that are associated under an

23   umbrella holding company or something else.  It is

24   sufficiently vague here that clearly those two companies

25   could be construed as related?

1        A    They are not related.  That is what I have told

2    you.  The underwriting filing, there is a certificate

3    that actually you issued the shareholder, as I

4    understand it, to the insured.  It is a risk retention

5    group separate and apart, unrelated to American Safety

6    Holding and all of the subsidiaries which include

7    American Safety Indemnity Company, American Safety

8    Casualty Insurance Company.

9            So I have tried to be very clear here today.

10   They are unrelated companies.  So they is no way that

11   American Safety Indemnity Company is the defendant in

12   this case or a subject of the scope of the testimony in

13   the notice of deposition.

14       Q    American Safety's investigation into Bay Area's

15   tender regarding the Portola action, it is your position

16   that that has nothing to do with American Safety

17   Indemnity Company?

18           MR. LARIN:  Well, I will state that as a legal

19   objection, the scope of this is American Safety as

20   defined here.  And we don't define it as a related

21   entity there are as American Safety on No. 3 would

22   relate to -- relating to its definition under No. 1

23   there is limited to ASRG.

24           MR. DION:  Tell you what.  To make it very

25   easy, you can instruct her not to answer, and then we go

Page 62

1    to court.  Is that fine?  I am going to ask a few more

2    questions about this policy to determine whether or not

3    this is a true and correct copy of the relevant policy

4    terms that she considered in connection with their

5    evaluation of the claim under this policy.  You can

6    decide whether she is going to answer or not.  We will

7    go from there.

8           MR. LARIN:  Is that the limit of it?

9           MR. DION:  That is pretty much the limit of it,

10   yes.  And I don't know where we would go otherwise.

11          THE WITNESS:  The problem I have is that he is

12   not retained at this point for American Safety Indemnity

13   Company.

14          So I guess we will go to a point.  And if I'm

15   not comfortable as the counsel on behalf of American

16   Safety Insurance Services to answer questions about an

17   entity you haven't sued, I am not going to answer it

18   without them being a party.

19   BY MR. DION:

20      Q   And that is perfectly fine because I think you

21   have evaluated under the policy -- I think it has been

22   tendered.  But we can argue that later.

23          MR. LARIN:  Hold on.  I understand your

24   position because we have talked about it at some length

25   today.

1        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2            IN AND FOR THE COUNTY OF ALAMEDA

3        BEFORE THE HONORABLE STEVEN A. BRICK, JUDGE

4                  DEPARTMENT NO. 31

5                  - - - O O O - - -                 COPY

6   BAY AREA CONSTRUCTION FRAMERS,
    INC., A CALIFORNIA CORPORATION,
7

8                      PLAINTIFFS,

9   VS.                                    NO. RG04-163152

10  AMERICAN SAFETY INSURANCE COMPANY,
    AND DOES 1 THROUGH 100, INCLUSIVELY,
11

12                     DEFENDANTS,

13  _____/

14

15            U.S. POST OFFICE BUILDING

16                201-13TH STREET

17          OAKLAND, CALIFORNIA 94612

18      REPORTER'S TRANSCRIPT OF PROCEEDINGS

19        THURSDAY, SEPTEMBER 9, 2004

20

21                    APPEARANCES

22  FOR THE PLAINTIFF:    PERRY E. RHOADS, ESQ.
                          KOLETSKY MANCINI FELDMAN &
23                        MORROW
                          3460 WILSHIRE BOULEVARD,
24                        8TH FLR.
                          LOS ANGELES, CA 90010-2228
25

26  FOR THE DEFENDANT:    HENRY J. WEINBLATT, ESQ.
                          DALE BRADEN & HINCHCLIFFE
27                        3415 SO. SEPULVEDA BLVD., 9TH FLR.
                          LOS ANGELES, CA 90034
28

SUSAN A. SHEPARD, CSR. NO. 8752

EXHIBIT 3

```
 1   09/09/04                          DEPARTMENT NO. 31
 2              P R O C E E D I N G S
 3                - - - O O O - - -
 4          THE COURT:   BAY AREA CONSTRUCTION VERSUS
 5   AMERICAN.
 6          COURT ATTENDANT:   WE HAVE ONE PARTY ON LINE,
 7   YOUR HONOR.
 8          THE COURT:   OKAY.
 9          MR. RHOADS:   PERRY RHOADS FOR ATTORNEY
10   PLAINTIFF, BAY AREA CONSTRUCTION FRAMERS.
11          THE COURT:   AND IN COURT WE HAVE?
12          MR. WEINBLATT:   GOOD AFTERNOON, YOUR HONOR.
13   HENRY WEINBLATT, DALE, BRADEN & HINCHCLIFFE, SPECIALLY
14   APPEARING FOR MOVING PARTY, AMERICAN SAFETY CASUALTY
15   INSURANCE COMPANY.
16          THE COURT:   OKAY.  MR. RHOADS?
17          MR. RHOADS:   YES.  FIRST OFF, I'D LIKE TO
18   APOLOGIZE TO THE COURT FOR HAVING TO HEAR THIS MOTION.
19   AND I UNDERSTAND WHY THE COURT GRANTED THE MOTION, BUT
20   EVEN THOUGH IT GOT TO THE POINT WHERE WE HAD TO FILE
21   AN OPPOSITION AND CONTEST THE TENTATIVE RULING, WE'VE
22   ATTEMPTED TO MEET AND CONFER WITH THE MOVING PARTY TO
23   OBTAIN FROM THEM THE CORRECT LEGAL NAME OF THE
24   INSURANCE COMPANY THAT ISSUED THE POLICY TO OUR
25   INSURED.  TO DATE THE MOVING PARTY HAS REFUSED TO
26   PROVIDE THIS INFORMATION WHICH IS IN THE POSSESSION OF
27   THE MOVING PARTY.  AND THERE'S NO REASON WHY THEY
28   CAN'T PROVIDE THIS INFORMATION TO US.
```

SUSAN A. SHEPARD, CSR. NO. 8752

3

1          THE COURT:  I TAKE IT YOUR CLIENT DOESN'T
2     HAVE A COPY OF THE POLICY ANYMORE?
3          MR. RHOADS:  THAT'S RIGHT.
4          THE COURT:  OKAY.  WELL, THERE'S -- THIS CASE
5     IS GETTING OFF TO A VERY BAD START.  NORMALLY WHEN A
6     SITUATION LIKE THIS ARISES A DEFENDANT WHO HAS ACTUAL
7     NOTICE OF THE DISPUTE FILES A RESPONSIVE PLEADING
8     SAYING, IN ITS OWN CORRECT NAME AND THEN FOLLOWED BY
9     COMMA, INCORRECTLY SUED AS.  I DON'T KNOW WHY
10    MR. WEINBLATT'S CLIENT HAS CHOSEN NOT TO DO THAT
11    TODAY.  MAYBE YOU'D LIKE TO ENLIGHTEN US.
12         MR. WEINBLATT:  MY -- FIRST OF ALL, MY CLIENT
13    IS AMERICAN SAFETY INSURANCE SERVICES INCORPORATED
14    WHICH IS A, WHICH IS THE PROGRAM MANAGER FOR CLAIMS
15    HANDLING WITH REGARD TO THE AMERICAN SAFETY GROUP OF
16    INSURERS.  AND THEY, ASIS, AMERICAN SAFETY INSURANCE
17    SERVICES, INC. HANDLES CLAIMS MADE AGAINST ANY POLICY
18    ISSUED BY ANY ONE OF THE GROUP OF INSURERS OR ANY
19    CLAIMS OR AGAINST THE -- ANY ONE OF THE INSURERS
20    THEMSELVES SUCH AS A BAD FAITH ACTION.
21         NOW, THIS IS THE COMPLAINT HERE, BAY AREA
22    CONSTRUCTION FRAMERS, MR. RODES' CLIENT, IS ALLEGING
23    THAT THEY TENDERED THEIR DEFENSE TO A CARRIER.  AND
24    MR. RHOADS HAS IN HIS DECLARATION THE NAME OF A
25    CARRIER.  AND THAT THAT CARRIER -- THAT'S AT PARAGRAPH
26    FOUR, MR. RODES' DECLARATION FILED TO SUPPORT THE
27    OPPOSITION TO THE MOTION TO QUASH.
28         NOW, I THINK THE RULES OF PROFESSIONAL

4

1   RESPONSIBILITY AND THE LAWS REGARDING MALICIOUS
2   PROSECUTION REQUIRE AT LEAST THE MINIMUM OF DUE
3   DILIGENCE PRIOR TO SERVING A COMPLAINT.  NOW THESE
4   PEOPLE, BAY AREA, ARE ALLEGING THAT THEY MADE A
5   TENDER.  THEIR TENDER WAS DENIED.  IT'S THEIR POLICY.
6   THEY'RE NOT AN ADDITIONAL INSURED.  THEY IDENTIFY A
7   POLICY NUMBER.  I WOULD THINK THAT THEY HAVE A RETAIL
8   INSURANCE BROKER THAT PROVIDED THAT POLICY.  SO I
9   WOULD THINK THAT WITHIN EVEN A MODICUM OF DUE
10  DILIGENCE AN APPROPRIATE -- THE APPROPRIATE DEFENDANT
11  SHOULD BE -- SHOULD HAVE BEEN NAMED.
12      AND, YOUR HONOR, JUST TO SAVE US A LITTLE TROUBLE
13  AND TO SHOW YOU HOW CONFUSED MR. RHOADS IS, AT
14  PARAGRAPH FOUR IN HIS DECLARATION HE STATES, "BAY AREA
15  WAS INSURED BY AN INSURANCE COMPANY NOW BELIEVED" --
16  THIS IS TWO MONTHS AFTER THE COMPLAINT IS FILED -- "TO
17  BE AMERICAN SAFETY CASUALTY."
18      THEN I REFER THE COURT TO EXHIBIT A IN BAY CITY'S
19  OPPOSITION TO THE MOTION TO QUASH.  THE FIRST
20  PARAGRAPH IN THEIR OWN DOCUMENTS, THERE'S A LETTER
21  THERE FROM BRECKENRIDGE & ASSOCIATES THAT SAYS:
22  AMERICAN SAFETY INSURANCE SERVICES, INC., ASIS, IS THE
23  PROGRAM MANAGER FOR AMERICAN SAFETY RISK RETENTION
24  GROUP.
25      NOW, I DON'T THINK ANYTHING COULD BE PLAINER THAN
26  THAT.  THIS CAME FROM THEIR OWN FILES.  IT'S -- THIS
27  IS A PARADIGM EXAMPLE OF JUST FLAT, SLOPPY LAWYERING.
28          THE COURT:  WELL --

SUSAN A. SHEPARD, CSR. NO. 8752

5

```
 1              MR. RHOADS:  YOUR HONOR --
 2              THE COURT:  -- MR. RHOADS, ON THE CURRENT
 3   STATE OF THE RECORD AND IN LIGHT OF THE ASSERTIONS BY
 4   MR. WEINBLATT'S ASSOCIATE OR PARTNER, MR. DIDSZUN,
 5   UNDER OATH, THAT THERE IS NO RELATIONSHIP BETWEEN THE
 6   DEFENDANT THAT YOU NAMED AND THE DEFENDANT WHO'S
 7   APPEARING HERE TODAY, YOU'RE GOING TO HAVE TO DO YOUR
 8   HOMEWORK AND SUE THE RIGHT DEFENDANT.  TENTATIVE IS
 9   AFFIRMED.
10              MR. WEINBLATT:  THANK YOU, YOUR HONOR.
11   NOTICE WAIVED?
12              THE COURT:  IS NOTICE WAIVED?
13              MR. RHOADS:  YES, YOUR HONOR.
14              THE COURT:  THANK YOU, VERY MUCH.
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

SUSAN A. SHEPARD, CSR. NO. 8752

6

```
 1 | STATE OF CALIFORNIA     )
   |                         )          SS.
 2 | COUNTY OF ALAMEDA       )
 3 |
 4 |
 5 |
 6 |
 7 |
 8 |
 9 |        I, SUSAN A. SHEPARD, DO HEREBY CERTIFY THAT I AM
10 | AN OFFICIAL REPORTER OF THE SUPERIOR COURT OF THE
11 | STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF ALAMEDA,
12 | AND THAT AS SUCH I REPORTED THE PROCEEDINGS HAD IN THE
13 | ABOVE ENTITLED MATTER, AT THE TIME AND PLACE SET FORTH
14 | HEREIN:
15 |        THAT MY STENOGRAPH NOTES WERE THEREAFTER
16 | TRANSCRIBED INTO TYPEWRITING UNDER MY DIRECTION AND
17 | THAT THE FOREGOING PAGES CONSTITUTE A FULL, TRUE AND
18 | CORRECT TRANSCRIPTION OF MY SAID NOTES.
19 |
20 |
21 | DATED:   OCTOBER 25, 2004
22 |
23 |
24 |
25 | _____
26 |                 SUSAN A. SHEPARD
   |         CERTIFIED SHORTHAND REPORTER
27 |                   NO. 8752
28 |
```

SUSAN A. SHEPARD, CSR. NO. 8752

*Acceptance Insurance Company v. American Safety Risk Retention Group, Inc.*
Case No. BC352725

### PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 888 South Figueroa Street, 16th Floor, Los Angeles, California 90017.

On **January 17, 2008**, I served the **OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT TO NAME AMERICAN SAFETY INDEMNITY COMPANY AS DOE 1; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JEAN FISHER; AND EXHIBITS** on all interested parties in this action by placing a true copy thereof enclosed in sealed envelope addressed as follows:

Ray Dion, Esq
Perry Rhoades, Esq.
**Koletsky, Mancini, Feldman & Morrow**
3460 Wilshire Boulevard, 8th Floor
Los Angeles, CA 90010-2228
Tel: (213) 427-2350
Fax: (213) 427-2366
**Attorneys for Plaintiff, ACCEPTANCE INSURANCE COMPANY**

_X_     **(BY FEDERAL EXPRESS/OVERNIGHT MAIL)** I caused the above-described document to be served on the interested parties noted as follows by Federal Express/Overnight Mail.

_     **(BY PERSONAL SERVICE):** I caused such document to be delivered by hand to the above-identified party via personal delivery.

_X_     **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed **January 17, 2008**, at Los Angeles, California.

HELEN ESPARZA

F:\WP\Njw-team\DAF\2032-0016-Acceptance\Service\POS.wpd

**PROOF OF SERVICE**

# EXHIBIT 3

1  RAYMOND C. DION (State Bar No. 139206)
   PERRY E. RHOADS (State Bar No. 209812)
2  **KOLETSKY, MANCINI, FELDMAN & MORROW**
   3460 Wilshire Boulevard, Eighth Floor
3  Los Angeles, CA 90010-2228
   Telephone: (213) 427-2350
4  Facsimile: (213) 427-2366

5  Attorneys for Plaintiff
   ACCEPTANCE INSURANCE COMPANY

6

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 2 4 2008

John A. Clarke, Executive Officer/Clerk

By_____, Deputy
A.E. LaFLEUR-CLAYTON

7            SUPERIOR COURT OF CALIFORNIA

8               COUNTY OF LOS ANGELES

9

10  ACCEPTANCE INSURANCE
    COMPANY,
11
                                CASE NO. BC352725
12          Plaintiff,           Unlimited Jurisdiction

13      vs.                      **REPLY TO OPPOSITION TO PLAINTIFF'S
                                 MOTION TO AMEND COMPLAINT TO NAME
14  AMERICAN SAFETY RISK RETENTION   AMERICAN SAFETY INDEMNITY COMPANY
    GROUP, INC., and DOES 1 through 100,  AS DOE 1; MEMORANDUM OF POINTS AND
15  inclusively,                 AUTHORITIES; DECLARATION OF PERRY
                                 RHOADS, ESQ.**
16
                                 Hearing Date:    January 31, 2008
17          Defendants.          Time:            8:30 a.m.
                                 Dept:            55
18                               Hon. Malcolm H. Mackey

19                               Trial Date: March 17, 2008

20  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

21      Plaintiff Acceptance Insurance Company ("Acceptance") submits the following reply to

22  defendant American Safety Risk Retention Group's ("ASRRG") opposition to Acceptance's Motion to

23  Amend Complaint to Name American Safety Indemnity Company as Doe 1.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd, Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

---

1

## MEMORANDUM OF POINTS AND AUTHORITIES

1    Plaintiff Acceptance responds to defendant ASRRG's arguments in opposition to the present

2   motion to add American Safety Indemnity Company ("ASIC") as follows: (1) plaintiff was unaware

3   that the second policy was issued by a separate American Safety entity from the first policy; (2)

4   plaintiff recognizes that the addition of ASIC is not due to a "clerical error", but due to an ignorance of

5   the true name of the entity issuing the second policy; (3) defendant's conduct has furthered the

6   deception which caused plaintiff to believe both policies were issued by the same insurance company

7   entity; (4) the claim, as it relates back to the complaint, is not time barred; and (5) addition of ASIC

8   would not cause it any prejudice.

**1.   PLAINTIFF WAS UNAWARE THAT THE SECOND POLICY WAS ISSUED BY A SEPARATE AMERICAN SAFETY ENTITY FROM THE FIRST POLICY**

Plaintiff was aware that two American Safety policies were issued to Bay Area (attached and referenced in the complaint).  However, plaintiff was unaware that the American Safety company that issued the second policy was a separate business entity from the American Safety company that issued the first policy.  It was not until the deposition of Jean Fisher was taken on December 5, 2007, that plaintiff discovered that ASIC was a separate legal entity and that defendant was asserting this as a defense.  Exhibit A and B, attached to plaintiff's motion, show the striking similarities between the declaration pages of both policies.  The forms are nearly identical, with the same contact address and telephone numbers, same broker, and almost all the policy Endorsements are the same.  Moreover, the policy numbers are nearly identical, with the second policy period immediately proceeding the first.  Further, the American Safety logo on the upper left corner is the only indication that the business entities may be separate, and even then, the A-S star and American Safety name is identical.

Amending the complaint to include Doe defendant ASIC satisfies the "relation back" doctrine of *CCP* §474.

"When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, or the affidavit if the action is commenced by affidavit, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly... *See CCP* §474.

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

2

**REPLY TO OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT TO NAME AMERICAN SAFETY INDEMNITY COMPANY AS DOE 1; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF PERRY RHOADS, ESQ.**

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

1    The amended complaint will be given "relation back" effect, so as to avoid the statute of

2    limitations, provided:

3    (a)    The original complaint stated a valid cause of action against now-identified "Doe"

4           defendants; and

5    (b)    Plaintiff was "genuinely ignorant" of the defendant's identity or the facts rendering

6           defendant liable when the original complaint was filed; and

7    (c)    The amended complaint, identifying the defendant, is based on the "same general set of

8           facts" as the original and refers to the "same accident and same injuries"

9    *Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group)* 2006 § 6:735 – citing

10   *Austin v. Massachusetts Bonding & Ins. Co.* (1961) 56 Cal.2d 596, 600-601, 15 Cal.Rptr.817, 819.

11   Defendant asserts that plaintiff did not have the requisite "lack of knowledge of the true name of

12   the defendant" when the complaint was filed, to be afforded the benefit of the "relation back" effect

13   (element "b" above). Defendant points to two facts in support of this conclusion: (1) plaintiff had the

14   policies, and (2) a letter was sent giving notice (Exhibit 1 to the opposition). These facts do not prove

15   that plaintiff was not "genuinely ignorant" of the identity of ASIC.

16   Although the case law cited by defendant's opposition is correct, the facts of the present case are

17   distinguishable from those in *Snoke v. Bolen.* In *Snoke,* the plaintiff/patient knew the name of her own

18   treating dentist, and failed to name him in a dental malpractice action. Here, plaintiff was truly ignorant

19   of the correct name of the business entity issuing the second policy, because the name was almost

20   identical to the first policy. Defendant's deception in failing to disclose the distinction between the

21   entities furthered plaintiff's ignorance of the separateness of the second American Safety entity.

22   The facts of the present case are more similar to the facts in *Prince v. Jensen Motors, Inc.*

23   (1983) 139 Cal.App.3d 653, 188 Cal.Rptr. 911. In that case, plaintiff purchased an automobile

24   manufactured by "Jensen Motors, Ltd." from that corporation's California distributor, a corporation

25   known as "Jensen Motors, Inc." Both corporations are doing business in California. Plaintiff suffered

26   property damage allegedly because of defective manufacture of the car. He sued "Ltd." alleging breach

27   of warranty. Service was made on Inc. Ltd. secured a dismissal for lack of service on it. Plaintiff then

28   served Inc. as a Doe defendant. Inc. cross-complained against Ltd. for indemnity. At trial, Inc. moved

3

ROLLINS, MANLINI, FELDMAN & MURROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

1 for judgment on the pleadings, setting forth for the first time, the (quite accurate) contention that the

2 complaint failed to allege any fact showing how it was involved in the damage.  The motion was

3 granted.  On appeal, the court reversed, holding that where two corporations with almost identical

4 names, involved in continuous intercompany business, and where claim for breach of warranty

5 expressed or implied lies only against seller it was obvious that plaintiff intended to sue seller and

6 where seller by its conduct until it sprang its surprise motion had acted in a manner consistent only with

7 its recognition of plaintiff's true intent to sue seller, seller having filed cross-complaint, seller showed

8 no possible prejudice from being brought in as defendant, and complaint should not have been

9 dismissed on ground that it failed to allege any facts showing how seller was involved in the damage.

10 The court of appeal cited an exception to the general rule that amendment generally will not be allowed

11 to bring in a new party after the statute of limitations has run as to that new party.  The exception to the

12 general rule "permits correction where the plaintiff has committed an excusable mistake attributable to

13 dual entities with strikingly similar business names or to the use of fictitious names." *Prince v. Jensen*

14 *Motors, Inc.* (1983) 139 Cal.App.3d at 655, 188 Cal.Rptr. at 912.

15         An excusable mistake was made when plaintiff failed to recognize that the second policy was

16 issued by a separate American Safety entity unrelated to the first.  The similarity of the names, policies

17 and employees of both American Safety entities are all evidence that the mistake was excusable.

18 Moreover, the declination letter attached as Exhibit 1 to defendant's opposition does not establish that

19 plaintiff was not ignorant of the true name of the company issuing the second policy.  Plaintiff had not

20 seen this letter prior to defendant's attaching it to the opposition.  The letter appears to involve a

21 declination of tender in a different case, and is addressed to different counsel than is representing

22 plaintiff in this action.  If the declination letter by ASRRG in the underlying *Portola* action (attached

23 hereto as Exhibit 1) had informed plaintiff that American Safety was declining coverage for policies

24 issued by ASRRG **and ASIC** then plaintiff may not have been ignorant as to the identity of the

25 company that issued the second policy (ASIC).  The January 19, 2002 declination letter from ASRRG's

26 Program Manager to Bay Area fails to identify the second policy, or even recognize its existence,

27 despite the fact that it administered both policies and Ms. Fisher was aware of both policies.

28

**REPLY TO OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT TO NAME AMERICAN
SAFETY INDEMNITY COMPANY AS DOE 1; MEMORANDUM OF POINTS AND AUTHORITIES;
DECLARATION OF PERRY RHOADS, ESQ.**

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

2. **PLAINTIFF RECOGNIZES THAT THE ADDITION OF ASIC IS NOT DUE TO A "CLERICAL ERROR", BUT DUE TO A IGNORANCE OF THE TRUE NAME OF THE ENTITY ISSUING THE SECOND POLICY.**

Plaintiff has brought this regularly-noticed motion to allow defendant an opportunity to make all appropriate objections. If granted, plaintiff will pay all appropriate filing fees, issue a separate Summons, and individually serve ASIC, if required. The "clerical error" in the complaint is the reference to the second policy as "XGI-00-1826-002 instead of "XGI-01-1826-002" (see Complaint, page 3 line 1). The deposition of Jean Fisher makes clear that, although the legal entities are separate, they are administered by the same employees.

3. **DEFENDANT'S CONDUCT HAS FURTHERED THE DECEPTION WHICH CAUSED PLAINTIFF TO BELIEVE BOTH POLICIES WERE ISSUED BY THE SAME INSURANCE COMPANY ENTITY.**

Defendant asserts that plaintiff lacks due diligence and "mixed up" the American Safety entities in the previous bad faith action by Bay Area. Bay Area brought a bad faith suit against American Safety Insurance Co. At that time, counsel was not in possession of either American Safety policy, an defendant refused to provide them, or even disclose the name of their client. Defense counsel special appeared on behalf of "American Safety Casualty Insurance Company" to quash service, presumably because this was not one of the American Safety entities issuing either policy. At the hearing, plaintiff explained to the court that moving party refused to disclose the correct legal entity that issued the policy to Bay Area (see defendant's Exhibit 3, page 2). Defendant's conduct in refusing to disclose th correct entities furthered its strategy of deception and contributed to plaintiff's confusion as to the correct identities of the American Safety entity. Plaintiff elected to dismiss that case because investigation revealed that the insured had not incurred sufficient out of pocket damages to sustain the bad faith action. Plaintiff subsequently obtained the policies from the insurance broker and filed the present contribution action.

/ / /

/ / /

REPLY TO OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT TO NAME AMERICAN SAFETY INDEMNITY COMPANY AS DOE 1; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF PERRY RHOADS, ESQ.

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

**4.**     **THE CLAIM, AS IT RELATES BACK TO THE COMPLAINT, IS NOT TIME BARRED.**

   This statute of limitation issue is being fully briefed in the motions for summary judgment which will be heard on February 13, 2008, and need not be decided in this motion.  Defendant has asserted this very same defense in its motion for summary judgment / adjudication of the ASRRG Policy.  The argument is identical if asserted by ASIC.  Defendant, acting on behalf of ASIC, will not be prejudiced by the court's ruling on this issue at the summary judgment hearing on February 13.  Likewise, the policy exclusions in the ASRRG policy that defendant alleges are applicable, are the same exclusions contained in the ASIC Policy, and would also be identical.  Defendant has asserted these policy exclusions as well in its motion for summary judgment / adjudication.  Ms. Fisher admits that there are no changes of significance between the first and second policies with respect to evaluation of whether there is coverage under either policy (page 54-55, lines 19-25, 1).  A summary of Plaintiff opposition to defendant's MSJ with respect to its statute of limitation argument is summarized below.

   Defendant asserts that the applicable limitations period for this equitable contribution action is 2-years under CCP 339.  While we do not disagree with the 2-year period, we dispute the commencement of the running of this period.  Defendant asserts that the 2-year period begins to run immediately upon the first payment of defense fees, and it is a rolling statute (i.e. there is two years to bring a contribution action on each payment).  This is not the law.

   There is no case directly on-point with respect to the issue of when the 2-year statute begins to run on an equitable contribution claim, however case law suggests that the cause of action accrues **when the settlement is paid**.  *Preferred Risk Mutual Ins. Co. v. Reiswig* (1999), 21 Cal.4th 208, 213.  In the present case, **Acceptance mailed the settlement payment on August 16, 2004.**  This is the earliest date that the 2-year statute commences to run (as to ASRRG and ASIC).  The Complaint was filed within 2-years of this date (May 22, 2006).

   The most recent California Court of Appeal decision addressing the statute of limitations for equitable contribution (*Century Indem. Co. v. Sup.Ct.* (Scottsdale Ins. Co.) (1996) stated that a 2-year statute applies to equitable contribution actions, and not a 4-year statute.  However, the court did not reach the issue of when the 2-years start to run.

1    In *Century*, the Court of Appeal applied CCP 339 to an action by an insurer seeking equitable

2 contribution in order to recoup a pro-rata share of defense costs expended by plaintiff in defense of th

3 coinsured.  The Court's main issue was determining whether the contribution action was founded on t

4 coinsurer's contract of insurance (CCP 337 4-year statute would apply), or not founded upon an

5 instrument in writing within CCP 337 (CCP 339 2-year statute would apply).  The Court decided that

6 the 2-year statute applied.  The Court did not reach the issue of when the accrual of an equitable

7 indemnity action occurs (when the 2-years start to run).  The Court concludes by stating "(i)n so

8 holding, we do not rule on the issue of when Scottsdale's purported equitable contribution cause of

9 action arose." *Century Indem. Co. v. Sup.Ct.* (Scottsdale Ins. Co.) (1996) 50 CA4th 1115, 1117, 58

10 CR2d 69.

11    The Supreme Court has held, before and after the *Century Indemnity* case above, that *an accru*

12 *of an equitable indemnity action occurs (i.e., suit must be commenced) no later than two years after the*

13 *plaintiff insurer's last payment in the underlying lawsuit.*  *Preferred Risk Mutual Ins. Co. v. Reiswig*

14 (1999), 21 Cal.4th 208, 213 *(emphasis added)*; *People ex. rel. v. Superior Court* (1980), 26 Cal.3d 744

15 (the indemnity action accrues at the time that the tort defendant pays a judgment or settlement as to

16 which he is entitled to indemnity).  The *Reiswig* court was concerned with the statute of limitations fo

17 equitable indemnity actions, however it is equally applicable in the context of equitable contribution

18 actions.  The common element in both actions is whether the defendant owed a duty to defend.  If a

19 duty to defend exists, it continues until settlement of the insured or judgment.

20    The Court of Appeals in *Israelsky v. Title Ins. Co. Of Minnesota* (1989) 261 Cal.Rptr. 72, 212

21 Cal.App.3d 614 upheld the previously-stated rule stated in *Oil Base, Inc. v. Continental Cas. Co.*

22 (1969) 271 Cal.App.2d 378, 389, 76 Cal.Rptr. 594) that the statute of limitations on a claim against a

23 *liability* insurer for breach of its duty to defend commences when a final judgment in underlying

24 litigation against the insured is entered.  *Israelsky v. Title Ins. Co. Of Minnesota* (1989) 261 Cal.Rptr.

25 72, 73, 212 Cal.App.3d 614, 613.

26    Further, the *Israelsky* court citing *Oil Base* states, "where a defendant has breached a continuin

27 contractual duty, the statute of limitations does not commence until the time for performance has

28

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

7

1  passed. (Ibid.) "'In the case of a continuing executory contract, if the parties do not mutually abandon

2  and rescind it, it is optional with the plaintiff to sue immediately upon the breach or to wait until the

3  expiration of the time designated in the contract before commencing his action.'"

4        Accordingly, the court in *Oil Base* held the statute of limitations on claims for breach of the

5  duty to defend under a liability policy does not begin to run until a final judgment in the underlying

6  action has been entered. <u>Israelsky v. Title Ins. Co. Of Minnesota</u> (1989) 261 Cal.Rptr. 72, 75, 212

7  Cal.App.3d 614, 616.

8        In the present case, the duty to defend continued until settlement was achieved. Therefore, the

9  date settlement was finalized and the insured was extricated from the action is the correct date for

10 calculation of the commencement of the running of the 2-year period, for contribution of defense fees

11 pursuant to ASRRG and ASIC's duty to defend.

12       Two years after *Israelsky*, The Court confirmed that holding and further confirmed that the

13 statutory period does not expire until final judgment, in *Lambert v. Commonwealth Land Title Ins.*

14 (1991) 282 Cal.Rptr.445, 53 Cal.3d 1072. "We agree with the results of *Israelsky* (citation

15 omitted)...We believe that, although it does not so state, *Israelsky* is in fact applying the established

16 California doctrine of equitable tolling. (citations omitted). Although the statutory period commences

17 upon the refusal to defend, it is equitably tolled until the underlying action is terminated by final

18 judgment." *Lambert v. Commonwealth Land Title Ins.* (1991) 282 Cal.Rptr.445, 447, 53 Cal.3d 1072,

19 1077. This is essentially another way of stating that the settlement date / final judgment commences

20 the 2-year statutory period.

21       Case law in the area of recovery of contracts for legal services is also instructive on the issue a

22 hand. "While it appears to be the general rule of law that where a contract for services, either expres

23 implied, is for an indefinite period and no time of payment is specified, or where the services are

24 rendered under a general retainer, the statute of limitations does not begin to run against a cause of

25 action for payment until the services end. *McManus v. Allan* (1939) 32 Cal.App.2d 275, 89 P.2d 690,

26 692. If ASRRG and/or ASIS owes a duty to defend, then an implied contract exists that it will pay to

27 defend Bay Area until settlement is reached or judgment entered.

28

KOLESKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

8

**5.   ADDITION OF ASIC WOULD NOT CAUSE IT ANY PREJUDICE.**

Even if plaintiff has been dilatory in identifying a "Doe" defendant, delay alone will not bar such amendment absent actual prejudice to the defendant. *Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group)* 2007 § 6:763 – citing *Barrows v. American Motors Corp.* (1983) 144 Cal.App.3d 1, 9, Cal.Rptr. 380, 384.

ASIC has been in effect participating through ASRRG and there would be no actual prejudice to ASIC if they were added as Doe at this time. As explained above and in the moving papers, the statute of limitation argument and the alleged policy exclusions with respect to the ASIC Policy will be fully briefed and heard on February 13.

**6.   CONCLUSION**

The moving papers and this reply make clear that the addition of ASIC to this action should be granted and there will be no prejudice to ASIC as a result.

Dated: January 24, 2008                    KOLETSKY, MANCINI, FELDMAN & MORROW

By: _____
      RAYMOND C. DION
      PERRY E. RHOADS
      Attorneys for Plaintiff ACCEPTANCE INS. CO.

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

9

## DECLARATION OF PERRY E. RHOADS, ESQ.

I, Perry E. Rhoads, declare as follows:

1.    I am an attorney at law duly admitted to practice before all of the courts of the State of California and am an associate of Koletsky, Mancini, Feldman & Morrow, attorneys of record herein for Plaintiff, Acceptance Insurance Company in the instant action. I have personal knowledge of the facts set forth herein and could and would competently testify as to the truth of same.

2.    At the time of filing of the original complaint, I was unaware that the second policy was issued by American Safety Indemnity Company ("ASIC"), a separate American Safety entity from the first policy.

3.    It was not until the deposition of Jean Fisher was taken on December 5, 2007, that I discovered that ASIC was a separate legal entity and that defendant was asserting this as a defense.

4.    This motion has been brought to add ASIC as Doe 1, pursuant to *CCP* §474.

5.    I have not seen Exhibit 1 attached to defendant's opposition prior to defendant's attaching it to the opposition.  The letter appears to involve a declination of tender in a different case, and is addressed to different counsel than is representing plaintiff in this action.  If the declination letter by ASRRG in the underlying *Portola* action (attached hereto as Exhibit 1) had informed plaintiff that American Safety was declining coverage for policies issued by ASRRG **and ASIC** then plaintiff may not have been ignorant as to the identity of the company that issued the second policy (ASIC).

6.    American Safety Insurance Services denied coverage to Bay Area under the ASRRG Policy, for the *Portola* case, per Breckenridge & Associates' letter to Bay Area, dated January 19, 2002. Attached hereto as **"Exhibit 1"** is a true and correct copy of this declination letter.

7.    The January 19, 2002 declination letter to Bay Area fails to identify the second policy issued by ASIC, or even recognize its existence, despite the fact that it administered both policies and Ms. Fisher was aware of both policies.

8.    Plaintiff has brought this regularly-noticed motion to allow defendant an opportunity to make all appropriate objections. If granted, plaintiff will pay all appropriate filing fees, issue a separate Summons, and individually serve ASIC, if required. The "clerical error" in the complaint is the reference

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

10

KOLETSKY, MANCINI, FELDMAN & MORROW
Lawyers
3460 Wilshire Blvd., Eighth Floor
Los Angeles, CA 90010
(213) 427-2350

1  to the second policy as "XGI-**00**-1826-002 instead of "XGI-**01**-1826-002" (see Complaint, page 3 line 1).

2  The deposition of Jean Fisher makes clear that, although the legal entities are separate, they are

3  administered by the same employees.

4          9.      During the Bay Area bad faith case, I made numerous requests to defense counsel Dale

5  Braden & Hinchcliffe to produce the American Safety policies. Counsel refused to provide them, or even

6  disclose the name of their client.

7          10.     I subsequently obtained the policies from the insurance broker and filed the present

8  contribution action.

9          11.     The statute of limitation issue is being fully briefed in the motions for summary judgment

10  which will be heard on February 13, 2008, and need not be decided in this motion. Defendant has asserted

11  this very same defense in its motion for summary judgment / adjudication of the ASRRG Policy. The

12  argument is identical if asserted by ASIC.

13          12.     Defendant, acting on behalf of ASIC, will not be prejudiced by the court's ruling on this

14  issue at the summary judgment hearing on February 13.

15          13.     Likewise, the policy exclusions in the ASRRG policy that defendant alleges are applicable,

16  are the same exclusions contained in the ASIC Policy, and would also be identical. Defendant has asserted

17  these policy exclusions as well in its motion for summary judgment / adjudication.

18          I declare under penalty of perjury that the foregoing is true and correct. Executed this 24th day of

19  January, 2008, at Los Angeles, California.

20

21

22

23          Perry E. Rhoads, Declarant.

24

25

26

27

28

11

**REPLY TO OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT TO NAME AMERICAN
SAFETY INDEMNITY COMPANY AS DOE 1; MEMORANDUM OF POINTS AND AUTHORITIES;
DECLARATION OF PERRY RHOADS, ESQ.**

# EXHIBIT 1

# BRECKENRIDGE & ASSOCIATES
### A Risk Management Company

26691 Plaza, Suite 260
Mission Viejo, California 92691
Tel. (949) 367-0371
Fax (949) 367-8597
pgamor@pacbell.net

January 19, 2002

REGISTERED MAIL – RETURN RECEIPT REQUESTED

Bay Area Construction Framers
7080 Donlon Way
Suite 204
Dublin, California 94568

Attn:   Controller or Risk Manager

RE:   **Portola Meadows Townhomes Association v. Davidon Homes, et al.**
      Insured:     Bay Area Construction Framers, Inc.
      Policy:      XGI-00-1826-001
      Claim:      XGI.00.1826.001.04

To Whom It May Concern:

American Safety Insurance Services, Inc. (ASIS) is the Program Manager for American Safety Risk Retention Group (ASRRG). ASIS acknowledges receipt of a complaint filed by Portola Meadows Townhomes Association against Davidon Homes.

Breckenridge & Associates has been retained to conduct an investigation to determine whether Bay Area Construction Framers has coverage under the above-mentioned policy of insurance issued to Bay Area Construction Framers. We have now completed a review of all materials submitted to date, including notes, correspondence and investigative reports. We have also reviewed Policy number XGI-00-1826-001 issued to Bay Area Construction Framers, Inc. with a policy period of August 15, 2000 to October 1, 2001.

For the reasons stated herein, we do not believe there is coverage for the damages sought against Bay Area Construction Framers in this matter under the terms and conditions of the CGL policy. For the reasons stated herein we will be unable to participate in the defense of Bay Area Construction Framers, and we will be unable to indemnify any insured for any award or judgment by reason of this claim.

After a thorough review of the notes, correspondence and investigative reports in this matter, it appears that any and all damages would have commenced before the effective

- 1 -

date of the ASRRG CGL Policy, number XGI-00-1826-001, with an inception date of August 15, 2000.

The CGL policy provides in pertinent part under Section I Coverage A, subsection 1 of the Commercial General Liability Coverage Form as follows:

> 1. Insuring Agreement
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply...
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
> (1) the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
> (2) The "bodily injury" or "property damage" occurs during the policy period.

> 2.          Exclusions

> This insurance does not apply to:

> a.  Expected or Intended Injury

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Additionally, endorsement ASIC ES 98 18 09 99, entitled Punitive Damages Exclusion, states:

> The following exclusion is added to SECTION I, Coverage A. and Coverage B, Par. 2 of the policy.

> This insurance does not apply to any punitive, special or exemplary damages.

Pursuant to the Amended Definition Endorsement on Occurrence or Duty to Defend (ASRRG ES 98 03 08 99), the CGL policy provides the following definition of "occurrence":

> 13. "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions that happens during the term of this insurance. "Property damage" or "bodily injury" which commenced prior to the effective date of this insurance will be deemed to have happened prior to, and not during, the term of this insurance.
>
> There shall be no obligation of the Company to defend any "suit" against the insured or any Additional Insured if such "suit" does not allege an "occurrence" as defined in this Endorsement.
>
> All other terms, conditions, and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Section V of the Commercial General Liability Coverage Form (CG 00 01 07 98) further defines "suit" as follows:

> 18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" for which this insured applies are alleged...

In addition, given there is no "occurrence" as defined in the Amended Definition Endorsement; ASRRG has no obligation to defend a claim tendered on behalf of Bay Area Construction Framers

Even if the allegations of property damage did constitute an "occurrence " as defined by the CGL Policy, there are specific exclusions within the policy, which would preclude coverage for this claim. Pursuant to the Endorsement for Pre-Existing Injury or Damage Exclusion - Form A (ASRRG ES 98 08 08 99), the CGL Policy further provides as follows:

> This insurance does not apply to:
>
> 1. Any "occurrence", incident or "suit" known or unknown to any officer of the Named Insured:
>    a. which first occurred prior to the inception date of this policy or the retroactive date of this policy, if any; or

     b. which is, or is alleged to be, in the process of
       occurring as of the inception date of this policy or the
       retroactive date of this policy, if any, even if the
       "occurrence" continues during this policy period.

    2. Any damage arising out of or relating to "bodily injury",
      "property damage" or "personal and advertising injury"
      which are known to any officer of any insured, which
      are in the process of settlement, adjustment or "suit" as
      of the inception date of this policy, or the retroactive
      date of this policy, if any.

We shall have no duty to defend any insured or Additional
Insured against any loss, "occurrence", incident or "suit",
or other proceeding alleging damages arising out of or
related to "bodily injury", "property damage" or "personal
and advertising injury" to which this Endorsement applies.

All other terms, conditions and exclusions under the policy
are applicable to this Endorsement and remain unchanged.

Given that on May 21, 1999 Portola Meadows Homeowners Association placed Davidon
Homes on notice of certain defective conditions, including alleged framing defects
relating to Bay Area Construction Framers work, any and all damages alleged to have
occurred, if they were to constitute "property damage", occurred prior to the inception
date of ASRRG CGL Policy, number XGI-00-1826-001. There would be no duty to
defend or to pay damages on behalf of Bay Area Construction Framers for these
preexisting matters.

We also refer you to the Subsidence Exclusion (ASRRG-ES 98 12 08 99) under the
ASRRG policy, which states in part:

    The following exclusion is added to SECTION I, COVERAGE A, and
    COVERAGE B, Part 2 of the policy. This insurance does not apply to:

       "Bodily injury", "property damage" or "personal and advertising injury"
       arising out of or related to the subsidence of the natural surface of the
       ground."

       "For the purposes of this exclusion, subsidence shall mean any earth
       movement including but not limited to earthquake, landslide, mudflow,
       earth sinking, earth rising, earth shifting or earth settling."

In addition to exclusions incorporated into the policy by endorsement, several of the exclusions contained in the CGL coverage form also eliminate coverage. The policy provides in Section I,

Coverage A:

2. Exclusions

This insurance does not apply to:

b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement.

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage"…

To the extent that Plaintiff's claims seek damage for Breach of Contract, Breach of Warranties, Fraud, Nuisance, Intentional and Negligent Misrepresentation of Fact, Negligence Per Se and Declaratory Relief, the ASRRG policy provides no coverage.

The policy also excludes coverage for:

j. Damage to Property

"Property damage" to:

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

k. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

l. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included

in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.  Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

n.  Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)     "Your product";

(2)     "Your work"; or

(3)     "Impaired property";

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

The policy also includes the following definitions:

8.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

20.     "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired;

   "Your product" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality,
   durability, performance or use of "your product" and
**b.** The providing of or failure to provide warnings or instructions.

**21.**   "Your work" means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or
   operations.

   "Your work" includes:

**a.** Warranties or representations made at any time with respect to the fitness,
   quality, durability, performance or use of "your work"; and
**b.** The providing of or failure to provide warnings or instructions.

The claims set forth in the plaintiff's Complaint all arise with regard to defective work
allegedly performed by Bay Area Construction Framers, or its representatives.

Finally, even if the ASRRG policy provided coverage such coverage would be excess as
to any other available coverage. Section IV, Par. 4. of the Commercial General Liability
Coverage Form as modified by the General Amendatory Endorsement (ASRRG-ES 98
06 08 99) provides as follows:

   SECTION IV – Commercial General Liability Conditions is amended as follows:

   Par. 4., Other Insurance is hereby amended as follows:

      4.   Paragraph a., Primary Insurance; Paragraph b., Excess Insurance and
         Paragraph c., Method of Sharing are deleted in their entirety and the
         following language is inserted in lieu thereof:

         a.   This insurance is primary, except when b. below applies.
         b.   This insurance is *excess* over any other insurance that is valid
            and collectible insurance available to the insured or any
            Additional insured whether such Insurance is primary, excess,
            contingent or on any other basis and regardless of the nature,
            type, date of issuance or limits of such other insurance

American E&S Insurance Brokers
101 California Street
Suite 1125
San Francisco, California 94111
Attn: Richard Schlesinger

available to the insured or any Additional Insured.
Our obligation under this policy shall not arise until the limits
of such other insurance are exhausted.

Based on all of the foregoing, the ASRRG policy does not provide coverage to Bay Area
Construction Framers for the claims arising out of the Portola Meadows project.

American Safety Risk Retention Group will not defend and/or indemnify Bay Area
Construction Framers in this "suit" as that term is defined in the American Safety policy.

By setting forth the above, American Safety Risk Retention Group does not intend to
waive any of the terms, conditions or defenses available to it under the above policy of
insurance, or pursuant to California law. You should understand that we may rely on
additional or different exclusionary terms or provisions contained in the policy referenced
above if, in the course of subsequent investigation, we discover facts, which would make
other terms of the policy applicable.

The foregoing in no way constitutes, nor should it be considered, a waiver or
relinquishment by ASRRG of any or all other defenses available to it under the terms and
provisions of the policy mentioned above and under applicable laws.

If you believe this claim has been wrongfully denied or rejected, you may have the matter
reviewed by the Consumer Communications Bureau of the California Department of
Insurance, 300 Spring Street, 11th Floor, Los Angeles, California, 90013, Telephone
number (213) 346-6523 or (800) 927-4357.

Sincerely,


Breck Miller, on behalf of
AMERICAN SAFETY INSURANCE SERVICES, Inc.
as program manager for
AMERICAN SAFETY RISK RETENTION GROUP

CC:

American Safety Insurance Service, Inc.
1845 The Exchange
Suite 200
Atlanta, Georgia 30339
Attn: Jay Bach

ABD Insurance & Financial Services
305 Walnut Street
Redwood City, California 94063
Attn: Steve Lee

1  **PROOF OF SERVICE**

2  STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3       I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen

4  years and not a party to the within entitled action; my business address is 3460 Wilshire Blvd., 8th Floor,

5  Los Angeles, California 90010.

6       On January 24, 2008, I caused to be served  the foregoing document described as: **REPLY TO**

7  **OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT TO NAME AMERICAN**

8  **SAFETY INDEMNITY COMPANY AS DOE 1; MEMORANDUM OF POINTS AND**

9  **AUTHORITIES; DECLARATION OF PERRY RHOADS, ESQ.** on the interested parties as follows:

10

11                         Dana Alden Fox, Esq.
                          Michael J. Larin, Esq.
12                         **LYNBERG & WATKINS**
                       888 South Figueroa Street, 16th Floor
13                         Los Angeles, CA  90017
                            (213) 624-8700
14                          (213) 892-2763 Fax

15  [X]    **(BY UPS EXPRESS DELIVERY/OVERNIGHT MAIL)** I caused the above described
        document to be served on the interested parties noted above by Federal Express/Overnight Mail.
16

17  [ ]    **(BY FACSIMILE)** I caused said document, along with a signed copy of this Declaration, to
        be transmitted to a facsimile machine telephone number as last given by said counsel or party
18     in propria persona as noted above.

19  [X]    **(STATE)** I declare under penalty of perjury under the laws of the State of California that the
        forgoing is true and correct.
20

21     Dated: January 24, 2008

22                                              _____
                                                    Maria Palanca
23

24

25

26

27

28

# EXHIBIT 4

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 01/31/08                                                                        DEPT. 55

HONORABLE MALCOLM MACKEY            JUDGE    E. VERNER            DEPUTY CLERK

HONORABLE                           JUDGE PRO TEM              ELECTRONIC RECORDING MONITOR
#3
              L. GOMEZ, CA          Deputy Sheriff   C. KUHN, CSR 7810         Reporter

8:31 am  BC352725                          Plaintiff   PERRY E. RHOADS (X)
                                           Counsel
         ACCEPTANCE INSURANCE COMPANY
         VS                                Defendant  MICHAEL J. LARIN (X)
         AMERICAN SAFETY RISK RETENTION    Counsel
         GROUP INC

NATURE OF PROCEEDINGS:

MOTION OF PLAINTIFF, ACCEPTANCE INSURANCE COMPANY,
FOR LEAVE TO AMEND COMPLAINT TO NAME AMERICAN SAFETY
INDEMNITY COMPANY AS DOE 1.

Matter comes on calendar for Plaintiff's Motion for
Leave to Amend the Complaint filed January 7, 2008.
Opposition filed January 17, 2008. Reply filed
January 24, 2008; and for Defendant's Ex Parte
Application for Order Compelling Plaintiff to Produce
Documents, or in the Alternative, for Order Shortening
Time for Motion to Compel.

Motion for Leave to Amend the Complaint is argued and
ruled upon, as fully reflected in the notes of the
official court reporter and incorporated by reference
herein.  The Court's ruling, in brief, as follows:

Motion for Leave to Amend the Complaint is granted.
The Amended Complaint is to be filed and served within
7 days, on or before February 7, 2008.  Response to
the Amended Complaint to be filed within 20 days,
thereafter.

The MOTION FOR SUMMARY JUDGMENT, previously set
February 13, 2008 at 8:30 a.m. in Department 55 is
advanced to this date and vacated, in light of the
Court's ruling allowing the Amended Complaint.  Motion
for Summary Judgment may be reset if appropriate.

The Court orders the TRIAL DATE, previously set March

                    Page   1 of   3   DEPT. 55

                                            ┌─────────────────────┐
                                            │ MINUTES ENTERED     │
                                            │ 01/31/08            │
                                            │ COUNTY CLERK        │
                                            └─────────────────────┘

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 01/31/08

**DEPT.** 55

HONORABLE MALCOLM MACKEY   JUDGE | E. VERNER   DEPUTY CLERK

HONORABLE
#3   JUDGE PRO TEM   ELECTRONIC RECORDING MONITOR

L. GOMEZ, CA   Deputy Sheriff | C. KUHN, CSR 7810   Reporter

8:31 am | BC352725

ACCEPTANCE INSURANCE COMPANY
VS
AMERICAN SAFETY RISK RETENTION
GROUP INC

Plaintiff   PERRY E. RHOADS (X)
Counsel

Defendant   MICHAEL J. LARIN (X)
Counsel

**NATURE OF PROCEEDINGS:**

17, 2008 at 9:00 a.m. in Department 55 and all dates
associated with said Trial Date, advanced to this date
and continued as follows:

SEVEN DAY ESTIMATED JURY TRIAL is continued to
September 22, 2008 at 9:00 a.m. in Department 55.  All
sides demand jury.

FINAL STATUS CONFERENCE is continued to September 12,
2008 at 8:30 a.m. in Department 55.

Parties are ordered to meet and confer RE settlement.
Parties are ordered to Department 35, the Honorable
Alexander Williams, III, or Department 98, the
Honorable Owen Lee Kwong for a mandatory settlement
conference.  Settlement discussions to be concluded by
September 10, 2008.

All named defendants, doe defendants, cross-defendants
and roe defendants who have not been named, served or
defaulted by April 1, 2008 are dismissed as of April
1, 2008.

Demand for exchange of experts pursuant to Code of
Civil Procedure Section 2034 is deemed made this date.

Discovery to be concluded by August 22, 2008.  Law and
Motion to be concluded by September 8, 2008.  All
expert depositions to be concluded by three days prior
to the Final Status Conference hearing.

Page    2 of    3    DEPT. 55

MINUTES ENTERED
01/31/08
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 01/31/08

HONORABLE  MALCOLM MACKEY                    JUDGE

HONORABLE
#3
          L. GOMEZ, CA                JUDGE PRO TEM

                                    Deputy Sheriff

DEPT. 55

E. VERNER                DEPUTY CLERK

                    ELECTRONIC RECORDING MONITOR

C. KUHN, CSR 7810                Reporter

8:31 am | BC352725

ACCEPTANCE INSURANCE COMPANY
VS
AMERICAN SAFETY RISK RETENTION
GROUP INC

Plaintiff
Counsel      PERRY E. RHOADS (X)

Defendant
Counsel      MICHAEL J. LARIN (X)

**NATURE OF PROCEEDINGS:**

Ex Parte Application for Order to Compel Production of
Documents is heard and ruled upon as fully reflected
in the notes of the official court reporter and
incorporated by reference herein.  The Court's ruling,
in brief, as follows:  Motion to Compel Production is
granted, pursuant to parties stipulation this date.
Documents to be produced on or before April 1, 2008.

Notice waived.

Page   3 of   3   DEPT. 55

**MINUTES ENTERED**
01/31/08
**COUNTY CLERK**